# EXHIBIT A

IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**CRISTINA GELVIN**,
*Petitioner*,

*v.*

**THE HONORABLE AMANDA PARKER, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA**,
*Respondent Judge,*

**KERR GELVIN,**
*Real Party in Interest.*

---

No.  CV-25-0116-PR
Filed July 17, 2026

---

Special Action from the Superior Court in Maricopa County
The Honorable Amanda M. Parker, Judge
No.  FN2023-002515
**REVERSED IN PART AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
1 CA-SA 24-0252
Filed April 1, 2025
**VACATED**

---

COUNSEL:

Marlene A. Pontrelli, Vail C. Cloar, Alexandra Crandall, Dickinson Wright PLLC, Phoenix; Peter B. Swann (argued), Rai Duer, P.C., Phoenix, and Jeffrey G. Pollitt, Jeffrey G. Pollitt, P.C., Phoenix, Attorneys for Cristina Gelvin

Markus W. Risinger (argued), Woodnick Law, PLLC, Phoenix; Melinda Sloma, Sloma Law Group, Phoenix, Attorneys for Kerr Gelvin

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

Mikel Steinfeld, Rosemarie Pena-Lynch, Michael C. Jones, Shannon Burns, Steve Koestner, Gary Kula, Law Office of the Public Defender, Phoenix; Attorneys for Amici Curiae Maricopa County Indigent Defense Agencies and Arizona Attorneys for Criminal Justice

———————

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BEENE, MONTGOMERY, KING, and PELANDER (Ret.) joined.*

———————

JUSTICE BOLICK, Opinion of the Court:

¶1         We are asked in this case to clarify the rules regarding when a third party can be clothed with the attorney-client privilege. We explain below that, subject to specific exceptions, attorney-client communications with or in the presence of a third party are protected only when objectively necessary to effectuate the attorney-client communication, and the burden to establish the privilege is on the party seeking to invoke it. For that reason, we vacate the court of appeals' decision below and overrule the opinion on which it relied, *Accomazzo v. Kemp*, 234 Ariz. 169 (App. 2014), to the extent it conflicts with this opinion.

## BACKGROUND

¶2         In 2023, Cristina Gelvin ("Wife") filed for divorce from her husband, Kerr Gelvin ("Husband"). During their marriage, they were supported in part through family trusts funded by Wife's parents. Wife's mother, Ursula Gebert ("Mother"), is at the center of the discovery controversy before us here.

¶3         When Wife hired her divorce attorneys, she decided to involve her mother. Wife signed a "Consent to Communicate Without Waiver of Confidentiality." The document authorized her attorneys to "communicate in any manner necessary with Ursula Gebert, my mother,

---

* Justice Maria Elena Cruz was recused in this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

about any and all issues regarding my divorce action," and to "release to Ursula Gebert any information and any documents and records of any nature related to the divorce action." The consent form explicitly invoked the court of appeals' decision in *Accomazzo*, stating Wife's intention "to maintain confidentiality of all communications and all information shared with Ursula Gebert and to retain the [attorney-client] privilege relative to same."

**¶4**        Mother signed her own acknowledgement, similarly citing *Accomazzo* and confirming her understanding that all communications and information shared with her would "remain privileged, confidential and will not be shared with any other individuals."

**¶5**        During discovery, Husband served a request seeking three categories of documents: (1) written communications between Wife's attorney and her parents' estate planning counsel; (2) time entries for communications between Wife's attorney and her parents' counsel; and (3) written communications between Wife's attorney and her parents. Wife objected based on privilege, confidentiality, and common interest.

**¶6**        The superior court denied Husband's motion as to the first two categories but granted it in part as to the third. The court drew a distinction: "Importantly, there is a difference between Wife's attorney including Wife's mother on communications that he had with Wife—and Wife's attorney communicating with Mrs. Gebert independently to strategize with Mrs. Gebert about the divorce proceedings." That is so because "*Accomazzo* only protects the former because Mrs. Gebert is not represented by Wife's divorce attorney in any capacity." The court then ordered disclosure of "communications between Wife's counsel and Mrs. Gebert that were not designed to either merely inform Mrs. Gebert about the divorce proceedings or to memorialize the mental impressions of Wife's counsel."

**¶7**        Wife sought special action relief. The court of appeals granted it, holding that *Accomazzo* created a presumption of privilege over communications between Wife's attorney and Mother. *Gelvin v. Parker*, No. 1 CA-SA 24-0252, 2025 WL 974673, at *1 ¶¶ 1–2 (Ariz. App. Apr. 1, 2025) (mem. decision). Because the consent form reflected an agreement to maintain confidentiality, no evidence suggested disclosure to others, and

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

Mother and Wife had no adverse interests, the court found Husband had failed to rebut the presumption. *Id.* at *3–4 ¶¶ 14–15.

¶8      The opinion's author, joined by a second judge, also issued a "special concurrence"[1] that questioned *Accomazzo*'s soundness.   They explained that *Accomazzo* had improperly expanded attorney-client privilege to include parents regardless of necessity, failed to distinguish controlling precedent, violated the principle that a privilege should be narrowly construed, and wrongly shifted the burden to the party challenging privilege. *Id.* at *6–7 ¶¶ 24–29 (Kiley, J., concurring).   Though they believed *Accomazzo* was questionable, they noted that Husband had not asked the court to overturn it and concluded that fairness prevented retroactive modification of privilege rules after the communications had occurred. *Id.* at *7 ¶ 30.

¶9      In the trial court, Husband moved to continue the trial while he sought review of the court of appeals' decision in this Court.   The court denied the motion, but noted that in partially reversing its prior order, the court of appeals "perhaps for the first time ever" interpreted *Accomazzo* "as extending the attorney-client privilege to communications between a lawyer and *a third party*, regardless of the purpose of those communications, and irrespective of the client's presence during, or participation in, those communications."   (Emphasis in original.)   The court noted that the court of appeals' opinion raised a difficult question: "If communications between a lawyer and third party are privileged under the attorney-client privilege, simply because the lawyer and client say so, where do we go from here?"

¶10      Husband petitioned this Court for review.   In supplemental briefing submitted to this Court, Wife claimed that she suffers from post-traumatic stress disorder ("PTSD"), stemming from her marriage to Husband.   Wife claims that Mother's involvement in her divorce proceedings—including direct communications between Wife's own lawyers and Mother without Wife's involvement—was necessary given her PTSD.

---

[1] This Court has dropped the terminology of "special concurrence," as we could not perceive a difference between a concurrence that was special and one that was not.

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

**¶11**        We granted review of several questions of statewide importance: Does *Accomazzo* extend the attorney-client privilege to communications between an attorney and a third party outside the client's presence?  Does *Accomazzo* preserve the privilege when the third party's presence is not necessary to effectuate the purposes of the legal representation?  Does *Accomazzo* improperly shift the burden to the party challenging the assertion of privilege to establish facts necessary to refute it?  If *Accomazzo* protects the communications at issue, should it be limited or overruled?  And we added, if the Court decides that *Accomazzo* was wrongly decided, should the Court's decision be applied prospectively only?  We address these questions below.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶12**        We review de novo whether the attorney-client privilege exists.  *State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360 ¶ 10 (2022).  Whether the presence of a third party waives the attorney-client privilege is a mixed question of law and fact that we also review de novo.  *Id.*

**¶13**        The confidentiality of communications between lawyer and client is perhaps the most deeply cherished and protected privilege in American law.  *See, e.g.*, A.R.S. § 12-2234 (establishing the attorney-client privilege in civil actions); *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011) ("The attorney-client privilege ranks among the oldest and most established evidentiary privileges known to our law.").  Our legal system recognizes that such confidentiality is essential to allow individuals to freely seek legal advice and for attorneys to provide it.  The purpose of the privilege is to encourage a client to freely provide information so that the attorney can effectively provide representation. *Granger v. Wisner*, 134 Ariz. 377, 379 (1982).  The proponent has the burden of proving the privilege exists as to specific communications.  *Adel*, 252 Ariz. at 360–61 ¶ 13; *Clements v. Bernini*, 249 Ariz. 434, 439–40 ¶ 8 (2020).  "The proponent must show that 1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Clements*, 249 Ariz. at 440 ¶ 8.

**¶14**        The first prong, establishing the existence of an attorney-client relationship, requires an examination of the "client's perception of the

5

relationship and intent to secure legal advice." *Id.* ¶ 9. This examination probes the client's subjective perception and intent. *Id.* The second prong ensures that the privilege extends only to communications involving legal advice. *Id.* ¶ 10. The third and fourth prongs consider whether the communication took place under confidential conditions and whether the client reasonably believes the communication was confidential. *Id.* ¶ 11.

**¶15**       Because privileges "lead to the suppression of truth," they are "to be limited narrowly to their purposes." *See, e.g.*, *Indus. Comm'n v. Superior Court*, 122 Ariz. 374, 375 (1979). Thus, although the attorney-client privilege is sacrosanct, expanding the privilege beyond these narrow confines diminishes the important justifications for the privilege, reduces the ability of the opposing party to obtain relevant evidence, and impairs the truth-seeking function of the legal system. *See Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 136 ¶ 14 (App. 2003) (citing *United States v. Nixon*, 418 U.S. 683, 709–10 (1974)). Accordingly, "[p]ermitting the communication to be overheard by individuals who are not a part of the confidential relationship usually destroys the confidentiality necessary for a privileged communication." *Clements*, 249 Ariz. at 440 ¶ 11.

**¶16**       Courts have recognized limited exceptions to this rule where the third party is an agent of the party or necessary to effectuate the attorney-client communication. *See, e.g.*, *State v. Sucharew*, 205 Ariz. 16, 22 ¶ 12 (App. 2003). Such exceptions include: a parent's presence in representation of a minor child, *id.*, a translator where the client is not English-proficient, *People v. Osorio*, 549 N.E.2d 1183, 1186 (N.Y. 1989), and communications where parties sharing a common interest in the litigation are present, *Ariz. Indep. Redistricting Comm'n*, 206 Ariz. at 142 ¶ 39. Likewise, the privilege may be extended where technical expertise is necessary to facilitate communications between the client and attorney. *See, e.g.*, *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (recognizing that agents who are indispensable to the communication can be covered by the privilege); *Nat'l Steel Prods. Co. v. Superior Court*, 164 Cal. App. 3d 476, 483 (Cal. Ct. App. 1985) (finding that an engineering expert hired to provide technical analysis did not break confidentiality because it was "reasonably necessary" for the expert to receive information from the client). Here, Wife invoked none of these exceptions (although she now argues Mother's presence is necessary due to her PTSD) but simply attempted to unilaterally extend the attorney-client privilege to encompass Mother through an *Accomazzo* agreement.

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

**¶17**        We have also applied a "functional approach" that examines "the nature, purpose, and context within which the communication occurs." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 503 (1993).[2]   For instance, in *Clements*, we recognized that, under applicable jail policies, communications between an inmate and his lawyer may remain confidential even if they are on a recorded line.   249 Ariz. at 440–41 ¶¶ 12–18.

**¶18**        But by definition, a third party typically is not a client; hence, it is generally inappropriate to extend the attorney-client privilege to a third party, because doing so detracts from the truth-seeking function of the legal process without advancing the privilege's core purposes.   *See Indus. Comm'n*, 122 Ariz. at 375.   The situation is even more attenuated when the communication is between the attorney and the third party without the client's presence to receive legal advice.   *See Clements*, 249 Ariz. at 440 ¶ 10 (stating "the privilege applies only to those communications involving legal advice").

**¶19**        Consequently, the argument that parties' subjective expectations can define the attorney-client privilege with regard to third parties in certain circumstances would create an exception that could swallow the rule, especially in cases with sophisticated parties who seek to expand the scope of confidentiality.  We therefore hold that the scope of the privilege is generally an objective determination based on whether extending the privilege is necessary to effectuate the attorney-client communication.  *See Kovel*, 296 F.2d at 921–22.   A corollary is that parties cannot create or expand the attorney-client privilege beyond those objective parameters.

**¶20**        That is where *Accomazzo* goes awry.   That case presented the question whether, in a challenge to a prenuptial agreement, the presence of the wife's parents in a meeting with her attorney who drafted the prenuptial agreement constituted a waiver of the attorney-client privilege. *Accomazzo*, 234 Ariz. at 171 ¶¶ 2–6.  The court of appeals overturned a trial

---

[2]  *Samaritan Foundation* considered communications in the context of a corporate structure.   176 Ariz. at 500.   Subsequent to that opinion, the Legislature codified the standards for the attorney-client privilege in the corporate context in § 12-2234(B).

7

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

court decision finding waiver and ordering disclosure. *Id.* at 174 ¶ 19. The court stated that "[t]he presence of a third party at an attorney-client conference will . . . cause waiver, unless 'the third party's presence does not indicate a lack of intent to keep the communication confidential.'" *Id.* at 173 ¶ 14 (quoting *Sucharew*, 205 Ariz. at 22 ¶ 11). Thus, the court concluded that "[a]bsent a contrary showing, we presume that when a client authorizes a parent to participate in conferences with her attorney regarding the client's personal matter, and the client and the parent have no adverse interest with respect to that matter, the client has a reasonable expectation that the conferences will be confidential." *Id.* ¶ 15. The court ruled against disclosure because "[the husband] presented no evidence to rebut the presumption that [the wife] reasonably believed that communications with [the attorney] remained confidential despite her parents' participation." *Id.* at 174 ¶ 16.

**¶21**        *Accomazzo* inverts the applicable law of privilege in three significant ways. First, it determines whether the privilege exists where a third party is present during an attorney-client conference based on the client's intent and reasonable expectation, rather than objectively. *See id.* at 173 ¶ 15. Second, it creates a presumption that the privilege is maintained in the presence of the third party, rather than determining whether the third party is necessary for the communication and fits into one of the waiver exceptions. *See id.* Finally, it places the burden on the party seeking disclosure, rather than on the party seeking to establish the privilege. *See id.* at 174 ¶ 16. *Accomazzo* would therefore make maintaining the privilege in the presence of a third party the rule rather than the exception.[3]

**¶22**        In essence, *Accomazzo* creates a new broad exception for the presence of parents in attorney-client conferences, unless the party seeking disclosure can prove that the party invoking the privilege did not subjectively possess a reasonable expectation that the communications would be protected. That would be a difficult burden to meet in almost any circumstances, but especially where a written attorney-client agreement evidences such expectation. This rule is in stark contrast to recognized waiver exceptions, which are generally grounded in agency or necessity, and it is contrary to the rule that the party seeking the privilege's protection bears the burden of establishing it.

---

[3] The concurring opinion expressed similar misgivings about *Accomazzo*. *Gelvin*, 2025 WL 974673, at *7 ¶ 28 (Kiley, J., concurring).

8

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

**¶23**        *Sucharew*, on which *Accomazzo* relies,[4] is a good example of when extending the privilege to parents *is* appropriate.  There, a minor charged with second-degree murder and other serious crimes had his parents present during attorney-client conferences.  *Sucharew*, 205 Ariz. at 20 ¶ 4, 21 ¶ 8.  Although the court of appeals applied a subjective standard,[5] its holding focused on the fact that the minor's parents "were taking an understandable parental interest and advisory role in their minor son's legal affairs," and that the "presence of a parent in such a capacity at a meeting between child and counsel does not defeat the attorney-client privilege."  *Id.* at 22 ¶ 12.  That comports with the necessity standard and functional approach we have previously embraced and which we reiterate in this opinion.  Here and in *Accomazzo*, by contrast, the clients invoking privilege are adults who have shown no special need to have parents advising them or protecting their interests.[6]

**¶24**        Nor, as the trial court ruled, does the "common interest" doctrine apply here.  That doctrine is a narrow exception to the rule that third-party communications are not protected by the attorney-client privilege, which applies only when the parties (usually co-parties) share a common *legal* interest, not merely a shared desire for a particular outcome.  *Ariz. Indep. Redistricting Comm'n.*, 206 Ariz. at 142 ¶ 37, 142–43 ¶ 40. Here, Mother is not a party and has no legal interest in the dissolution proceedings.

**¶25**        Additionally, unlike the court of appeals, we do not read *Accomazzo* to extend the privilege for third parties when the client is not present. *See Gelvin*, 2025 WL 974673, at *3 ¶ 14.  Because the third party was

---

[4] *Accomazzo* also cited *State v. Archibeque*, 223 Ariz. 231 (App. 2009), which dealt with the clergy-penitent privilege that is inapplicable here.  234 Ariz. at 173 ¶ 15.

[5] *Sucharew* improperly and unnecessarily employed a subjective test to assess whether the privilege applied, focusing on whether the third party's presence indicates a "lack of intent to keep the communication confidential." 205 Ariz. at 22 ¶ 11.  We disavow that portion of the opinion.

[6] As noted, Wife claims here that she suffers PTSD and therefore needs Mother to help her process attorney-client communications.  To the extent this remains relevant in light of our disposition, it may be considered on remand.

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

neither seeking legal advice nor was an actual client, the attorney-client privilege does not apply. *See Clements*, 249 Ariz. at 440 ¶ 10. *Accomazzo* did not entail such communications, and we do not read it to contradict this rule.

**¶26** To summarize, in all instances, the burden is on the party seeking to establish attorney-client confidentiality to demonstrate the requirements are satisfied, including, as to third parties, that the presence of the third party is objectively necessary to effectuate the attorney-client communication. We overrule *Accomazzo* to the extent it conflicts with this opinion.

**¶27** In this case, Mother is the source of marital income. She knows facts that are relevant to the divorce, but Wife has not yet demonstrated that Mother is necessary to effectuate attorney-client communications. The agreement purporting to extend attorney-client confidentiality, and the subjective expectation of confidentiality it generated, are not sufficient. Although subjective beliefs and expectations are largely dispositive of whether an attorney-client relationship exists in the first place on the part of an actual client, and agreements that memorialize such expectations and terms are ethically required, the question of whether attorney-client confidentiality extends to communications involving third parties is an objective one that cannot be established on the subjective desires of the client even if set forth in the kind of agreement that was used here.

**¶28** That leaves the question of retroactivity. Because *Accomazzo* expanded the attorney-client privilege in significant ways and courts and parties (including here) may have relied on it, we will not disturb agreements or rulings made prior to the date of this opinion. *See Turken v. Gordon*, 223 Ariz. 342, 351 ¶ 44 (2010) (holding that a decision would not be retroactive if it would produce substantially inequitable results). Indeed, the parties here agree that it should not be retroactive. Therefore, communications between Wife and her attorney in Mother's presence are protected. However, direct communications between Mother and Wife's attorney, which were not shielded by *Accomazzo*, are not protected, and Mother may also be deposed as a witness regarding facts about the trust.

CRISTINA GELVIN v. HON. PARKER/KERR GELVIN
Opinion of the Court

## CONCLUSION

**¶29**        We vacate the court of appeals' decision, and remand to the trial court for further proceedings in accord with this opinion.

11