**Rusing Lopez Lizardi & Saffer, P.L.L.C.**
7047 E. Greenway Parkway, Suite 400
Scottsdale, Arizona 85254
Telephone: (480) 663-9800
Facsimile: (520) 529-4262
dbernardone@rllsaz.com
aclark@rllsaz.com
*Attorneys for James Edwards*

Daniel B. Bernardone
State Bar No. 033256
Aaron Clark
State Bar No. 038534

Michael Croghan (ARDC #6312601)
Patrick O'Meara (ARDC # 6317487)
Luca Giovine (ARDC #6337664)
Rachel Dudley (ARDC #6352864)
**McDonald Hopkins LLC**
300 North LaSalle St., Suite 1400
Chicago, IL 60654
phone (312) 280-0111
mcroghan@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
*Attorneys for James Edwards*
*Admitted Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Edwards,<br><br>Plaintiff,<br><br>vs.<br><br>Tony Samojen,<br><br>Defendant. | Case No. 3:25-cv-08174-SPL<br><br>**PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF BRADLEY YOUMANS**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

This case involves the sale of a vintage Porsche that Defendant falsely represented to be a rare model called a 914/6 R. The transaction involved Plaintiff trading one of his cars and $400,000 to Defendant for two vintage Porsches and certain Porsche parts. Given the nature of the dispute, both parties have retained experts to value the vehicles and parts exchanged in damages discovery. Shockingly, Defendant's expert, Bradley Youmans, based his valuations of the vehicles entirely on secret, proprietary comparable sales data that he refused to produce—or even describe—in this lawsuit. Youmans' valuation of the Porsche parts is similarly based on comparable sales data that was not disclosed in his report and that he could not identify at his deposition.

Youmans' valuation opinions must be excluded for three reasons. First, under Federal Rule of Evidence 702, his failure to disclose the comparable sales on which his opinions are based renders his opinions not based on sufficient facts or data. Second, Youmans' opinions are not based on a reliable methodology. Instead, Youmans offers *ipse dixit* conclusions based on unidentified comparable sales rather than reasoned explanations about the similarity of the vehicles and parts at issue to the supposed data he considered. Youmans' failure to show his work means that too great an analytical gap exists between the secret data he relied upon and his conclusions. Third, Youmans' opinions must be excluded under Federal Rule of Civil Procedure 37(c)(1) because he failed to disclose the facts and data underlying his opinions as required by Rule 26(a)(2)(B)(ii).

Separately, Youmans—whom Defendant proffers as a car valuation expert—issued supplemental opinions about supposed best practices in classic-car transactions and the usage of the term "GT" by Porsche itself and by car enthusiasts more broadly. Youmans is unqualified to offer these opinions, and neither of them fits the facts of this case anyway. Youmans implies that Edwards should have run Porsche 1543's VIN through a database before the sale, but he offers no opinion what Edwards would have needed to do to perform that research or what the results would have revealed. And Youmans' understanding of the term "GT" has no bearing on whether Edwards was deceived by the window sticker

Samojen created representing that Porsche 1543 is a 914/6 R. These opinions will not help the trier-of-fact decide an issue in question and thus do not fit this case.

For these reasons, as explained below, all of Youmans' opinions must be excluded.

## BACKGROUND

Defendant retained Bradley Youmans of Auto Appraisal Group, Inc. ("AAG") to value the vehicles and parts at issue. Youmans issued four reports: (1) an appraisal valuing a 1970 Porsche 914/6 (VIN ending in 0011) at $350,000 (Ex. 1); (2) an appraisal valuing a 1970 Porsche 914/6 GT Tribute (VIN ending in 1543) at $115,000, with an additional opinion that the vehicle would have been worth $215,000 to $240,000 if it still had its original engine (Ex. 2); (3) an appraisal valuing a 2006 Ford GT at $340,000 (Ex. 3); and (4) a valuation estimating the value of various Porsche racing parts at $75,000 to $100,000 (Ex. 4). Youmans also issued a "Supplement" providing two paragraphs of opinions on best practices involving classic car transactions and the usage of the term "GT" by car enthusiasts and Porsche itself. (Ex. 5.)

### A. Vehicle Valuations

Youmans' "value conclusions" about the vehicles and parts are based entirely on "comps and [his] own personal experience…." (Dep. Tr. of Bradley Youmans ("Youmans Dep.") 22:11–14.) Each of Youmans' vehicle appraisals contains the same boilerplate methodology description titled "Description of Appraisal Process." (Ex. 1 at 6–7; Ex. 2 at 6–7; Ex. 3 at 6–7.) That description states that "[t]he appraised value is reached by using the market data approach and by researching several sources for comparable vehicles, including but not limited to: the Auto Appraisal Group® central database, auction and retail sales results, consultation with knowledgeable specialists, and other resources as they pertain to this particular vehicle." (*E.g.*, Ex. 1 at 6.) The reports all state that "Market Value Research for AAG appraisals includes investigation of current market activity, sales, trends, comparable value analysis and diminished value due to accident damage." (*E.g.*, *id.* at 7.) The reports further state that AAG "gathers sales results to document condition and

sales prices of all types of current and late model automobiles, gathering comparable value information on vehicles based on their history." (*E.g.*, *id.*)

Despite Youmans' ostensible reliance on comparable values in AAG's market data, none of Youmans' reports identifies a single comparable sale that informed his opinion. Youmans not only did not disclose the comparable sales data from the internal AAG database that he relied on in his report, he was unable to testify about any of that data at his deposition. (*See* Youmans Dep. at 64:1–2 (Q: "[C]an you [identify the specific comparable sales you relied on by VIN number, purchase price, and date]?" A: "No. I cannot."); *id.* at 67:15–68:1 (confirming he "can't name a single auction sale, private sale, or dealer listing" supporting his valuations and admitting his "report doesn't cite a single comparable engine sale" or "comparable vehicle sale"); *id.* at 82:8–11 (Q: "[Y]ou can't identify any specific comparable sales that supported your valuation, correct?" A: "Correct.").)

Youmans explained that the data he relied upon was not provided to Edwards in this lawsuit because it is proprietary to AAG:

> Q Okay. But you used your [AAG] internal marketplace data as part of your research that you relied on in the values that you came to in this case, correct?
>
> A Yes.
>
> Q And you just told me that you did not provide that information in your report because it's proprietary data, correct?
>
> A Yes. We just do it for -- use it for research.
>
> Q Right. But you also relied on it in coming to the values in this case, correct?
>
> A Yes.
>
> Q And you did not provide it as part of your report, correct?
>
> A No.
>
> Q Because it's a proprietary data, right?
>
> A Yes.

(*Id*. at 31:17–32:9; *see also id.* at 33:19–23 (admitting that the only market data Youmans relied on was not produced in this case).)

Further, when Youmans was asked if he "follow[ed] a written, repeatable methodology in applying [his] comps and personal experience to reach his valuation numbers," Youmans testified that he used "forms that are in our database," which are "a guideline" for AAG agents. (*Id*. 22:24–23:6.) But those forms were not included in Youmans' report. Indeed, Youmans agreed that steps he followed are not identified in his report in this case. (*See id.* at 23:7–9.) Youmans further testified:

> [Q.] My question is when you – when you actually determine what the condition rating is and when you actually do that market survey, did you, in any -- In your final report, did you identify how you came to your -- specifically how you came to your conclusion?
>
> A. No.

(*Id.* at 24:9–16.)

**B. Parts Valuation**

As to Youmans' valuation of the Porsche parts exchanged in the transaction, Youmans' evaluation was mostly based on "photographs and description[s]" provided by counsel for Samojen. (*Id*. 34:3–16.) In identifying the parts, Youmans testified that he consulted with someone named Billy Fagan, a "Porsche expert" who sits "right behind" Youmans at AAG, to verify the authenticity of certain Porsche parts, and that he relied on Fagan's input in reaching his valuation opinions. (*Id.* at 40:5–23, 42:22–43:2.) Neither the fact of Youmans' consultation with Fagan nor its substance was disclosed in Youmans' report. (*Id.* at 41:13–16.)

In valuing the parts, Youmans again claims to have relied on comparable sales and listings on certain public websites. (*Id*. 70:4–23.) His report does not identify any of the specific listings he relied upon when forming his opinion, and he was unable to identify any of them at his deposition. (*Id.* 72:20–74:14.) As Youmans admitted:

> Q And again, though, you didn't provide in your report any specific listings that verify and validate the numbers you put in here, correct?
>
> A Correct.

Q I'm just taking you at your word that you found these on the websites somewhere, right?

A Yes.

(*Id*. at 74:8–14.)

**C. Supplemental Report**

In a July 30 supplemental report, Youmans opines that transactions involving classic or specialty cars and parts "should be evaluated and documented by a certified inspection agent" to "authenticate condition and correctness of the vehicles before any transaction takes place." (Ex. 5.) Youmans states that VIN numbers and vehicle documentation should "be thoroughly evaluated" and that "[n]ormally a V.I.N. search will reveal the information needed." (*Id.*) Youmans then provides a generic discussion of how the term "GT" is used in the automotive context—explaining that it "typically is used to describe a car with upgraded performance and handling characteristics," and that Porsche used the term to describe its factory-produced race cars, of which "only around 12-14" existed. (*Id.*) Youmans notes that cars built with factory racing parts added after the manufacturing process "are referred to as 'GTs,' even though they are not original factory GTs." (*Id.*) Notably, however, Youmans does not offer any analysis of what a VIN search of Porsche 1543 would have entailed or revealed. (*See* Youmans Dep. at 55:8–23; Ex. 5.) Nor does Youmans offer an opinion on the meaning of the term "914/6 R" or explain the relevance of the usage of the term "GT" to the specific facts in this case. (Ex. 5.)

Additionally, when asked about the sources of his supplement opinions—which go beyond valuation—Youmans admitted that those are based on his "general knowledge" and "experience" rather than any documented or verifiable sources. (*Id.* 105:2–9.) Youmans agreed that he is "not a Porsche expert," but rather these opinions were based on his "general knowledge through all cars, not just Porsches." (*Id.* 106:4–10.)

**<u>LEGAL STANDARD</u>**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. As amended in 2023, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the district court serves as a "gatekeeper" to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quoting *Daubert*, 509 U.S. at 597). The court's "'gatekeeping obligation' applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert's written report contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Exclusion under Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to "provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citations omitted). Where an expert fails to disclose the facts or data underlying his opinions, the burden falls on the proponent of the expert testimony to establish that the failure was either substantially justified or harmless. *See id.* at 1107.

**ARGUMENT**

## I. Youmans' Valuation Opinions Must Be Excluded Under Rule 702.

Youmans' opinions valuing the cars and parts should be excluded under Rule 702 for two reasons. First, Youmans' failure to identify the comparables he used for those valuations prevents Samojen from carrying his burden of establishing that Youmans' opinions are based on sufficient facts or data. Second, Youmans' opinions rely on *ipse dixit* reasoning because they do not explain how Youmans arrived at the vehicle or parts valuation based on the undisclosed comparables he supposedly relied on.

First, Rule 702(b) requires that an expert's testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). "The 'key inquiry' is 'whether an expert had sufficient factual grounds on which to draw conclusions.'" *Engilis*, 151 F.4th at 1051. Put simply, Youmans' disclosures identify ***no comparable sales*** data. (*See supra* at Background, §§ A, B.) Because his valuation opinions for the three vehicles and Porsche parts are all expressly based on comparable sales data, his failure to identify those comparable sales renders them without "sufficient factual grounds" to draw the conclusions Youmans drew.

Second, Youmans' valuations are not the product of reliable principles or methods under Rule 702(c). To show the reliability of his methodology, Youmans was required to "explain precisely how he went about reaching his conclusions" based on the facts or data he relied upon. *Thomas v. BNSF Ry. Co.*, CV-21-01900-PHX-MTL, 2023 WL 5135164, at *4 (D. Ariz. Aug. 10, 2023). In other words, "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" is not admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert's steps in reasoning between foundation and conclusion

must be connected by "objective, verifiable evidence and []methodology," not by "*ipse dixit* linking." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002).

In *In re Leap Wireless International, Inc.*, a valuation expert submitted "a report which inextricably relie[d] on confidential information"—i.e., nonpublic price data known to the expert but not disclosed in litigation—"for the conclusions reached by" the expert. 301 B.R. 80, 84 (Bankr. S.D. Cal. 2003). The court refused to admit the evidence, noting that the expert's reliance on confidential data left the court and opposing party "with the bare option . . . to trust but not to verify," and that "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert should not be admitted." *Id.* at 85.

Youmans' opinions contain the same defect that required exclusion in *Leap Wireless*. Youmans failed to disclose a single comparable sale he relied upon in any of his reports. (*See, e.g.*, Youmans Dep. 82:12–14 ("[Y]our reports do not identify any specific sales that support your valuations, correct?" "Correct.").) Youmans admitted that the market data he relied upon was not produced because "it's proprietary data" belonging to AAG. (*Id.* at 31:15–32:9.) When asked to identify the comparable sales, Youmans could only say the information "would be in the database." (*Id.* at 63:22–64:6.) Because Youmans' comparable-sales data has never been disclosed, neither Edwards nor the Court can ascertain whether Youmans' opinions about the value of the vehicles or parts based on those comparables have "a traceable, analytical basis in objective fact." *In re Leap Wireless*, 301 B.R. at 84 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998)). Youmans' failure to identify the comparables he relied upon prevents the Court from exercising the gatekeeping role, as Youmans himself admits that the Court "cannot verify whether [his] market data actually supports [his] conclusions." (Youmans Dep. at 83:3–8.)

The *ipse dixit* deficiency applies to Youmans' entire methodology. Youmans testified that his analysis followed AAG "forms that are in our database," but agreed that the steps he followed in evaluating the comps with respect to the cars at issue "are not identified in [his] report." (Youmans Dep. at 22:24–23:9.) When asked whether his final report identified "specifically how [he] came to [his] conclusion," Youmans answered

flatly: "No." (*Id.* at 24:9–18.) The court's gate-keeping function when assessing an expert's methodology requires "objective, independent validation," not merely, "the expert's bald assurance[s] of validity." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Without any explanation from Youmans as to how he determined the values of the cars and parts at issue, Edwards cannot test the soundness of his analysis on cross-examination, and the Court cannot perform its gatekeeping function.

Similarly, for Youmans' parts valuations, he admitted that he relied on retail listings from websites such as eBay and MAR Motorsports. (Youmans Dep. 43:3–15.) Although Youmans here relied on publicly available data—as opposed to the secret, proprietary data he used for his vehicle valuations—he still failed to identify the actual comparable sales and listings that he based his opinions on, both in his report and at deposition. The parts valuation also improperly relies on undisclosed opinions of Youmans' coworker, Billy Fagan. Youmans testified that he consulted with Fagan—whom he described as AAG's Porsche expert—to verify the authenticity of certain parts and to assist with valuation. (Youmans Dep. 43:15–44:5.) But Fagan's analysis was not disclosed in Youmans' report, Samojen has not disclosed Fagan as an expert, and Fagan's opinions are not subject to cross-examination. Youmans cannot bootstrap the reliability of his opinions by invoking undisclosed consultations with his colleague that he claims corroborate his conclusions.

In short, Youmans' valuation opinions are based on undisclosed comparable sales with no explanation of how he used those sales to reach his conclusions. That epitomizes improper *ipse dixit* expert testimony. *See In re 3dfx Interactive, Inc.*, 389 B.R. 842, 884 (Bankr. N.D. Cal. 2008) (finding expert's *ipse dixit* "insufficient" where the conclusion "rests only on [the expert] saying it is so"); *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 964–65 (N.D. Cal. 2025) (excluding expert opinion that "rest[ed] on guesswork" and was "connected to existing data only by the *ipse dixit* of the expert" (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014)). Youmans' valuations should be excluded in their entirety.

## II. Youmans' Valuation Opinions Must Be Excluded Under Rule 37(c)(1).

Independent of the Rule 702 deficiencies, Youmans' opinions must be excluded under Federal Rule of Civil Procedure 37(c)(1) because Youmans did not disclose "the facts or data [he] considered … in forming" his opinions, as required by Rule 26(a)(2)(B)(ii). That rule requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The Ninth Circuit has emphasized that Rule 37(c)(1) is "self-executing" and "automatic." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). As the court explained, the "automatic" nature of Rule 37(c)(1) sanctions "provide[s] a strong inducement for disclosure of material." *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's note). Where an expert fails to disclose required information, exclusion is mandatory "unless the failure was substantially justified or is harmless." *Cherry v. Washington Dep't of Fish & Wildlife*, 25-4763, 2026 WL 2451427, at *12 (9th Cir. Aug. 21, 2026) (quoting Fed. R. Civ. P. 37(c)(1)). The burden is on the proponent of the evidence to establish that the failure was substantially justified or harmless. *Yeti*, 259 F.3d at 1107.

Youmans' reports plainly fail to satisfy Rule 26(a)(2)(B)(ii). Each report references "market data" and "comparable value analysis," but none of the reports identifies the specific comparable sales that Youmans purportedly relied upon. (*See* Exs. 1–4.) When asked at deposition to identify these comparable sales, Youmans could not do so. (*See* Youmans Dep. at 64:1–2.) Indeed, Youmans testified that the comparable vehicle sales data was not produced because it was AAG's proprietary information. (*See* Youmans Dep. 32:8–18.)

Courts in the Ninth Circuit have excluded expert opinions for similar disclosure failures. *Leap Wireless* held that allowing an expert who relied on undisclosed confidential pricing data to form his opinion to testify "would condone the …. clear violation of the disclosure obligations of Rule 26(a)(2)(B), which was added to eliminate a litigant's ability to claim that materials furnished to their experts are privileged or otherwise protected when

their expert witness is testifying or being deposed." 301 B.R. at 85. And in *MS Amlin Marine NV v. Delta Marine Industries Inc.*, the court excluded an expert report under Rule 37 where the expert's opinions were not properly disclosed. 348 F.R.D. 658 (W.D. Wash. 2025). The court explained that "without any express delineation or clarification" of the bases for an expert's opinions, the opposing party could not adequately prepare to cross-examine the expert or present rebuttal testimony. *Id*. at 678.

The disclosure failure here is neither substantially justified nor harmless. Defendant offers no justification for Youmans' failure to identify the comparable sales underlying his opinions. And the failure is far from harmless: without knowing what comparable sales Youmans relied upon, Edwards cannot cross-examine him about whether those sales are truly comparable or even evaluate whether the sales support Youmans' conclusions. Further, the lack of disclosure rendered it impossible for Edwards' expert to provide a rebuttal opinion addressing Youmans' opinions based on the data he considered. This is precisely the kind of prejudice that Rule 37(c)(1) is designed to prevent.

For these reasons too, Youmans' valuation opinions must be excluded.

**III. Youmans' Supplemental Opinions Must Be Excluded.**

Finally, the opinions Youmans disclosed in his supplemental report must be excluded for two reasons. First, Youmans is not qualified to give them. Second, they do not fit this case, so they will be unhelpful to the trier of fact.

First, Youmans has been proffered as an expert on car valuation. He is not an expert on "transactions involving classic or specialty cars," and so his opinions about the diligence a purchaser in such transactions should undertake are outside his area of expertise. (*See* Ex. 5.) He is also admittedly not an expert on Porsches. (Youmans Dep. at 106:4–10.) So his opinions on what the term "GT" means to Porsche and with respect to Porsche vehicles are also outside his area of expertise. Youmans lacks the expertise to offer these opinions and should be barred from offering them. *See De Freitas v. Hertz Corp.*, 23-15913, 2025 WL 655058, at *2 (9th Cir. Feb. 28, 2025) (affirming exclusion of expert who "admitted he had

no expertise, knowledge, or training regarding industry standards for lane width before reviewing materials in the instant case").

Second, Youmans' opinions on these issues do not "fit" this case. To be admissible under Rule 702, an expert's "testimony must fit the case such that his opinion is relevant." *Dominguez v. Wallick & Volk Inc.*, CV-22-00768-PHX-MTL, 2024 WL 3924714, at *1 (D. Ariz. Aug. 23, 2024). Youmans' opinions on the usage of the term "GT" by automotive enthusiasts, Porsche itself, and unspecified "people" who own GTs and brands have no bearing on this case. (*See* Ex. 5.) The misrepresentations Samojen made to Edwards involved describing Porsche 1543 as a 914/6 R. Whether or not Porsche 1543 might fairly be described as a "GT"—which Youmans' supplemental report does not actually opine on—does not fit the case because it will not help the trier of fact decide whether Samojen made a misrepresentation.

Similarly, Youmans opines on how someone purchasing a "classic or specialty car[]" should have the car "evaluated and documented by a certified inspection agent." (Ex. 5.) He goes on to say that the "V.I.N. numbers and any documentation for the vehicles needs to be thoroughly evaluated to determine if the vehicles are what they are presented as," and says that "[n]ormally a V.I.N. search will reveal the information needed." (*Id.*) Youmans offers no opinion as to what a V.I.N. search would have revealed had Edwards performed one. Instead, he insinuates that Edwards could have prevented himself from being defrauded by performing such diligence without actually saying so. Relatedly, Youmans offers no facts or data regarding the results of such a V.I.N. search on Porsche 1543, nor does he identify the methods Edwards would have needed to use to perform such a search on Porsche 1543, given its age. Instead, he says that "Porsche offers many options for verifying the history and original technical specifications of its vehicles accessible through its website or local dealers." (*Id.*)

In short, Youmans is unqualified to offer these opinions, which do not fit the case. They should be excluded.

**CONCLUSION**

WHEREFORE, Edwards respectfully requests that this Court grant this motion and enter an order excluding Bradley Youmans' opinions in their entirety.

DATED this 18th day of September, 2026.

RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.

*/s/ Daniel B. Bernardone (With Permission)*
Daniel B. Bernardone
Aaron R. Clark
*Attorneys for Plaintiff*

MCDONALD HOPKINS LLC

*/s/ Patrick O'Meara*
Michael Croghan
Patrick O'Meara
Luca Giovine
Rachel Dudley
*Attorneys for Plaintiff*
*Admitted Pro Hac Vice*