SILENCE LAW GROUP

**Silence Law Group, PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com

**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Edwards,<br><br>Plaintiff,<br><br>v.<br><br>Tony Samojen,<br><br>Defendant. | Case No. 3:25-CV-08174-SPL<br><br>**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Hon. Steven Paul Logan) |

Plaintiff James Edwards, an Arizona vehicle collector, traded one of his vehicles and cash for two of Defendant Tony Samojen's vehicles and racing parts. Edwards pleads that he negotiated this deal in Arizona, relied on alleged misrepresentations in Arizona, closed the sale in Arizona, and performed the contract in Arizona. Yet, his complaint invokes California consumer statutes. He also asks the Court to unwind the 2021 transaction in equity despite pleading adequate remedies at law.

Samojen moves for summary judgment on Edwards's Count V invoking the California Consumer Legal Remedies Act and Count VI invoking the California Unfair Competition Law because Arizona law governs. Samojen moves for summary judgment for Defendant on Plaintiff's equitable claims to the extent the Court finds it has equitable jurisdiction over those claims and requests in the alternative that they be dismissed.

SILENCE LAW GROUP

**Background**

On November 2, 2021, Edwards exchanged $400,000 cash plus his 2006 Ford GT for Samojen's two 1970 vintage Porsches—"Porsche 0011" and "Porsche 1543"—and associated racing parts. Statement of Facts ("SOF") at 1 ¶ 1. Edwards drafted the one-page agreement himself. SOF at 1 ¶ 2. Edwards negotiated the deal with Samojen by email and telephone from Arizona and in person in Arizona. SOF at 2 ¶ 7. Edwards wired his cash from Arizona and arranged for delivery of the parties' vehicles from Arizona. SOF at 2 ¶¶ 9–10.

Edwards alleges Samojen misrepresented Porsche 1543 as a rare factory "914/6 R" competition car, principally through a reproduction window sticker. Doc. 1 (Complaint) at 1 ¶¶ 1–3. Edwards sued in August 2025, pleading fraud, negligent misrepresentation, breach of express warranty, and a claim under Arizona's Consumer Fraud Act (Counts I–IV), plus the two California statutory counts at issue here (Counts V and VI). Doc. 1 at 10–13 ¶¶ 56–86. He prays for rescission of the exchange or, "[i]n the alternative to rescission," rescissory damages, benefit-of-the-bargain compensatory damages, reliance damages, and consequential and incidental damages, along with punitive damages. Doc. 1 at 14 (Prayer A–C). He "demands a trial by jury on all issues so triable." Doc. 1 at 15.

By the time Edwards arguably first offered to return the cars through his pleading for rescission, he had transformed Porsche 1543 beyond his ability to restore. Twenty paid work orders show approximately $170,000 in work and modifications over thirty months, including a part from a donor chassis, a rebuilt gearbox, and a different engine replacing the specialty competition engine Samojen had painstakingly acquired and restored. SOF at 4–5 ¶¶ 32–35, 42–43. Not only did Edwards transform Porsche 1543 from what Samojen delivered, he transferred Porsche 1543's beating heart—its specialty engine—into another of his vehicles that he tried to auction off even while litigating this case and ostensibly seeking rescission. SOF at 5–6 ¶¶ 42, 44–50.

Discovery is closed. Doc. 22 at 2. Edwards's retained expert has served a retrospective appraisal Edwards used to quantify his claimed damages. SOF at 4 ¶ 28.

## Argument

### I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," and the Court may grant it on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Samojen seeks summary judgment on Counts V and VI in full and on the availability of rescission and rescissory relief as part of the remedy sought on every count. Because Edwards bears the burden to prove his claims, to prevail on this motion Samojen must show the Court "that there is an absence of evidence to support [Edwards's] case" as to the issues addressed in this motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In response, Edwards may not rest on his pleadings but must come forward with specific facts showing a genuine issue for trial and disputes over material facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### II. The California Consumer Legal Remedies Act claim of Count V fails as a matter of law.

#### A. Edwards never gave the required pre-suit notice, and Count V seeks only damages.

The California Consumer Legal Remedies Act ("CLRA") conditions an action under the statute for anything other than injunctive relief on a specific pre-suit demand. See Cal. Civ. Code § 1782(a). The consumer must notify a prospective defendant in writing of "the particular alleged violations of Section 1770" and demand that the prospective defendant "correct, repair, replace, or otherwise rectify" the goods at least thirty days before filing the lawsuit. Id.

Only a claim for injunctive relief is exempt from the notice requirement. See id. § 1782(d). California courts read that exemption strictly and explicitly interpret "an action for damages" in § 1782(a) as requiring notice of claims seeking any damages exclusive of injunctive relief, regardless of whether they are "money damages." See *DeNike v. Mathew Enters.*, 76 Cal. App. 5th 371, 380–81 (Cal. App. 2022). The *DeNike* court explained: "By

interpreting 'an action for damages' to preclude all actions under the CLRA, except for claims for injunctive relief, we give effect to each provision of the statute . . . ." *Id.*

The closest thing to CLRA pre-suit notice Edwards gave was a demand letter Edwards's counsel sent on July 28, 2025. SOF at 2 ¶ 14. But that letter does not meet the notice requirements of § 1782(a). *First*, it identifies no "particular alleged violations of Section 1770." It never mentions the CLRA, § 1770, or § 1782, invoking instead "intentional fraud/misrepresentation," "breach of express warranty," and unspecified "consumer fraud statutes." SOF at 2 ¶ 15. *Second*, it demands no correction. It asks for documentation, return of the $400,000, and return of the Ford GT "with additional compensation to be determined"—that is, the consideration Edwards originally paid plus extra money—not the statute's required demand to "correct, repair, replace, or otherwise rectify." SOF at 3 ¶ 16. *Third*, even if the letter met those first two requirements, the notice period was too short: Edwards filed this action twenty-five days after sending the letter. SOF at 3 ¶ 22. The only other pre-suit writing between the parties providing anything approaching CLRA notice is a June 2025 email from Edwards himself, which cites no statute and asks only for "a gentlemanly means to resolve this situation." SOF at 2–3 ¶¶ 13, 21, 23.

Ten and a half months into this lawsuit, Edwards's counsel finally served a § 1782 notice: a July 6, 2026 letter invoking § 1770(a) and demanding that Samojen "correct, repair, replace, or otherwise rectify Porsche 1543" within thirty days. SOF at 3 ¶ 24. The letter concedes but does not cure the notice defect. The notice arrived long after "[t]hirty days or more prior to the commencement of an action for damages," Cal. Civ. Code § 1782(a), and it could not retroactively give Samojen the pre-suit cure period the statute contemplates.

The statute provides a mechanism for post-filing compliance: a consumer may commence an action for injunctive relief without notice, then serve a § 1782(a) notice, wait thirty days, and amend the pleading to add a damages claim. *Id.* § 1782(d); see also *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1260–61 (Cal. App. 2009) ("[T]he statute expressly allows such an amendment, as long as it is done 30 days or more after filing of the original complaint and compliance with the notice requirement"). Plaintiff's attempt

inverted the allowed cure: he first sought only damages and never pleaded an injunctive-relief claim to which a damages demand could then attach by amendment. Even if the late demand somehow cured Edwards's failure to notice, the car Edwards demands Samojen to "repair" has been in Edwards's exclusive possession since 2021 and was rebuilt to Edwards's own specifications around a replacement engine Edwards installed. SOF at 4 ¶¶ 29, 31, 35.

Separately from the untimeliness of Edwards's July notice, Edwards never filed the action for injunctive relief that triggers the statute's cure for late notice. See Cal. Civ. Code § 1782(d). Even if repleading could rescue this claim under the statute, an amendment reasserting CLRA damages based on the July 2026 letter would be futile because the CLRA does not govern this Arizona transaction. See Part II.B, below. Count V is barred by § 1782(a), and summary judgment should be entered on it.

**B. The California Consumer Legal Remedies Act does not reach this transaction governed by Arizona law.**

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 397 n.6 (D. Ariz. 2017). For claims of fraud and misrepresentation, Arizona applies the law of the state with the most significant relationship to the transaction and the parties, following § 148 of the Restatement (Second) of Conflict of Laws. *Rhoads v. Harvey Pubs., Inc.*, 604 P.2d 670, 673 (Ariz. Ct. App. 1979).

Edwards's pleading locates this transaction in Arizona. He alleges that he is an Arizona citizen, Doc. 1 at 2 ¶ 7, that he relied on the alleged misrepresentations "while located in Arizona," *id.* at 3 ¶ 10, that his "negotiations with Samojen were in Arizona," *id.*, that "the sale took place in Arizona," *id.*, and that he performed the contract in Arizona, *id.* Based on the same alleged conduct, he pleads a claim under Arizona's own consumer-fraud statute for "deceptive acts or practices directed at Edwards who was located in Arizona." *Id.* at 12 ¶ 76. The record matches the pleading: Edwards drafted the agreement, negotiated it by email and telephone from Arizona and in person in Arizona, wired the money from Arizona, and arranged for interstate transport of the vehicles from Arizona. SOF at 1–2 ¶¶ 2, 7, 9–10; Doc. 1 at 3 ¶ 10.

SILENCE LAW GROUP

California contacts do not change the analysis. Samojen lives in California; Edwards inspected Porsche 0011 and saw Porsche 1543 there, and the Ford GT was delivered there. SOF at 1–2 ¶¶ 3, 6, 8, 11. But under the applicable Restatement section, the Court must consider the place where the plaintiff acted in reliance and the place where the plaintiff received the representations. *See* Restatement (Second) of Conflict of Laws (1971) § 148(2)(a)–(b) ("Restatement"); *Rhoads*, 604 P.2d at 673 (applying Restatement § 148). And when two or more of the § 148(2) contacts—other than the defendant's domicile—are located in a single state, that state "will usually be the state of the applicable law." Restatement § 148 cmt. j. Edwards pleaded that he "reli[ed] on Samojen's misrepresentations while located in Arizona" and that he received the misrepresentations in Arizona. Doc. 1 at 3 ¶ 10 (reliance), 7–8 ¶¶ 34–35 (received misrepresentations). The contacts of receipt of representations, reliance on them, Edwards's residence, and the place of Edwards's performance all lie in Arizona. The only § 148(2) California contact other than Samojen's residence, which comment j sets aside, is the location of the Porsches before delivery. Arizona law, therefore, controls.

One body of consumer-protection law governs the transaction at issue. Edwards cannot plead an Arizona transaction to establish venue and his Arizona Consumer Fraud Act claim while simultaneously pleading a California transaction for Counts V and VI. His pleading establishes that the transaction is Arizona's. Because Count V is premised on a California statute that does not reach this Arizona transaction, it fails as a matter of law on this second, independent ground.

## III. The California Unfair Competition Law claim of Count VI fails as a matter of law.

### A. The California Unfair Competition Law affords only equitable remedies, and Edwards has an adequate remedy at law.

A private plaintiff's remedies under the California Unfair Competition Law ("UCL") are limited to equitable relief: restitution and injunction. Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944 (Cal. 2003) ("A UCL action is

SILENCE LAW GROUP

equitable in nature; damages cannot be recovered."). Count VI accordingly seeks restitution. Doc. 1 at 13 ¶ 86. But this Court sits in diversity, and "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Sonner v. Premier Nutrition Co.*, 971 F.3d 834, 844 (9th Cir. 2020). And a district court's equitable jurisdiction over such a claim "can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).

Edwards cannot make that showing. He pleads full compensatory, consequential, and punitive damages on Counts I–IV for the same underlying transaction, alleged conduct, and claimed injury. Doc. 1 at 14. His damages claims "predicated on the same conduct as his claims for equitable relief . . . undermine[] any potential inadequacy of legal remedies." *See Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023). And his retained expert has provided appraisals of market value of the cars that Edwards uses to quantify his claimed damages to the dollar. SOF at 4 ¶ 28. Further, Edwards demanded "a trial by jury on all issues so triable," Doc. 1 at 15, a demand with meaning only for the legal claims he intends to try to that jury.

Pleading in the alternative does not save the Count. "The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not. *Sonner*, 971 F.3d at 844." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021). Whatever indulgence alternative prayers receive at the pleading stage is unavailable at summary judgment, where the adequate-remedy bar is applied on the developed record. *See Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 661–63 (N.D. Cal. 2020) (granting summary judgment on a UCL claim when plaintiff "fail[ed] to allege or demonstrate that any remedy at law [was] inadequate" and sought a legal remedy through another claim "based on the same alleged conduct as her equitable claim"). The UCL "is not 'an all-purpose substitute for a tort or contract action'" but "provides for

equitable relief only," and "[a]n adequate legal remedy precludes a party from seeking equitable relief." *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1032–33 (C.D. Cal. 2021) (citations omitted). Count VI should be resolved in Samojen's favor as a matter of law.

### B. Arizona law governs Count VI as it governs Count V.

The choice-of-law analysis set out for Count V applies with equal force here. *See* Part II.B, above. An Arizona resident's Arizona-centered purchase does not invoke California's consumer statutes against the very conduct Edwards has already pleaded under Arizona's own consumer-fraud act. Count VI fails as a matter of law on this independent ground.

## IV. Edwards cannot obtain rescission or rescissory relief.

### A. Rescission and rescissory damages are equitable relief precluded by Edwards's adequate legal remedies.

The rescission Edwards seeks, (Doc. 1 at 14), and the "[r]escissory damages" he pleads as its substitute, (*id.*), are equitable relief. The same rule that disposes of Count VI precludes both: a federal court sitting in diversity may not grant equitable relief to a plaintiff who has an adequate remedy at law. *Sonner*, 971 F.3d at 844. That principle is "a basic doctrine of equity jurisprudence." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). "The necessary prerequisite" to equitable relief is "the absence of an adequate remedy at law." *Sonner*, 971 F.3d at 842 (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)).

Edwards's own filings defeat the required showing. He prays "[i]n the alternative to rescission," rescissory damages, benefit-of-the-bargain compensatory damages, reliance damages, and consequential and incidental damages, Doc. 1 at 14, and he separately prays punitive damages and relief "under the consumer protection statutes," Doc. 1 at 14–15. His prayer concedes that money can compensate him even for the Ford GT's "change in condition and/or added milage [sic] since the sale." Doc. 1 at 14. His retained expert has served value appraisals that Edwards uses to quantify his claimed damages. SOF at 4 ¶ 28. Edwards himself treated the cars as marketable when, nine weeks after suing Samojen for "rescission," he was weighing whether to consign both Porsches to a January 2026 auction, "depending on" how



SILENCE LAW GROUP

this lawsuit "goes." SOF at 5 ¶¶ 38–40. And he demanded a jury "on all issues so triable." Doc. 1 at 15. Rescission is an equitable remedy not triable to a jury. By demanding a jury to hear his claims for full legal damages, Edwards tells the Court that a remedy at law will make him whole.

Rule 8 permitted Edwards to plead inconsistent alternatives at the outset. But discovery is now closed, his damages model is served, and he must establish the inadequacy of his legal remedies to seek equitable relief. *Sonner*, 971 F.3d at 844; *Sharma*, 524 F. Supp. 3d at 907. He cannot, and the Court, therefore, cannot grant the equitable rescissory relief he seeks.

### B. Rescission fails under Arizona law because Edwards cannot restore the status quo and never made a sufficient offer to do so.

The "general rule that the restoration of the parties to their status quo ante prior to the contract is a prerequisite to rescission" is "well-established in Arizona." *Jennings v. Lee*, 461 P.2d 161, 166 (Ariz. 1969). Further, a party seeking rescission must "restore or offer to restore to the other party that which he has received under the contract," *id.* at 165, which requirement may be met through the party's pleadings in equity, *id.* at 165–66. Edwards does not meet either requirement because (1) he has modified Porsche 1543 to the point where its return cannot restore the parties to their status quo ante, and (2) the pleadings do not offer to restore the Parts he received from Samojen. Amendment to the pleadings cannot cure the second defect because, even if an offer to restore the Parts were not omitted, Edwards's words and conduct contradict any offer of restoration of the Porsches construable from his pleadings and establish his "unclean hands."

Edwards cannot restore what he bought. Edwards testified that Porsche 1543 has changed "[c]onsiderably" since he bought it: "It's had a ground-up restoration, both body, interior, and mechanically." He also replaced its rare engine. SOF at 4–5 ¶¶ 31, 35, 42. Twenty paid work orders spanning February 2023 through August 2025 detail approximately $170,000 of work: a body stripped to bare metal, a donor-chassis section installed, the gearbox rebuilt with new internals, and a replacement engine installed. SOF at 4 ¶¶ 32–35. He replaced the original engine, rebuilt the car to his own specifications around the replacement engine,

SILENCE LAW GROUP

and tried to dispose of the original engine for a profit, as described below. Nothing can restore Porsche 1543 to the car Samojen delivered in 2021. It is a different car, missing its original powertrain and rebuilt to Edwards's specifications over thirty months.

Edwards's words and actions belie any offer of restoration of the Porsches and show "unclean hands." Edwards's pleadings do not meet the requirement for an offer of restoration because the equitable prayer for relief makes no mention of the Parts that were a component of the transaction. Edwards prays only for rescission of the exchange of vehicles and cash. An amendment to add the Parts to his pleadings would be futile because Edwards's undisputed words and conduct establish that the offer in his pleadings to restore even the Porsches to Samojen was empty.

Edwards's counsel sent a pre-litigation demand letter on July 28, 2025. SOF at 2 ¶ 14. The letter warned Samojen that Edwards was entitled to "compensatory damages" and "would recover substantial punitive damages as a multiple of his compensatory damages," as well as pre- and post-judgment interest. SOF at 3 ¶ 17. The letter made no mention of rescission. SOF at 3 ¶¶ 16, 19. Instead, it suggested Samojen could avoid litigation by providing documentation on Porsche 1543, returning the $400,000 cash payment and Ford GT—all the consideration provided by Edwards in the transaction—and "additional compensation" to make up for differences in mileage and condition of the Ford GT. SOF at 3 ¶ 16. The letter did not mention the Parts, and there was no offer of restoration of the Porsches or the Parts. SOF at 3 ¶¶ 18–19. To the contrary, Edwards insisted, "The two Porsche vehicles will remain with Mr. Edwards," unless Samojen "fully rermburse [sic] Mr. Edwards for all expenses incurred in reliance on [his] fraud." The letter said nothing about the altered state of Porsche 1543 beyond a vague reference to "invest[ment of] nearly $180,000 out of pocket" into both Porsches. SOF at 3 ¶ 20. [Produced text of the letter reads "rermburse" — confirm spelling against the letter image; adjust the [sic] if OCR misread it.]

The first offer to return the Porsches outside of the complaint was in Edwards's disclosure statement served in October 2025. There, "Plaintiff requests" the return of the $400,000 cash and Ford GT in exchange for the two Porsches, plus compensation for any loss

SILENCE LAW GROUP

in value to the Ford GT from increased mileage or changed condition and reimbursement for the "out-of-pocket reliance damages that [Edwards] spent on Porsche 0011 and Porsche 1543," which were "still being calculated." SOF at 4 ¶ 26. The offer was insufficient because, like the complaint, it did not account for the Parts that were part of the exchange or for the change of state of Porsche 1543. SOF at 4 ¶ 27. And the offers of both the complaint and disclosure were belied by Edwards's words and actions.

Edwards had removed the specialty engine installed in Porsche 1543 in February 2023. SOF at 4–5 ¶¶ 34, 42. He installed it in another Porsche he owns, "Porsche 0705." SOF at 6 ¶ 46. Then, in November 2025, three months after filing his lawsuit allegedly seeking rescission, Edwards consigned Porsche 0705—with Porsche 1543's engine installed—for sale at an auction to be held the next January, in 2026. SOF at 6 ¶¶ 46–47. In the auction listing, Edwards advertised Porsche 0705 with the same "R" identification he alleged Samojen falsely used for Porsche 1543 and with pictures of Porsche 1543's cannibalized engine, seeking a price of $900,000 to $1.1 million. SOF at 6 ¶¶ 48–50.

Edwards cannot simultaneously offer to restore Porsche 1543 to Samojen as delivered while refusing to restore its engine and attempting instead to profit from the sale of that core component of Porsche 1543. Edwards offers to restore a substitute for what he received: Porsche 1543 rebuilt around a different engine. Arizona law permits restoration with a substitute only for "fungible things," such as shares of stock, where one unit is indistinguishable from another. *See Grand v. Nacchio*, 147 P.3d 763, 775–77 ¶¶ 39–41, 777–78 ¶¶ 47–48 (Ariz. Ct. App. 2006). Porsche 1543 containing the rare engine with which it was delivered is not "fungible." No substitute for what Samojen delivered now exists, and Edwards tried to sell off the engine that might make restoration possible.

Edwards's post-filing conduct matched his refusal. Four days after he sued, his shop was still performing work on Porsche 1543. SOF at 5 ¶ 37. Then, in December 2025, he renewed insurance for Porsche 1543 at an agreed value of $1,000,000 and Porsche 0011 for an agreed value of $750,000—$600,000 and $250,000 more, respectively, than the agreed values on the policy effective the day after he took delivery. SOF at 1 ¶ 11, 4–5 ¶¶ 30, 41.

SILENCE LAW GROUP

After filing his lawsuit for "rescission," Edwards contemplated selling not just pieces of the Porsches but the Porsches themselves. Just before Edwards served his disclosure statement, an auction specialist working with Edwards reported to RM Sotheby's management that Edwards "might have the first production 914/6 made [Porsche 0011] and a fake 914/6R [Porsche 1543] to sell, depending on" how "the lawsuit against the guy who sold him" the cars "goes." SOF at 5 ¶¶ 38–40. A party who elects rescission holds the property to give it back. Edwards held Porsche 0011 and Porsche 1543 to decide whether to sell them and to try to profit from his cannibalization of Porsche 1543. Whatever offer of restoration his prayer implied, his conduct withdrew it.

A party seeking equitable relief "must come into court with clean hands or he will be denied relief, regardless of the merits of his claim," and the requirement applies to conduct "immediately related to the cause in controversy." *In re Everett*, 364 B.R. 711, 723 (Bankr. D. Ariz. 2007). One who invokes equity must come with clean hands "and keep them clean" or be denied relief. *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186 (Bankr. D. Ariz. 2015) (quoting *Hall v. Wright*, 240 F.2d 787, 794–95 (9th Cir. 1957)). In contrast to the *Jennings* plaintiff who "bent over backward to protect [the defendant's] interest in" the property at issue, 461 P.2d at 166, Edwards rebuilt Porsche 1543 to his own specifications, stripped it of its engine for use in a different post-lawsuit sale, refused to restore Porsche 1543 or the racing parts as delivered, and contemplated selling both Porsches to a third party after suing ostensibly for rescission. SOF at 3–6 ¶¶ 18–20, 31–35, 38–40, 46–47.

If the Court finds it has equitable jurisdiction to adjudicate the merits of Edwards's equitable claims, it should enter summary judgment on them against Edwards because Edwards by his own conduct cannot return the parties to the status quo ante, and/or because Edwards never offered to restore the parts he received as part of the transaction and never substantively offered to restore the Porsches, and/or because he seeks equitable relief with unclean hands. If the Court determines it lacks equitable jurisdiction to make a merits determination on Edwards's state-law equitable claims, then it should dismiss them without

prejudice, in conformance with *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314–15 (9th Cir. 2022).

**Conclusion**

The Court should enter summary judgment in favor of Defendant on Plaintiff's California statutory claims in Counts V and VI of his Complaint.

The Court should either enter summary judgment for Defendant on Plaintiff's equitable claims or dismiss them without prejudice.

DATED this 18th day of September, 2026.

**Silence Law Group, PLLC**

*/s/ Trevor Cook*
Jeffrey Silence
Trevor Cook

*Attorneys for Defendant*



SILENCE LAW GROUP