**Silence Law Group, PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com

**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Edwards,<br>Plaintiff,<br>v.<br>Tony Samojen,<br>Defendant. | Case No. 3:25-CV-08174-SPL<br><br>**DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Hon. Steven Paul Logan) |

**The Transaction**

1. On November 2, 2021, Plaintiff James Edwards and Defendant Tony Samojen executed a one-page agreement (the "Agreement") to exchange Edwards's $400,000 cash and 2006 Ford GT for Samojen's Porsche 914/6 chassis 914 043 0011 ("Porsche 0011"), Porsche 914/6 chassis 914 043 1543 ("Porsche 1543"), and associated racing parts and materials ("Parts"). Ex. B.

2. Edwards drafted the Agreement himself. Ex. C at 4:10–12.

3. Samojen resides in Camarillo, California. Ex. A at 1 ¶ 3.

4. Edwards is a citizen and resident of Arizona. Doc. 1 at 2 ¶ 7.

5. Edwards visited Samojen's home on October 23 and 24, 2021. Ex. A at 1 ¶¶ 4–5.

SILENCE LAW GROUP

6. During Edwards's time at Samojen's home, he inspected Porsche 0011 and at least saw Porsche 1543 in person. Ex. A at 1 ¶ 6.

7. The parties negotiated the Agreement by email and telephone while Edwards was in Arizona, and in person in Arizona. Ex. D at 103:22–25; Ex. E at 55:11–13, 66:5–17, 68:1–6, 69:10–19; Ex. F; Ex. G; Doc. 1 at 2 ¶ 10.

8. The Agreement's only performance term is that Edwards will transport the Ford GT to Camarillo. Ex. B.

9. Edwards wired the $400,000 from Arizona. Ex. H.

10. Edwards arranged for the interstate transport of the parties' vehicles from Arizona. Ex. E at 69:20–24; Ex. I; Ex. J.

11. On November 18, 2021, the transport service Edwards arranged delivered the Ford GT to Samojen and picked up the Porches and Parts to deliver to Edwards. Ex. E at 69:20–24; Ex. K.

12. Edwards alleges that he "bec[a]me aware of" an online forum discussion in which "automotive experts" "concluded that the [window sticker Edwards alleged misrepresented Porsche 1543 as a 9146 R] was a forgery and that Porsche 1543 was not a genuine 914/6 R." Doc. 1 at 9 ¶¶ 42–43.

**<u>Pre- and Post-Litigation Notices and Offers</u>**

13. On June 13, 2025, Edwards emailed Samojen accusing Samojen of representing Porsche 1543 as a 914/6 "R," claiming that Edwards had spent "considerable funds . . . under the assumption the car was as represented," expressing hope for "a gentlemanly means to resolve this situation," and citing no statute. Ex. L.

14. Samojen received a demand letter from Edwards's counsel dated July 28, 2025. Ex. A at 2 ¶¶ 12–13; Ex. M.

15. The July 28, 2025 letter did not mention the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, or § 1782 and invoked "intentional fraud/misrepresentation," "breach of express warranty," and unspecified "consumer fraud statutes." Ex. M at SAMOJEN0180.

16. The July 28, 2025 letter demanded (1) documentation of Porsche 1543's provenance, (2) return of the $400,000 cash payment, and (3) return of the 2006 Ford GT "with additional compensation to be determined based on the current mileage and condition of the Ford GT", and it contained no demand that Samojen correct, repair, replace, or otherwise rectify the goods. Ex. M at SAMOJEN0180.

17. The July 28, 2025 letter warned that Edwards was entitled to "compensatory damages" and he "would recover substantial punitive damages as a multiple of his compensatory damages," plus pre- and post-judgment interest. Ex. M at SAMOJEN0180.

18. The letter did not mention the Parts. Ex. M.

19. The letter did not offer to restore to Samojen any of the consideration Samojen had given to Edwards under the Agreement. Ex. M.

20. Instead, the letter stated, "The two Porsche vehicles will remain with Mr. Edwards," recoverable only if Samojen "fully reimburse Mr. Edwards for all expenses incurred in reliance on [his] fraud," referencing "invest[ment of] nearly $180,000 out of pocket in reliance on [his] fraudulent representations." Ex. M at SAMOJEN0180.

21. Samojen received no other written pre-suit demand from Edwards. Ex. A at 2 ¶ 14.

22. Edwards filed this action on August 22, 2025, twenty-five days after his counsel sent the July 28, 2025 letter. Ex. M; Doc. 1.

23. Other than the June 13, 2025 email from Edwards, Ex. L, and the July 28, 2025 letter from Edwards's counsel, Ex. M, Samojen received no written notice from Edwards alleging legal claims against him or suggesting Edwards would sue him. Ex. A at 2 ¶ 15.

24. Edwards's counsel sent Samojen by certified mail a letter dated July 6, 2026, asserting a violation of Cal. Civ. Code § 1770(a) and demanding that Samojen "correct, repair, replace, or otherwise rectify Porsche 1543" within thirty days. Ex. A at 2 ¶¶ 16–17; Ex. N.

25. As of this filing, Edwards has not amended his complaint or moved to do so. *See generally* Docket.



SILENCE LAW GROUP

SILENCE LAW GROUP

26. Edwards's Rule 26(a)(1) initial disclosures, served October 30, 2025, request return of the $400,000 and the Ford GT, state that "Plaintiff would return both Porsche 0011 and Porsche 1543 to Mr. Samojen," and demand compensation for any loss of value to the Ford GT plus reimbursement of the out-of-pocket reliance amounts "spent on Porsche 0011 and Porsche 1543," which were "still being calculated." Ex. O at 3:9–18.

27. The disclosures do not mention rescission of the Parts. Ex. O.

28. Edwards's retained expert served a retrospective appraisal by which Edwards quantifies his claimed damages. Ex. P; Ex. O at 8–9.

**<u>Edwards's Possession of the Porsches</u>**

29. Porsches 0011 and 1543 were loaded for transport into Edwards's possession on November 18, 2021. Ex. E at 69:20–24; Ex. K.

30. Effective November 19, 2021, Edwards insured Porsche 0011 at an agreed value of $500,000 and Porsche 1543 at an agreed value of $400,000. Ex. Q.

31. Edwards testified that Porsche 1543 has changed "[c]onsiderably" since the sale: "It's had a ground-up restoration, both body, interior, and mechanically." He testified that "[t]he engine has been replaced" and that he cannot itemize the new parts installed: "I can't tell you specifically each and every part." Ex. E at 93:21–94:5.

32. From approximately February 7, 2023, to approximately August 26, 2025, Edwards caused work to be done on Porsche for which he paid around $180,000. Ex. R at 2:9–11; Ex. S.

33. The work was at least partially accounted for across 20 work orders for which approximately $170,000 was billed and paid. Ex. S.

34. The work included removal of Porsche 1543's engine in February 2023. Ex. S at JE_000143.

35. The work included stripping the body to bare metal, Ex. S at JE_000144–145, installing a part from a donor chassis, Ex. S at JE_000136–137, 141, rebuilding the gearbox with new internals, Ex. S at JE_000104, and installing a replacement engine, Ex. S at JE_000116; *see also* ¶¶ 42–46, below.

36. The work included at least $3,952.38 for work that was performed after May 2025, when Edwards alleges he discovered Samojen's alleged misrepresentation. Ex. S at JE_000101–02; ¶ 12 above.

37. Work was performed on Porsche 1543 on August 26, 2025, four days after Edwards filed this action. Ex. S at JE_000101.

38. On October 28, 2025—two days before Edwards served his initial disclosures—Edwards's RM Sotheby's specialist proposed the January 2026 consignment to RM management, reporting that Edwards "also might have the first production 914/6 made and a fake 914/6R to sell, depending on [how] the lawsuit against the guy who sold him the fake 914/6 R and 914/6 goes." Ex. T.

39. The "first production 914/6" identified is Porsche 0011. *See* Ex. U; Ex. B.

40. The "fake 914/6R" identified is Porsche 1543. Ex. B ("the guy who sold" both Porsches 0011 and 1543 and no other Porsches to Edwards was Samojen).

41. Effective December 16, 2025, over three months after filing this action, Edwards renewed insurance coverage for Porsches 0011 and 1543 at agreed values of $750,000 and $1,000,000, respectively, $250,000 and $600,000 greater than the agreed values for their initial policy in 2021. Ex. V; Ex. Q.

**<u>The Engine and the Auction</u>**

42. When Samojen delivered Porsche 1543, it contained a specialty twin-plug IMSA competition engine with case no. 6410139. Ex. A at 2 ¶¶ 7–9; Ex. W.

43. Samojen had separately acquired that engine for approximately $25,000, rebuilt it at a cost of more than $30,000, and valued it at $80,000 to $100,000 at the time of the sale. Ex. X at 282:1–6, 304:9–15, 319:2–16.

44. Edwards owns another Porsche, chassis 914 043 0705 ("Porsche 0705"). Ex. Z; Ex. Y at JE_001273.

45. The engine shown in the photographs of Porsche 0705 in Edwards's auction listing bears case no. 6410139. Ex. Y at JE_001276, JE_001384.



SILENCE LAW GROUP

46. Edwards installed the engine he removed from Porsche 1543 in Porsche 0705. See ¶¶ 42, 45, above; Ex. Y at JE_001273–74 (advertising engine features matching Ex. W).

47. In November 2025, Edwards consigned Porsche 0705 to RM Sotheby's for its January 2026 Arizona auction. Ex. Z (red highlight for authentication); Ex. T at RMA000480 (for authentication).

48. Edwards advertised Porsche 0705 in the auction listing as "Offered From The Jim Edwards Collection" with the same "914/6 R" identification Edwards alleges Samojen falsely used for Porsche 1543. Ex. Y at JE_001273; Doc. 1 at 2 ¶¶ 1–2.

49. In the listing, Edwards prominently featured in both words and photographs the engine he had removed from Porsche 1543 as a highlight of Porsche 0705 and stated that its installation marked Porsche 0705's "[e]xpert[] restor[ation] under current ownership" and "complet[ion]" of its "extensive recommissioning." Ex. Y at JE_001273–74, JE_001276, JE_001384, JE_001394.

50. The auction listing shows a price estimate of $900,000 to $1.1 million. Ex. Y at JE_001273.

DATED this 18th day of September, 2026.

**Silence Law Group, PLLC**

*/s/ Trevor Cook*
Jeffrey Silence
Trevor Cook

*Attorneys for Defendant*

SILENCE LAW GROUP