**Silence Law Group, PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024
**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com
**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Edwards,<br><br>Plaintiff,<br><br>v.<br><br>Tony Samojen,<br><br>Defendant. | Case No. 3:25-CV-08174-SPL<br><br>**DEFENDANT'S RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF BRADLEY YOUMANS**<br><br>(Hon. Steven Paul Logan) |

Defendant Tony Samojen responds in partial opposition to Plaintiff's Motion to Exclude the Opinions of Bradley Youmans (the "Motion"). Samojen requests that the Court deny the Motion as to the following opinions because Plaintiff's objections do not reach them: Youmans's opinions about (1) his observations from his inspection of Porsche 0011, (2) the value of the parts included in the sale, and (3) pre-purchase diligence standards.

## I. Introduction

In his Motion, Plaintiff objects to the entirety of Youmans's opinions based on three reasons: (1) "under Federal Rule of Evidence 702, his *failure to disclose the comparable sales* on which his opinions are based renders his opinions not based on sufficient facts or data"; (2) also under Rule 702 "Youmans' opinions are not based on a reliable methodology" because his "conclusions are based on *unidentified comparable sale*s rather

SILENCE LAW GROUP

SILENCE LAW GROUP

than reasoned explanations about the similarity of the vehicles and parts at issue to the *supposed data he considered*," leaving "too great an analytical gap . . . between *the secret data he relied upon* and his conclusions"; and (3) "under Federal Rule of Civil Procedure 37(c)(1) because he failed to disclose the facts and data underlying his opinions as required by Rule 26(a)(2)(B)(ii)." Doc. 101 at 2:11–20, 11:17–19 (identifying "the specific comparable sales that Youmans purportedly relied upon" as the undisclosed "facts and data underlying his opinions") (emphases added). The three objections concern only unidentified comparable sales—principally the Auto Appraisal Group ("AAG") sales database that Youmans consulted and that AAG will not release, *see* Ex. X (documenting refusal).

Defendant will not rely on the AAG database at trial and does not oppose exclusion of the AAG database or of the Youmans opinions that rely solely on it: the money valuations of the appraised vehicles, including Porsche 1543 as configured and with its original engine. Nor does Defendant oppose exclusion of Youmans's opinion on the usage of the term "GT."

## II. Background

### A. Porsche 0011

Youmans has worked at AAG since 2013 as a professional appraiser and has worked on automobiles in a breadth of capacities since 1963. Doc. 101-2 at 7. Youmans personally inspected Porsche 0011 on June 6, 2026. *Id.* at 2. He rated Porsche 0011's condition in twenty-one categories and recorded the features that distinguish it from production cars: it was "the first 1970 model 914/6 introduced to the U.S. market as a dealer demonstrator"; "one of the first 914's produced in late 1969 for 1970"; its "body, engine, and transmission numbers all match"; it "came from the factory with an optional 'GT' kit"; and it carries "prototype style fenders and 4-spot welds per inch vs. 2-spot welds per inch on regular production cars," along with fiberglass vents, a cable-pull bracket, and other items "not found on regular production cars." *Id.* at 4.

SILENCE LAW GROUP

Plaintiff's appraiser, Matt Oleksiak, in each of his analyses addressed 0011's history in two sentences: "Based on its serial number, it is also one of the earliest 914/6 examples manufactured by Porsche. Some sources reportedly claim it is the first production 914/6)." Ex. 1 at 5 (Oleksiak report valuing for 2021); Exhibit 2 at 4 (Oleksiak report valuing for 2026). The only history he carries into his valuations is the vehicle "appear[ing] to have one of the earliest 914/6 chassis numbers," Ex. 1 at 8, and "appear[ing] to have one of the earliest production chassis numbers," Ex. 2 at 7. His analyses each proceed to disclose six different auction sales of 1970 Porsche 914/6s, none of which was a dealer demonstrator, a first-production car, or a car built with the factory GT kit or prototype features. Ex. 1 at 6–7; Ex. 2 at 5–6.

### B. The Parts

Youmans valued each individual part, or group of identical parts, included in the sale. Doc. 101-5 (parts valuation). His parts report lists each of 38 items with an individual value, discloses that he consulted "machinists and a Porsche mechanic," and states the five sources he consulted: MAR Motorsports, eBay Motorsports, PMB Performance, AASE Sales, and Heritage Parts Centre. Doc. 101-5 at 1–3. He concluded that the parts were worth $75,000 to $100,000. *Id.* at 1, 3. Plaintiff has offered no expert valuation of the parts but swore he believed them to be worth $50,000 to $75,000 at the time he bought them. Ex. 3 (Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories).

## III. Legal Standard

### A. Federal Rule of Evidence 702

The proponent of expert testimony must show by a preponderance of evidence that the witness is qualified, that the testimony rests on sufficient facts or data, that it is the product of reliable principles and methods, and that the expert reliably applied those methods to the facts. Fed. R. Evid. 702; *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025). Under Rule 702(b), the Court must determine "whether an expert had sufficient factual grounds on which to draw conclusions." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025–26 (9th Cir. 2022) (quotation marks omitted). The sufficient facts or

SILENCE LAW GROUP

data element requires foundation, not corroboration, *id.*, and disputes about whether the record supports the expert's conclusion are "properly addressed through impeachment before a jury at trial—not exclusion by a district judge at the admissibility stage," *id.* at 1023–24.

A court's role is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Where an opinion rests on experience, the Rule 702(b) question becomes whether the court can discern "the knowledge, experience, and sources on which the expert[] relied." S*ee Bombardier Transp. (Holdings) USA Inc. v. HDR Eng'g Inc.*, No. CV-21-01460-PHX-SPL, 2023 WL 4516127, at *3 (D. Ariz. July 13, 2023).

**B. Federal Rule of Civil Procedure 37(c)(1)**

A party is not allowed to use at trial information that the party fails to disclose as required by Rule 26(a) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule bars use of the undisclosed information. The rule does not bar testimony that rests on information the party disclosed.

## IV. Argument

The exclusion of the AAG database information and opinions that rely on that information does not affect Youmans's testimony, based on his first-hand inspection, describing the features that distinguish Porsche 0011 from a regular production 914/6. The method and sources of Youmans's parts valuation were disclosed, and he valued the parts without using the AAG database or its numbers. Finally, Youmans's opinion on pre-purchase diligence rests on reliable application of his experience and is relevant to Plaintiff's right to rely on Defendant's alleged representations—a critical element of Plaintiff's claims.

In *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 84–85 (Bankr. S.D. Cal. 2003), on which Plaintiff relies, the court struck an opinion that could not be verified without confidential data the expert refused to produce. The only opinions of that kind here are the

SILENCE LAW GROUP

valuations based on the AAG database, and Defendant does not oppose excluding those opinions. Youmans's testimony about his observations of Porsche 0011, the values of the parts, and pre-purchase diligence standards rests on facts already disclosed, so Rule 37(c)(1) does not preclude that testimony.

### A. Youmans's non-valuation testimony about what Porsche 0011 is rests on his inspection and will help the jury weigh Plaintiff's valuation evidence.

Plaintiff's motion treats Youmans's 0011 report as a single opinion, but it contains two. One is a value drawn from comparable sales in the AAG database, the exclusion of which Defendant does not oppose. The other is a description of the car.

Youmans inspected 0011 on June 6, 2026, rated its condition in twenty-one categories, and recorded that it was "the first 1970 model 914/6 introduced to the U.S. market as a dealer demonstrator," that its "body, engine, and transmission numbers all match," that it "came from the factory with an optional 'GT' kit," and that it carries "prototype style fenders and 4-spot welds per inch vs. 2-spot welds per inch on regular production cars," along with other items "not found on regular production cars." Doc. 101-2 at 4. Defendant does not offer Youmans to prove the car's history, which is established by other documents produced by both parties and nonparties. Youmans's physical description came from the car, not a database. Youmans will add what an appraiser can say about the car itself: its condition, its construction, and the features that distinguish it from a regular production 914/6.

Youmans personally examined the vehicle as a professional appraiser with six decades of experience working with automobiles. *Id.* at 7. His personal observations are those of a percipient witness, but the meaning of those observations, e.g., the observed fenders are prototype-style or observed parts are part of a factory GT kit, is the testimony Rule 702 contemplates from a witness who applies "knowledge, skill, experience, training, or education" to an object he has examined. *See Bombardier*, 2023 WL 4516127, at *3.

Even without Youmans's associated valuation opinion, the testimony "will help the trier of fact to understand the [valuation] evidence" proffered by Plaintiff and "determine

a fact in issue" in this case: the value of Porsche 0011. See Fed. R. Evid. 702(a). Plaintiff's appraiser valued 0011 from six auction sales of ordinary 914/6s, gave its production history two sentences, and valued that history only as "appear[ing] to have one of the earliest 914/6/production series chassis numbers." Ex. 1 at 5 (two sentences), 8 ("914/6 series"); Ex. 2 at 4 (two sentences), 7 ("production series"). Whether 0011 is an ordinary 914/6 is a fact question on which Youmans's inspection is direct evidence, and the jury will need it to weigh Oleksiak's comparables, Defendant's own testimony about the car he owned, and Plaintiff's sworn statement that at the time of the sale he believed 0011 was worth $350,000 to $450,000. Ex. 3. Plaintiff offers no reason to strike the non-valuation testimony. Plaintiff's objections—no listed comparables and no disclosed database, Doc. 101 at 8:8–12:15—have nothing to do with what Youmans saw or how he applied his knowledge to his observations.

**B. Youmans disclosed his method and sources for the parts valuation.**

Plaintiff objects to the parts valuation for the same underlying reason he objects to the vehicle valuations: that Youmans did not identify the specific listings he consulted. Doc. 101 at 10:8–11. But the parts report has none of the features that drive Plaintiff's motion. There is no undisclosed database. The report prices each of 38 items individually. Doc. 101-5 at 1–3. It names its five sources, *Id.* at 1, all of them public platforms or vendors whose listings Plaintiff can consult as readily as Youmans did. It discloses that Youmans consulted "machinists and a Porsche mechanic." *Id.* It explains an important premise of his values: that "some of these parts are 'new old stock' . . . original factory-produced parts from the era and not reproductions," and the rest "serviceable rare GT factory parts." *Id.*

Plaintiff also objects that the parts valuation "improperly relies on undisclosed opinions of Youmans' coworker, Billy Fagan," whom Plaintiff calls "AAG's Porsche expert." Doc. 101 at 10:12–17. Fagan is not Youmans's coworker and is not at AAG; he owns a Porsche and Volkswagen machine shop, and Youmans sought his "unbiased opinion" of the parts. Doc 101-7 at 26:24–27:12. Youmans consulted Fagan to confirm



SILENCE LAW GROUP

SILENCE LAW GROUP

from the photographs "what was what" and to catch "outliers"—such as a hypothetical part labeled as Porsche that in fact "c[a]me off of an Audi." Doc 101-7 at 26:16–23, 28:12–17. Fagan's descriptions "lined up" with the parts as labeled, and Fagan and Youmans were "pretty much on the same page." Doc. 101-7 at 26:21–23, 27:17–22.

The values are Youmans's own, drawn from "the sales of parts . . . from those companies" his report names. Doc. 101-7 at 29:14–23 (listing companies), at 31:12–17 (describing using those company sources for valuation). The report discloses consultation with "machinists and a Porsche mechanic," Doc. 101-5 at 1, and Plaintiff examined Youmans about that. *See* Doc. 101-7 at 26:2–29:9. An appraiser who confirms an object's authenticity with someone knowledgeable about the object and then values the object himself from market sources relies on the kind of information experts in his field reasonably rely on. *See* Fed. R. Evid. 703. Youmans is not a "conduit" for another expert's opinion. *Cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013). Plaintiff's citation for the claim that Fagan assisted "with valuation," Doc. 101 at 10:14 (citing Youmans Dep. 43:15–44:5), is Youmans's list of his five pricing sources followed by questions about his credentials, Doc. 101-7 at 29:15–30:5; Fagan appears there only as part of the "discussion with machinist" the report already disclosed. *See* Doc. 101-7 at 29:14–23.

Youmans valued the parts based largely on Defendant's disclosed inventory and photographs rather than in-person inspection. *See* Doc. 101-5 at 1 (describing list and photographs), 4–6 (the list, adapted from the photographs with list), 7–22 (photographs with list, previously disclosed as SAMOJEN0034–49; Doc. 101-7 at 20:3–16 (deposition). He explained that during his inspections at Plaintiff's residence, he "was able to observe some of those parts because they'd actually been put on the car" but "[t]he other parts were piled up in an attic, and so [he] had to work off of the description and the pictures." Doc. 101-7 at 20:3–10. Youmans's using pictures for most of his valuations goes to weight.

Youmans examined the disclosed photographs and details provided to him about the parts, referred to publicly available sales listings, and applied his knowledge and

SILENCE LAW GROUP

experience to estimate values for each part and the parts as a whole. This is a reliable method common to valuing scarce collectibles. For example, in *Marini v. Adamo*, 995 F. Supp. 2d 155, 180–81 (E.D.N.Y. 2014), the court admitted as sufficiently reliable an expert's valuation of rare coins based on auction records for similar coins and the application of his expertise to adjust for market conditions. The court ruled that the subjective component of the expert's evaluation went to weight. *Id.* at 181. The First Circuit has noted that opinions of value are "a traditional subject of expert testimony." *United States v. Kayne*, 90 F.3d 7, 11 (1st Cir. 1996). That court explained that disagreement among experts over subjective factors like "taste and assessment of the market" is "not unusual" and such "matters are properly the subject of searching cross-examination"—not exclusion. *Id.* at 12.

No other expert has valued the parts. Plaintiff's sworn estimate of their value is $50,000 to $75,000. Ex. 3. The jury should have the opportunity to hear both estimates and the reasoning behind them.

**C. Youmans is qualified to opine on pre-purchase diligence, and his opinion will help the trier of fact to understand the evidence and determine facts at issue.**

First, Youmans "has been proffered as an expert," *see* Doc. 101 at 12:20, on every topic encompassed by his disclosed expert reports, including "transactions involving classic or specialty cars," Doc. 101-6 at 1; *see* Fed. R. Civ. P. 26(a)(2) (governing disclosure of expert testimony). His opinions about the diligence a purchaser in such transactions should undertake are not outside his area of expertise. Youmans developed his "scientific, technical, or other specialized knowledge" relevant to "transactions involving classic or specialty cars" over 63 years of automotive experience, including working at dealerships for seven different manufacturers; working as an ASE-certified Master Technician in eight different service areas; holding memberships in GoodGuys (a classic and custom vehicle enthusiasts' organization), the National Corvette Restorers Society, the Antique Automobile Club of America, and the Specialty Equipment Market

SILENCE LAW GROUP

Association; working for 13 years as a professional appraiser at AAG; and running his own classic auto restoration business: Tennessee Classic Automotive. Doc. 101-2 at 7.

Second, Youmans's opinion on pre-purchase diligence fits the case. Plaintiff's fraud and negligent-misrepresentation claims require him to prove that his reliance on the alleged representation was justifiable. *See Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) (listing element of fraud as "the right to rely"); *St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (listing element of negligent misrepresentation as "justifiable reliance"). Whether a sophisticated buyer paying $400,000 and a Ford GT for two vintage Porsches would verify their specifications before closing bears directly on that element.

Plaintiff objects that Youmans did not say what a VIN search of 1543 would have shown, Doc. 101 at 13:17–23, but Youmans did not have to. An expert may "educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case," so long as "the testimony 'fit[s]' the facts of the case." Fed. R. Evid. 702 advisory committee note to 2000 amendments. Youmans supplies the practice: in a transaction involving a classic or specialty car, "[t]he V.I.N. numbers and any documentation for the vehicles needs to be thoroughly evaluated to determine if the vehicles are what they are presented as. Normally a V.I.N. search will reveal the information needed." Doc. 101-6 at 1. And "Porsche offers many options for verifying the history and original technical specifications of its vehicles accessible through its website or local dealers." *Id.* The evidence shows some of what that diligence would produce for this car. The jury then decides whether Plaintiff, who had that evidence before the sale, justifiably relied on conflicting alleged representations.

The Certificate of Authenticity for Porsche 1543, one of Porsche's "many options for verifying the history and original technical specifications of its vehicles," identifies Porsche 1543 as a 914/6 and says nothing about a GT option. *See* Ex. 4. Plaintiff had that certificate nine days before he signed the Purchase Agreement, within a Porsche 1543 binder he went through "page by page by page by page" the night he received it. Doc. 1

SILENCE LAW GROUP

(Complaint) at 3–4 ¶¶ 12, 15–16 (alleging receiving binder); Exhibit 4 (copy of certificate disclosed by Plaintiff as part of contents of binder); Exhibit 5 at 1:4–8, 1:22–2:5 (testifying of receiving and reviewing binder). The same binder held a published list of 914/6 factory GT chassis serial numbers together with a note that Porsche produced 400 component kits "to update 914/6 production cars to 'GT' standards." Exhibit 6 (copy of list disclosed by Plaintiff as part of contents of binder. That list is something "a V.I.N. search will reveal," and Porsche 1543 is not on it, *see* Ex. 5 at 5:12–6:4.

Plaintiff did not need the binder to run that search. He alleges that he researched Porsche 1543 online during the nine days after seeing the binder and before the sale and found the website pbase.com from which those pages were printed. Doc. 1 at 6 ¶¶ 27–28; Ex. 5 at 4:14–24 (testifying research "from the 24th forward to the time I purchased it"). He testified that he knew the site as "a 914 chat line," had "been on it before," and was "very familiar with these pages." Ex 5 at 5:17–6:4. The site keeps a page indexed to Porsche 1543's own serial number, linked from the page the Complaint cites, that identifies Porsche 1543 as "914-6 sn 914.043.1543" and describes a "conversion project to GT specs". *See* https://pbase.com/9146gt/other_porsche_9146gt_race_cars_sn9140431543_kerry_morse_vintage.

Plaintiff's objection that Youmans did not say how a buyer would search a car of Porsche 1543's age, Doc. 101 at 13:21–23 is unavailing because Plaintiff himself testified of searching it and finding results based on the chassis number. The factory chassis list was in the binder Plaintiff reviewed before the sale, and Plaintiff found the gallery with the Porsche 1543 page on his own, using whatever method he used.

A buyer of Porsche 1543 told he was purchasing a 914/6 factory GT who did what Youmans describes—evaluated the Porsche 1543 VIN and its documentation and ran the VIN search—would have found Porsche 1543 absent from the factory list and described as a conversion. Plaintiff had those materials before the sale. What he should have made

of them is part of the reliance question the jury must decide, and Youmans's opinion will help it make that decision.

## V. Conclusion

The Court should deny Plaintiff's Motion to Exclude the Opinions of Bradley Youmans as to the following opinions because Plaintiff's objections do not reach them: Youmans's opinions about (1) his observations from his inspection of Porsche 0011, (2) the value of the parts included in the sale, and (3) pre-purchase diligence standards. Defendant does not oppose the Motion as to the AAG database, the vehicle valuations, the 1543-with-original-engine opinion, and the GT-term opinion.

RESPECTFULLY SUBMITTED this 15th day of October, 2026.

**Silence Law Group, PLLC**

*/S/ Trevor Cook*
Jeffrey Silence
Trevor Cook
*Attorneys for Defendant*



SILENCE LAW GROUP