# EXHIBIT 1

**Rusing Lopez & Lizardi & Saffer, P.L.L.C.**
7047 E. Greenway Parkway, Suite 400
Scottsdale, Arizona 85254
Telephone: (480) 663-9800
Facsimile: (520) 529-4262
~~dbernardone@rllaz.com~~dbernardone@rllsaz.com
~~aclark@rllaz.com~~aclark@rllsaz.com
*Attorneys for James Edwards*

Daniel B. Bernardone
State Bar No. 033256
Aaron Clark
State Bar No. 038534

Michael Croghan (ARDC #6312601)
Patrick O'Meara (ARDC # 6317487)
Luca Giovine (ARDC #6337664)
Rachel Dudley (ARDC #6352864)
McDonald Hopkins LLC
300 North LaSalle St., Suite 1400
Chicago, IL 60654
phone (312) 280-0111
mcroghan@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
*Attorneys for James Edwards*
~~*Pro Hac Vice Request Forthcoming*~~

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Edwards,<br><br>Plaintiff,<br><br>vs.<br><br>Tony Samojen,<br><br>Defendant. | Case No.<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiff James Edwards, by and through undersigned counsel, respectfully submits this Complaint against Defendant Tony Samojen and alleges as follows:

## NATURE OF ACTION

1. This action arises from Defendant's fraudulent sale of a vintage Porsche vehicle that he falsely represented to be a rare and valuable 1970 Porsche 914/6 R.

2. The "R" designation refers to a line of rare competition vehicles. Few Porsche 914/6s with the "R" designation exist and, as a result, they are worth multiple times the value of an ordinary Porsche 914/6.

3. Defendant converted an ordinary Porsche 914/6 into a convincing replica of a 914/6 R. Defendant's efforts included fabricating a factory window sticker representing the car to be a 914/6 R. Defendant convinced Edwards to buy the car at a substantial premium above what the car was actually worth. The fabricated sticker played a substantial role in tricking Edwards into believing the car was an authentic Porsche 914/6 R.

4. In the transaction at issue, Edwards purchased two cars—the fake 914/6 R and a first-production 914/6—and some related parts for $400,000 cash plus a Ford GT that was worth nearly $500,000. In other words, Edwards paid about $900,000 for the two cars. The fair market value of the two cars Edwards received in the transaction, however, was approximately $200,000.

5. When confronted in 2025, Defendant admitted the window sticker was "a recreation" and "definitely not a factory sticker."

6. Edwards seeks rescission of the transaction, or~~,~~ alternatively, substantial compensatory and punitive damages for Defendant's brazen fraud.

## PARTIES

7. Plaintiff James Edwards is a citizen and resident of the State of Arizona.

8. Upon information and belief, Defendant Tony Samojen is a citizen and resident of the State of California.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district, including Edwards' reliance on Samojen's misrepresentations while located in Arizona, Edwards' negotiations with Samojen were in Arizona, the sale took place in Arizona, and Edwards' performance of the contract while in Arizona.

**FACTS**

**The fraudulent transaction**.

11. In July 2021, Kerry Morse – a longtime friend of Edwards and a fellow Porsche collector – informed Edwards that Samojen was interested in selling a first-production Porsche 914-6 from 1970 (serial number 914 043 0011) ("Porsche 0011"). Morse urged Edwards to buy the car and associated parts and mentioned that he had done business with Samojen before.

12. In October 2021, while on a personal trip to Los Angeles, Edwards visited Samojen's home to view Porsche 0011 and some Porsche parts that Samojen was also trying to sell.

13. On Edwards' visit, the car parked next to Porsche 0011 was another Porsche. The other Porsche was a purported 1970 Porsche 914/6 R (serial number 914 043 1543) ("Porsche 1543").

14. Edwards was staying the night in LA and asked if Samojen had any information about Porsche 0011.

15. In response, Samojen provided Edwards a binder of information about Porsche 0011 and a binder of information about Porshe 1543.

16. That evening, Edwards reviewed the documents in both binders.

17. One document that Edwards reviewed in the binder for Porsche 1543 and considered highly interesting was an original window sticker from Prestige Motors in New Jersey in 1970. The window sticker identified "Serial No. 914 043 1543," "Body Type 914-6 R," and "R COMPETITION OPTION GROUP," thereby representing Porsche 1543 as a rare factory competition variant. The window sticker looked like this:



PORSCHE+AUDI

LOAD 05 76350

MAKE PORSCHE MODEL 640 6 36 901.26 YEAR 1970

SERIAL NO. 9140431543 BODY TYPE 914-6 R

DISTRIBUTOR NAME & ADDRESS
PORSCHE/AUDI EASTERN
WORLD-WIDE VW CORP
GREENBUSH ROAD
ORANGEBURG NY 10962

DEALER NAME & ADDRESS
PRESTIGE MOTORS INC
405 ROUTE 17
PARAMUS, NEW JERSEY 07652

PORT OF ENTRY NEWARK
METHOD OF TRANSP. TRUCKED
AVG. TRANSPORTATION CHARGE 34.50

IMPORTER'S SUGGESTED RETAIL PRICE WITHOUT ACCESSORIES AT PORT OF ENTRY: 15,568.00

R COMPETITION OPTION GROUP
INCL.

| | |
|---|---|
| WIDENED FENDERS, FRONT AND REAR | STD. |
| FORGED ALLOY WHEELS | |
| 15 X 7 FRONT 15 X 8 REAR | STD. |
| SPEC OIL COOLING | STD. |
| 100 LITER FUEL TANK | STD. |
| LIMITED SLIP DIFFERENTIAL | STD. |
| COMP TACHOMETER | STD. |
| RACING SEATS | STD. |
| ONE-PIECE BUMPERS | STD. |
| SPEC SUSPENSION | STD. |
| COMP INTERIOR-TWO WAY ADJUSTABLE SEATS | STD. |
| SPACE-SAVING TIRE | STD. |
| CHANGEABLE GEAR TRANS. | STD. |
| PERF. EXHAUST | STD. |
| SPEC. 4-WHEEL DISC BRAKES | STD. |
| FRESH AIR HEATING AND VENTILATION | N.C. |

IMPORTER'S SUGGESTED RETAIL PRICE* WITH ACCESSORIES AT DEALER'S LOCATION: 15,602.50

* Gasoline, license and title fees, state and local taxes and dealer installed options and accessories are not included.

Labels prepared by the sole authorized importer for PORSCHE AUDI in the UNITED STATES pursuant to PUBLIC LAW 85-506 bear this signature.

PRINTED IN U.S.A.
22-99-70090.

PORSCHE AUDI
A DIVISION OF VOLKSWAGEN OF AMERICA, INC.
BY:
818 SYLVAN AVE. ENGLEWOOD CLIFFS, N.J. 07632

18. As shown above, the window sticker appeared authentic and legitimate, including by identifying the make, model, year, serial number, body type, distributor

name and address, dealer name and address, port of entry, method of transportation, average transportation car, suggested retail price without accessories at port of entry, suggested retail price with accessories at dealer's location, a signature block at the bottom identifying PORSCHE AUDI as a division of Volkswagen of America, Inc. with what appears to be a signature by an unidentified individual, with a Sylvan Ave., Englewood Cliffs, NJ address, and a note that the sticker was printed in the USA. These elements all appeared in a similar location and with similar font, spacing, and formatting to other legitimate Porsche window stickers that Edwards had seen.

19. Believing that the window sticker showed Porsche 1543 to be an authentic and extraordinarily rare 1970 Porsche 914/6 R, Edwards returned the binders to Samojen the next day and asked Samojen about the history of Porsche 1543.

20. Samojen stated that he bought Porsche 1543 from Prestige Motors in approximately 1974 after they had stopped racing it. Samojen's statement that Porsche 1543 had been used for racing was consistent with it being a 914/6 R.

21. Edwards asked Samojen if he was considering selling Porsche 1543.

22. Samojen responded that he would sell it, as he had grown tired of owning Porsche 914s because he has owned them since the 1970s.

23. Edwards further inspected the car. He owns a similar Porsche before and this one appeared to have the correct body type, plus the window sticker.

24. During Edwards' inspection of Porsche 1543, he opened the glove box and found a bundle of promo cards with Samojen's name and phone number on them and representing the car to be a 914/6 R. The cards looked like this:




25. Based on Samojen's representations about the car, the window sticker, the promo cards, and Edwards' inspection of the car, Edward believed Porsche 1543 to be an authentic Porsche 914/6 R.

26. Edwards left Samojen's home without reaching a deal to buy either Porsche. They agreed to continue discussing a potential sale of the vehicles over the phone and also discussed the possibility of Samojen visiting Edwards' home to view his car collection.

27. After Edwards returned home, he researched both Porsche 0011 and Porsche 1543 as best he could on the internet. Edward's research into Porsche 1543 led him to find two groups of photos from previous instances where Samojen had displayed the car.

28. One group of photos Edwards found on a website called pbase.com was from a car show in Ventura County in 2006. The photos showed that Samojen had listed Porsche 1543 as a 914/6 R and the photos showed the same window sticker he had seen in the binder being displayed in the car's window. The website's URL was https://pbase.com/9146gt/other_porsche_9146gt_race_cars_sn9140431543_kerry_morse.

29. This photo showed that Samojen specifically identified Porsche 1543 as an R variant on a placard:




30. Another group of photos was from Morespeed, a car restoration shop in California, in 2003.

31. Based on this research, Edwards now had even more reason to believe Samojen's representations that the car was a 914/6 R. Samojen had been representing to the world that the car was a 914/6 R for at least two decades and had convinced other Porsche enthusiasts that it was authentic.

32. Edwards and Samojen had subsequent phone conversations about the possibility of Edwards purchasing both Porsche vehicles. As a result of those conversations, Samojen agreed to travel to Arizona to view Edwards' collection of cars.

33. On or around October 29, 2021, Samojen visited Edwards in Arizona. He noticed a 2006 Ford GT that Edwards owned and expressed interest in it.

34. On October 30, 2021, Edwards emailed Samojen and asked "Did you have a copy of the original window sticker?"

35. Samojen responded to Edwards' request for the "original window sticker" the next morning with an email that stated: "Enclosed 914-6 window sticker." The email attached a PDF titled "Porsche 1543 window .pdf," which was a copy of the window

sticker Edwards had viewed when visiting Samojen. The sticker identified the car as a "914-6 R."

36. Edwards sent the window sticker to his longtime friend and fellow Porsche collector Kerry Morse. Morse reviewed the sticker and also believed it to be authentic, giving Edwards even more confidence that the car was a 914/6 R.

37. Edwards then proposed a transaction where Edwards agreed to pay $400,000 in cash plus transfer his 2006 Ford GT, which was worth approximately $500,000, in exchange for both Porsche vehicles and all associated parts, literature, historical documents, display placards, and other materials in Samojen's possession.

38. Samojen agreed to the terms Edwards proposed. The parties put together a one-page agreement, which was executed on November 2, 2021. The agreement is attached as Exhibit A.

**<u>Edwards' reliance and the contract</u>**.

39. Edwards, who negotiated the deal from his Arizona home, relied on Samojen's representations, including the purported authentic original window sticker, in agreeing to purchase the vehicles.

40. Based on Samojen's representations that he was acquiring a genuine 1970 Porsche 914/6 R, Edwards paid Samojen $400,000 in cash plus transfer his 2006 Ford GT, which was worth approximately $500,000.

41. After acquiring the vehicles in reliance on Samojen's fraudulent representations, Edwards invested approximately $200,000 in out-of-pocket expenses.

**<u>Discovery of the fraud</u>**.

42. In late 2024, automotive experts on an online forum discussed the window sticker created by Samojen for Porsche 1543. They concluded that the sticker was a forgery and that Porsche 1543 was not a genuine 914/6 R.

43. Edwards was not a participant in this discussion and did not become aware of it until May 2025.

44. On June 12, 2025, Edwards confronted Samojen about the forum discussion. Samojen admitted in an email to Edwards that the window sticker was “a recreation of a dealer sticker” and “definitely not a factory sticker.”

45. Samojen further admitted that the sticker was “intended for personal enjoyment only” and was never authentic, despite having presented it to Edwards as a genuine, original factory document during the sale process.

46. Samojen’s admission confirmed what Porsche experts had determined: that Porsche 1543 and accompanying window sticker were sophisticated forgeries created by Samojen. Indeed, even Porsche experts who had examined Porsche 1543 during Samojen’s ownership period prior to the sale failed to detect Samojen’s sophisticated deception, demonstrating the deliberate and calculated nature of the fraud.

47. Further still, after Edwards’ counsel sent Samojen a demand letter, Samojen responded by admitting that the car was not a 914/6 R and denying that he had ever represented that it was a 914/6 R.

48. Samojen’s assertion that he had never represented that Porsche 1543 was a 914/6 R is outrageous in light of the falsified window sticker he provided to Edwards, the promo cards in the vehicle, and Samojen’s misrepresentations to the world for the prior two decades that Porsche 1543 was a 914/6 R.

**<u>Knowledge and intent</u>**.

49. At all relevant times, Samojen knew that the window sticker was not authentic and that he had fabricated it.

50. At all relevant times, Samojen knew that Porsche 1543 was not a genuine 1970 Porsche 914/6 R.

51. Despite this knowledge, Samojen deliberately and intentionally presented the car to Edwards as a genuine 914/6 R and the falsified document to Edwards as authentic and genuine original window sticker to inflate Porsche 1543’s apparent value and induce Edwards’ purchase.

52. Samojen intended for Edwards to rely on these material misrepresentations, and knew that Edwards would rely on them in deciding whether to complete the transaction and the value of Porsche 1543.

**Damages and continuing harm**.

53. As a result of Samojen's fraudulent misrepresentations, Edwards paid far more than Porsche 1543 was actually worth.

54. A genuine 1970 Porsche 914/6 R would be worth many hundreds of thousands of dollars, while the vehicle Edwards actually received is worth only a fraction of what he paid.

55. Edwards has been damaged in an amount far exceeding $75,000, the exact amount to be proven at trial.

**COUNT I**

(Fraudulent Misrepresentation)

56. Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Samojen made material representations of fact to Edwards, specifically providing a purported authentic factory window sticker confirming that Porsche 1543 was a genuine 1970 Porsche 914/6 R.

58. These representations were false. Porsche 1543 was not a genuine 914/6 R, and the window sticker was fabricated by Samojen.

59. Samojen knew these representations were false when he made them, or made them with reckless disregard for their truth or falsity.

60. Samojen made these representations with the intent to deceive Edwards and induce him to complete the purchase.

61. Edwards justifiably relied on Samojen's material misrepresentations in agreeing to pay $400,000 cash plus transfer his Ford GT in the transaction.

62. Edwards was damaged as a direct and proximate result of his reliance on Samojen's fraudulent misrepresentations.

63. Samojen's conduct was willful, wanton, malicious, and done with conscious disregard for Edwards' rights, entitling Edwards to punitive damages.

**COUNT II**

(<u>Negligent Misrepresentation</u>)

64. Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Samojen owed Edwards a duty to exercise reasonable care in making representations about Porsche 1543's authenticity and specifications.

66. Samojen breached this duty by negligently providing false information about Porsche 1543 being a genuine 914/6 R and by providing a fabricated window sticker without exercising reasonable care to ensure its authenticity.

67. Edwards justifiably relied on these negligent misrepresentations to his detriment.

68. Edwards suffered pecuniary loss as a direct and proximate result of Samojen's negligent misrepresentations.

**COUNT III**

(<u>Breach of Express Warranty</u>)

69. Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70. By representing to the world that Porsche 1543 was an authentic 914/6 R and providing Edwards the purported authentic window sticker identifying Porsche 1543 as a "914-6 R" with "R COMPETITION OPTION GROUP," Samojen created an express warranty that Porsche 1543 possessed those characteristics and specifications.

71. Samojen's representations constituted warranties that became part of the basis of the bargain between the parties.

72. Porsche 1543 did not conform to these express warranties, as it was not a genuine 914/6 R with competition specifications.

73. Edwards was damaged as a direct and proximate result of Samojen's breach of express warranty.

**COUNT IV**

(Violation of Arizona Consumer Fraud Act)

74. Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Edwards was a consumer engaged in a consumer transaction within the meaning of the Arizona Consumer Fraud Act.

76. Samojen engaged in deceptive acts or practices directed at Edwards who was located in Arizona or while physically present in Arizona in connection with the sale of the vehicles, including misrepresenting the specifications, characteristics, and authenticity of Porsche 1543 and its documentation.

77. These deceptive practices were committed in connection with the sale of merchandise in the regular course of Samojen's business or in connection with his disposition of merchandise.

78. Edwards was damaged as a result of Samojen's violation of the Arizona Consumer Fraud Act.

**COUNT V**

(Violation of California Consumer Legal Remedies Act)

79. Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Edwards was a consumer who purchased goods for personal use within the meaning of the California Consumer Legal Remedies Act ("CLRA").

81. Samojen engaged in unlawful practices under the CLRA, including but not limited to representing that goods have characteristics, uses, benefits, or qualities they do not; representing that goods are of a particular standard, quality, or grade when they are of another; and advertising goods with intent not to sell them as advertised.

82. On July 6, 2026, Edwards sent Samojen a letter via certified mail, return receipt requested, alleging that Samojen violated California Civil Code § 1770(a). The letter stated it was a "notification that [Samojen] violated California Civil Code § 1770(a) by misrepresenting Porsche 1543 as a 914/6 R to Mr. Edwards prior to the execution of the Agreement on November 2, 2021." In the letters, "Mr. Edwards demand[ed] that [Samojen] correct, repair, replace, or otherwise rectify Porsche 1543 within thirty (30) days."

83. Samojen did not correct, repair, replace, or otherwise rectify Porsche 1543 within thirty (30) days.

84. ~~82.~~ Edwards suffered damages as a result of Samojen's violations of the CLRA.

**COUNT VI**

(Violation of California Unfair Competition Law)

85. ~~83.~~ Edwards re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86. ~~84.~~ Samojen engaged in unlawful, unfair, and fraudulent business acts and practices by making material misrepresentations about Porsche 1543's authenticity and specifications.

87. ~~85.~~ Edwards suffered injury in fact and lost money as a result of Samojen's unfair competition.

88. ~~86.~~ Edwards seeks restitution of money paid to Samojen as a result of these unlawful practices.

**PRAYER FOR RELIEF**

WHEREFORE, Edwards respectfully requests that this Court:

A. Grant rescission of the Agreement and order:

1. Samojen to return the $400,000 cash payment to Edwards;
2. Samojen to return the 2006 Ford GT to Edwards;
3. Edwards to return both Porsche 0011 and Porsche 1543 to Samojen;

4. Samojen to compensate Edwards for any loss of value of the Ford GT attributable to its change in condition and/or added milage since the sale; and
5. Samojen to reimburse Edwards for all out-of-pocket reliance damages spent on Porsche 0011 and Porsche 1543.

B. In the alternative to rescission, award Edwards:
1. Rescissory damages;
2. Compensatory damages representing the benefit of the bargain, specifically the difference in value between what Edwards received and what Edwards reasonably expected to receive based on Samojen's representations;
3. Reliance damages, including all out-of-pocket expenses incurred by Edwards in reliance on Samojen's misrepresentations;
4. Consequential and incidental damages; and/or
5. Such other monetary damages as may be appropriate.

C. Award Edwards punitive damages in an amount sufficient to punish Samojen's willful and malicious conduct and deter similar misconduct;
D. Award Edwards pre-judgment and post-judgment interest at the maximum rate allowed by law;
E. Award Edwards his reasonable attorneys' fees, costs, and expenses as provided by applicable law;
F. Award Edwards such other relief under the consumer protection statutes as this Court deems just and proper; and
G. Grant such other and further relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Edwards hereby demands a trial by jury on all issues so triable.

DATED this ~~21st~~ 30th day of ~~August~~ October, ~~2025~~ 2026.

~~MCDONALD HOPKINS LLC~~

RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.

*/s/ Daniel B. Bernardone (With Permission)*

Daniel B. Bernardone
Aaron R. Clark
*Attorneys for Plaintiff*

MCDONALD HOPKINS LLC

*/s/ Michael Croghan*

Michael Croghan
Patrick O'Meara
Luca Giovine
Rachel Dudley
*Attorneys for Plaintiff*
*Admitted Pro Hac Vice*

~~*/s/ Michael P. Croghan*~~
~~Michael Croghan~~
~~Patrick O'Meara~~

~~RUSING LOPEZ & LIZARDI, PLLC~~
~~Daniel B. Bernardone~~
~~Aaron R. Clark~~
~~*Attorneys for James Edwards*~~