**Rusing Lopez Lizardi & Saffer, P.L.L.C.**
7047 E. Greenway Parkway, Suite 400
Scottsdale, Arizona 85254
Telephone: (480) 663-9800
Facsimile: (520) 529-4262
dbernardone@rllsaz.com
aclark@rllsaz.com
*Attorneys for James Edwards*

Daniel B. Bernardone
State Bar No. 033256
Aaron Clark
State Bar No. 038534

Michael Croghan (ARDC #6312601)
Patrick O'Meara (ARDC # 6317487)
Luca Giovine (ARDC #6337664)
Rachel Dudley (ARDC #6352864)
**McDonald Hopkins LLC**
300 North LaSalle St., Suite 1400
Chicago, IL 60654
phone (312) 280-0111
mcroghan@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
*Attorneys for James Edwards*
*Admitted Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

James Edwards,

Plaintiff,

vs.

Tony Samojen,

Defendant.

Case No. 3:25-cv-08174-SPL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

# INTRODUCTION[1]

Defendant sold Plaintiff James Edwards a Porsche he misrepresented as a genuine 914-R — a car so unique and valuable that many Porsche enthusiasts rarely get to see one in person (let alone own one). Defendant made different misrepresentations at different times and in two different states, and he and witnesses under his control have since convoluted or disputed every one of them. He now seeks partial summary judgment despite these factual issues. To get there, he flouts the standard of review by resolving in his own favor the very facts he has spent discovery disputing. [Dkt. 102 at 5:18–6:15.] Defendant's motion fails for three reasons.

First, Defendant's choice-of-law argument rests on a false premise: that "[o]ne body of consumer-protection law governs the transaction at issue." [Dkt. 102 at 6:16.] Arizona follows the Restatement (Second) of Conflict of Laws, which requires an issue-by-issue analysis and allows different states' laws to govern distinct claims (or even issues within those claims) in the same case. Applying that analysis here depends on contested facts in which Defendant made at least three key misrepresentations:

1. the Porsche 1543 binder, handed to Plaintiff in California on October 23, 2021 [Pltf. SOF, ¶¶ 1–3];
2. the placard card in the glovebox and conversations on October 24, 2021 [Pltf. SOF, ¶¶ 6–7]; and
3. the "original window sticker," emailed from California to Arizona on October 31, 2021. [Pltf. SOF, ¶¶ 11–12.]

Defendant has disputed the substance and occurrence of each of these misrepresentations, creating disputes of material fact to the claims on which he seeks summary judgment. He has changed the substance of his discovery responses numerous times, contradicted his own admissions, given testimony that his own son contradicted, and denied sending the "original window sticker" email despite Plaintiff having produced it in

---

[1] Citations to Plaintiff's Additional Statement of Facts will be "Pltf. SOF" and citations to Plaintiff's Response to Defendant's Statement of Facts will be "Resp. to SOF."

multiple forms. [Pltf. SOF, ¶¶ 3, 12.] Based on Defendant's own presentation of the evidence, the jury must decide whether and where each representation was made, received, and relied upon. Only then can the Court determine the governing law to the facts as found.

Second, Defendant admits that Edwards served notice under the California Consumers Legal Remedies Act ("CLRA") on July 6, 2026. [Resp. to SOF, ¶ 24.] Plaintiff maintains that his original pre-suit demand constituted proper notice under the CLRA, but in any event, California law does not treat late notice (i.e., the July 6 notice) as a permanent bar to a damages claim. After the 30-day cure period has run following a mid-suit demand, a plaintiff may amend his complaint to address a missing notice allegation in a CLRA claim. Edwards has complied with the notice requirement and is currently seeking leave to amend his Complaint to add his notice allegations. [Resp. to SOF, ¶¶ 24–25.] His CLRA claim should be tried on the merits.

Third, rescission is not only available but warranted under these circumstances. Defendant's challenge to it relies on inadmissible settlement communications and a misapplication of the record. [Dkt. 102 at 10:11–25; 9:21–10:3]. Arizona law does not require perfect restoration, and the uniqueness of the vehicles at issue makes them one-of-a-kind goods for which only rescission can provide a cure. [Pltf. SOF, ¶¶ 14–20.]

Viewed in the light most favorable to Edwards, as it must be, the record is replete with genuine issues of material fact — issues of fact that Defendant himself created. The Court should deny Defendant's Motion for Partial Summary Judgment in its entirety.

## **ARGUMENT**

### I. Legal Standard

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). That rule reflects the principle that a "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn

in his favor." *Id.* at 651 (quoting *Anderson*, 477 U.S. at 255). Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 656–57 (quoting Fed. R. Civ. P. 56(a)). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *Id.* at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000).

## II. Whether California or Arizona Law Applies Is a Fact-Dependent, Issue-by-Issue Inquiry That Cannot Be Resolved on This Record

Defendant fails to perform the choice-of-law analysis that Arizona principles require, and that omission is fatal to his argument. Although the Court ultimately decides which state's law applies, that determination here turns on disputed facts about where each misrepresentation was made, received, and relied upon — facts that cannot be resolved against Plaintiff on summary judgment.

### *i. The Court Can Determine This Matter on an Issue-by-Issue Basis*

Defendant's motion turns on the premise that "[o]ne body of consumer-protection law governs the transaction at issue." [Dkt. 102 at 6:16.] Arizona law is to the contrary. Federal courts sitting in diversity must apply the forum state's choice-of-law rules. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010). Arizona courts apply the Restatement (Second) of Conflict of Laws (1971) to determine the controlling law for multistate torts. *Pounders v. Enserch E & C, Inc.*, 306 P.3d 9, 11 (Ariz. 2013); *Bates v. Superior Court of State of Ariz. In and For the County of Maricopa*, 749 P.2d 1367, 1369 (Ariz. 1988).

Arizona choice-of-law rules apply the principle of "depecage," which "provides that the Court must make a choice of law determination on an issue-by-issue or claim-by-claim basis[.]" *LaCross v. Knight Transportation Inc.*, No. CV-15-00990-PHX-JJT, 2024 WL

249162, at *2 (D. Ariz. Jan. 23, 2024). In other words, the Court does not decide which state's law will govern all issues in a case, but rather which state's law governs the particular issue. *Id.*

For example, in *LaCross*, the court applied California law to wage claims arising from trips driven entirely within California and Arizona law to wage claims arising from multistate trips, all within the same lawsuit and the same contractual relationship. 2024 WL 249162, at *13. And in *Barten v. State Farm Mut. Auto. Ins. Co.*, Michigan law governed the insured's contract claim and Arizona law governed his bad-faith claim arising from the same policy. 28 F. Supp. 3d 978, 987 (D. Ariz. 2014).

As a preliminary matter, Arizona's Consumer Fraud Act ("CFA") and California's Unfair Competition Law ("UCL") are distinct causes of action that have different elements, govern different conduct, and provide different remedies. *Compare* Cal. Bus. & Prof. Code § 17200 *et seq.* (any law or regulation, federal or state, statutory or common law, can serve as a predicate for a violation, fraudulent conduct can be shown without reliance, and remedies are equitable) *with* A.R.S. § 44-1521 *et seq.* (governs merchant-to-consumer transactions, prohibits false advertisement of goods, and provides legal remedies).

These causes of action are not mutually exclusive and govern different conduct under different standards. Thus, an issue-by-issue determination, as recognized by Arizona courts, applies to these distinct causes of action.

*ii. Substantial Issues of Fact Exist That Warrant Denial of Summary Judgment*

"Pursuant to § 145 of the Restatement, in resolving multistate tort issues, this Court must apply the law of the state which has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Barten*, 28 F. Supp. 3d at 996–97 (citing Restatement (Second) Conflict of Laws § 145(1) and *Bates*, 749 P.2d at 1370). "Restatement § 148 applies to torts of fraud and misrepresentation." *Vanguard Specialized Funds v. VEREIT Inc.*, No. CV-15-02157-PHX-ROS, 2016 WL 5858735, at *9 (D. Ariz. Oct. 3, 2016). "It says where a defendant's misrepresentations and the plaintiff's reliance upon them occur in separate states, the following factors must be examined to determine

which state has the most significant relationship: where the plaintiff received and acted in reliance upon the misrepresentations, where the defendant made them, and the parties' domicile (for individuals)." *Id.* (citing Restatement (Second) Conflict of Laws § 148(2)). Other than the domicile factor (which is split evenly between California and Arizona), all of these factors inherently require the Court to resolve a question of fact. *See id.* (citing *Callies v. United Heritage Prop. & Cas. Ins. Co.*, No. 1 CA-CV 13-0189, 2014 WL 1048846, at *5 n.9 (Ariz. Ct. App. Mar. 18, 2014)) ("This is a 'necessarily fact intensive' inquiry").

Here, Defendant made multiple different misrepresentations, at different times, and in different states — all of which Defendant disputes (and ultimately convolutes) in substance. The first major misrepresentation occurred on October 23, 2021, when Defendant, in person in California, gave Plaintiff the Porsche 1543 binder, which misrepresented the Porsche as a 914/6-R. [Pltf. SOF, ¶¶ 1–2, 4.] The second major misrepresentation occurred on October 24, 2021, when Plaintiff once again visited Defendant's home in California and discussed the history of the Porsche 1543 and discovered the 914-R cards in the Porsche 1543 glovebox. [Pltf. SOF, ¶¶ 5–8.] The third misrepresentation occurred on October 31, 2021, when Defendant (located in California) emailed Plaintiff (located in Arizona) a copy of what Defendant represented to be the "original window sticker," which misrepresented the Porsche as a 914/6-R. [Pltf. SOF, ¶ 11 Ex. P, Ex. G, ¶ 13, Ex. P.] Although Plaintiff is confident he will prove at trial that all three misrepresentation occurred, a jury *could* decide that Plaintiff received misrepresentations *only* in California, demonstrating that a core premise of Defendant's argument — that Edwards' "receipt of representations …. all lie in Arizona" — is not true. [Dkt. 102 at 6:11–15.]

Specifically, Defendant (and witnesses within his control) disputes the nature of the misrepresentations he made and has continued to flip-flop on the who, what, where, when, and why of the misrepresentations. [Pltf. SOF, ¶3, Ex. H., Ex. I. Ex. G, ¶ 12, Ex. H, Ex. I, Ex. Q, Ex. G.] For example, Defendant has submitted his answers to different sets of

interrogatories and supplemented once — each time significantly changing the substance of his answers. [Pltf. SOF, ¶ 3.] On the key issue of whether Defendant gave Plaintiff the binder for the Porsche 1543 on October 23, 2021 in California, Defendant first answered "Plaintiff returned the [Porsche 0011] binder the next morning. Only then did he appear to notice the Porsche 1543 and asked what it was." [Pltf. SOF, ¶ 3.] However, in his most recent supplemental response, Defendant answered "Defendant provided Plaintiff a binder of information about Porsche 0011 to read before his return home the next day. At the same time, Defendant unintentionally gave Plaintiff a binder of information about Porsche 1543." [Pltf. SOF, ¶ 3.] In essence, Defendant first affirmatively stated that he never gave Plaintiff the binder on October 23, 2021, and then affirmatively stated the opposite. Defendant's Answer to Plaintiff's First Request for Admission said yet something else: that the 1543 binder was first provided at delivery. [Pltf. SOF, ¶ 3, Ex. I.] Defendant then testified in his deposition that he never gave the Porsche 1543 binder to Plaintiff, while Defendant's son (and key witness), Chris Samojen, testified that Defendant *did* give the Porsche 1543 binder to Plaintiff. [Pltf. SOF, ¶ 3, Ex. H, Ex. G.] Plaintiff also testified that he received the Porsche 1543 binder that day. [Pltf. SOF, ¶¶ 1, 3, Ex. A.] Whether this misrepresentation occurred in California, or whether it occurred at all, is a question of fact for the jury.

Similarly, Defendant has flip-flopped on the substance of the October 31, 2021 email with the "original window sticker." [Pltf. SOF, ¶¶ 11–13.] In Defendant's Answer to Plaintiff's First Request for Admission, Defendant denied sending the October 31, 2021 email with the "original window sticker." [Pltf. SOF, ¶ 13, Ex. J.] He subsequently admitted that he never affirmatively told Plaintiff it was not the original window sticker. [Pltf. SOF, ¶ 13, Ex. O.] And in the same first responses, Defendant admitted that the sticker was an imitation and that he knew the car was not a 914/6 R. [Pltf. SOF, ¶¶ 13–14, Ex. J.] And although Plaintiff produced numerous emails proving that Defendant sent the email, Defendant testified in his deposition that he never sent it. His son Chris acknowledged that Plaintiff produced the email but could not explain why it exists. [Pltf.

SOF, ¶ 12.] This key email, if sent (which Defendant disputes), would have been sent from California to Arizona. [Pltf. SOF, ¶ 11.][2]

In sum, while the misrepresentations were part of a single transaction, where that transaction's § 148 contacts lie depends on the factfinder determining which of the disputed representations actually occurred, and where. Those findings will drive the choice-of-law analysis, and they cannot be made on summary judgment. *See, e.g.*, *Marra v. Bushee*, 447 F.2d 1282, 1284 (2d Cir. 1971) ("Because the plaintiff made a general demand for a jury trial, the defendant was entitled to the jury's consideration of every issue properly triable to it…One such issue was the situs of defendant's conduct, a factual determination upon which the choice of law turned"); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 976–77 (C.D. Cal. 2011) ("There is a genuine issue of material fact as to whether a 'true conflict' exists between [two jurisdictions]," and "[g]iven the foundational dispute about the scope of [the] allegations, this is an issue the parties can take up with the fact-finder").

The Court cannot determine at this stage whether to apply the CLRA or the CFA. Nothing requires the Court to choose now. The jury can find liability under each statute (or neither), and special interrogatories can identify where each representation was made, received, and relied upon. The Court can then apply § 148 to the facts as found, determine which statute or statutes support relief, and prevent any duplicative recovery in the judgment.

Deciding the question now, by contrast, risks dismissing two counts on a factual premise — Arizona-only receipt and reliance — that the trial record may disprove. If the Court is inclined to reach the issue before trial, it should at minimum deny the motion without prejudice to renew it based on the trial record. *See Barten*, 28 F. Supp. 3d at 986–

---

[2] Plaintiff and Defendant also disagree as to the substance of the conversations from the October 24, 2021 California meeting. The factual issues surrounding the contents of those conversations and the misrepresentations (or lack thereof) that occurred directly impact whether those misrepresentations occurred in California and would be governed by California law. [Pltf. SOF, ¶¶ 5–9.]

87 (resolving choice of law on developed record and denying summary judgment where fact issues remained).

**III. Plaintiff Complied With The CLRA's Notice Requirement**

First, Plaintiff's July 28, 2025 Demand Letter substantially complied with the CLRA's notice requirement. [Resp. to SOF, ¶ 15.] It was in writing, identified the misrepresentations about the Porsche 1543, invoked consumer fraud statutes, and demanded Defendant rectify the issue. [Resp. to SOF, ¶¶ 15–16.] Nonetheless, Defendant admits that Plaintiff provided the notice required by the CLRA on July 6, 2026. [Resp. to SOF, ¶ 24.] Defendant claims that this notice was provided too late and advocates for a *per se* bar of the claim because Plaintiff prematurely filed a damages claim. California's interpretation of the CLRA says otherwise. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1259–61 (Cal. Ct. App. 2009).

In *Morgan*, the plaintiffs' CLRA claim in their second amended complaint was dismissed for failure to provide proper notice under section 1782(a)(2) of the California Civil Code. *Id.* at 1260. The plaintiffs then sent a notice letter as required by the statute, and four months later, filed their third amended complaint. *Id.* The defendant argued that "plaintiffs were precluded from seeking damages under the CLRA by failing to comply with the notice requirement before filing the second amended complaint in which they first sought such damages." *Id.* at 1260–61. The appellate court disagreed, explaining that the federal district court cases requiring dismissal with prejudice "fail to properly take into account the purpose of the notice requirement":

> "That requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30–day period that it will correct those wrongs within a reasonable time…A dismissal with prejudice of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements. If, before that 30–day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages." *Id.* at 1261.

The *Morgan* court found that the trial court erred in dismissing the third amended complaint, as the plaintiffs complied with the rule by sending the required notice more than 30 days before they filed the third amended complaint. *Id.* The *Morgan* court held consistently with the plain language of the statute, which was aligned with the statute's purpose. So too here: Plaintiff served his notice on July 6, 2026, and more than 30 days have passed without a cure.

Defendant argues that *Morgan* is limited to plaintiffs who first plead an injunctive-relief claim and then amend to add damages. [Dkt. 102 at 4:23–5:2; 5:6–8.] But *Morgan*'s reasoning turns on the notice requirement's purpose — giving the defendant thirty days to cure before facing damages — and holds that a premature damages claim "must simply be dismissed until 30 days or more after the plaintiff complies." 177 Cal. App. 4th at 1261. That purpose has been fully served here: Defendant received a compliant notice and chose not to cure.

Pending is Plaintiff's Motion for Leave to Amend His Complaint, wherein Plaintiff alleges that he served the notice required by the CLRA on July 6, 2026. [Dkt. 109, ¶ 97.] Thus, summary judgment on this issue is inappropriate.

**IV. Defendant Is Not Entitled To Summary Judgment On Rescission.**

"When fraud enters into a transaction to the extent of inducing execution of a written document, the instrument never becomes a valid contract, and the party seeking to rescind the contract is not bound by its terms." *Wagner v. Rao*, 885 P.2d 174, 177 (Ariz. Ct. App. 1994). "This rule acknowledges the reality of contractual transactions and recognizes that affirmative representations of fact often go to the heart of the bargain." *Id.* "Rescission extinguishes the contract [], terminates further liability, and restores the parties to their former positions by requiring them to return whatever consideration they have received." *Wong v. Stoler*, 237 Cal. App. 4th 1375, 1386 (Cal. Ct. App. 2015).

Defendant asks the Court to hold, as a matter of law, that Edwards "cannot obtain rescission or rescissory relief" because he has an adequate remedy at law, cannot restore the status quo, and comes to equity with unclean hands. [Dkt. 102 at 8:12–14; 9:9–20;

12:21–26]. A buyer fraudulently induced into a transaction, however, does not forfeit rescission merely because he also seeks damages, or because unwinding the deal may be complicated. *See Wagner*, 885 P.2d at 176–177 (summary judgment reversed on rescission of contract for fraudulent inducement on car transaction); *Caruthers v. Underhill*, 326 P.3d 268, 273 (Ariz. Ct. App. 2014) ("Plaintiffs should not have been compelled to choose one remedy to the exclusion of the other. They established liability and were therefore entitled to be made whole—whether by rescission, damages, or a combination of the two"); and *Wong*, 237 Cal. App. 4th at 1390 ("While untangling the deal may not be easy, [the court is] unaware of any insurmountable obstacles," and the trial court abused its discretion in failing to consider rescission).

As a preliminary matter, Defendant attempts to use a settlement demand letter protected by Federal Rule of Evidence 408 as evidence that Plaintiff's primary objective is to recover monetary damages. [Dkt. 102 at 10:11–25; Resp. to SOF, ¶¶ 16–20.] The Court cannot consider this inadmissible evidence in ruling on summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment"); *Equal Emp. Opportunity Comm'n v. United Postal Serv. Inc.*, No. CV-15-01935-PHX-GMS, 2017 WL 3503676, at *5 (D. Ariz. June 19, 2017) (settlement discussions protected by Rule 408 are likely inadmissible and not properly before the court on summary judgment).

Notwithstanding Defendant's reliance on inadmissible evidence, rescission is available here for several independently sufficient reasons. First, and most critically, Defendant's claim that restoration is "impossible" because Edwards removed the original engine fails on the record. [Dkt. 102 at 11:15–23.] The Porsche 0705, in which Edwards installed that engine, is still owned by Plaintiff, who can reinstall it if the Court deems rescission the appropriate remedy. [Resp. to SOF, ¶¶ 44–50.]

Second, Arizona law does not require perfect restoration. Defendant's own authority recognizes that "equitable considerations" may obviate the need for strict restoration of the status quo. *Grand v. Nacchio*, 147 P.3d 763, 781 (Ariz. Ct. App. 2006). And both the

Arizona and California Supreme Courts have consistently held that a defrauded plaintiff should not suffer for a loss brought on by the defendant's fraud. *See, e.g.*, *Jennings v. Lee*, 461 P.2d 161, 166 (Ariz. 1969); *Runyan v. Pac. Air Indus., Inc.*, 466 P.2d 682, 689 (Cal. 1970).

Third, the approximately $170,000 in modifications were made in justifiable reliance on the fraud — Plaintiff's mechanic declared under oath that neither he nor Edwards doubted the car was a genuine 914/6-R [Pltf. SOF, ¶ 20, Ex. T] — and a defrauded party should not be penalized for reliance-based conduct.

Fourth, even if literal rescission were infeasible, rescissory damages remain available as the financial equivalent of rescission. *Grand*, 147 P.3d at 773 (rescissory damages may be used "when rescission, though appropriate, is impossible or infeasible," and are "a money award designed to be as nearly as possible the financial equivalent of rescission"); *Wong*, 237 Cal. App. 4th at 1384–1386 (rescinding party may "recover damages resulting from the rescission" and is entitled to "*complete relief*, including restitution . . . and any consequential damages") (emphasis in original)).

Fifth, *Sonner v. Premier Nutrition Co.* does not bar rescission here or require judgment on Count VI. *Sonner* held that equitable restitution was unavailable because the plaintiff sought "the same amount of money for the exact same harm" as her legal damages claim. 971 F.3d 834, 844 (9th Cir. 2020). Rescission of a sale of a unique vehicle whose provenance has been permanently tainted is not the same remedy as a damages award, especially when the vehicles have the uniqueness and prominence of the at-issue vehicles. [Pltf. SOF, ¶¶ 14–20.] *Sonner* requires inadequacy of legal remedies; it does not hold that a plaintiff who also seeks damages automatically has an adequate one. Here, the harm is the loss of a unique collector vehicle whose provenance has been permanently compromised, and equitable restitution reaches relief that damages measured by appraised market value cannot. [Pltf. SOF, ¶¶ 14–21.] The appraisal on which Defendant relies

measures the value gap[3]; it does not show that a money award would restore Edwards to his pre-transaction position, including return of his own unique Ford GT. No dollar award can un-taint the car's provenance.

Finally, the unclean-hands defense fails because the bulk of modifications predated discovery of the fraud, the post-discovery work was de minimis ($3,952 of $170,000), and the auction consignment of Porsche 0705 was the RM specialist's initiative — not Edwards's [Resp. to SOF, ¶¶ 38, 40, 48, 49, 50] — making the fact-intensive unclean-hands inquiry inappropriate for summary judgment. *See In re Everett*, 364 B.R. 711, 723 (Bankr. D. Ariz. 2007) (unclean hands requires a close nexus between the misconduct and the matter in litigation).

**CONCLUSION**

WHEREFORE, for the foregoing reasons, because genuine disputes of material fact remain on each issue Defendant raises, Plaintiff respectfully requests that this Court deny Defendant's Motion for Partial Summary Judgment in its entirety.

DATED this 30th day of October, 2026.

RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.

*/s/ Daniel B. Bernardone (With Permission)*
Daniel B. Bernardone
Aaron R. Clark
*Attorneys for Plaintiff*

MCDONALD HOPKINS LLC

*/s/ Patrick O'Meara*
Michael Croghan
Patrick O'Meara
Luca Giovine

---

[3] The record shows a $330,000 value gap between the car as represented and as delivered: Plaintiff's appraiser valued the car at $525,000 as if a genuine 914/6 R and at $195,000 as-is. [Pltf. SOF, ¶ 21.]

Rachel Dudley
*Attorneys for Plaintiff*
*Admitted Pro Hac Vice*