**Rusing Lopez Lizardi & Saffer, P.L.L.C.**
7047 E. Greenway Parkway, Suite 400
Scottsdale, Arizona 85254
Telephone: (480) 663-9800
Facsimile: (520) 529-4262
dbernardone@rllsaz.com
aclark@rllsaz.com
*Attorneys for James Edwards*

Daniel B. Bernardone
State Bar No. 033256
Aaron Clark
State Bar No. 038534

Michael Croghan (ARDC #6312601)
Patrick O'Meara (ARDC # 6317487)
Luca Giovine (ARDC #6337664)
Rachel Dudley (ARDC #6352864)
McDonald Hopkins LLC
300 North LaSalle St., Suite 1400
Chicago, IL 60654
phone (312) 280-0111
mcroghan@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
*Attorneys for James Edwards*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

James Edwards,

Plaintiff,

v.

Tony Samojen,

Defendant.

Case No. 3:25-CV-08174-SPL

**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS IN RESPONSE TO DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

(Hon. Steven Paul Logan)

Pursuant to LRCiv 56.1(b), Plaintiff James Edwards, by and through undersigned counsel, submits the following Controverting Statement of Facts in response to Defendant's Statement of Facts in Support of His Motion for Partial Summary Judgment.

| **Paragraph No.** | **Defendant's Statement of Fact** | **Plaintiff's Response and Additional Facts** |
|---|---|---|
| | **The Transaction** | |
| 1. | On November 2, 2021, Plaintiff James Edwards and Defendant Tony Samojen executed a one-page agreement (the "Agreement") to exchange Edwards's $400,000 cash and 2006 Ford GT for Samojen's Porsche 914/6 chassis 914 043 0011 ("Porsche 0011"), Porsche 914/6 chassis 914 043 1543 ("Porsche 1543"), and associated racing parts and materials ("Parts"). Ex. B. | Admitted. Plaintiff further states that the automobile serial number for the 2006 Ford GT is 1FAFPOS76Y401685. (Defendant's Ex. B.) |
| 2. | Edwards drafted the Agreement himself. Ex. C at 4:10–12. | Admitted. |
| 3. | Samojen resides in Camarillo, California. Ex. A at 1 ¶ 3. | Admitted. |
| 4. | Edwards is a citizen and resident of Arizona. Doc. 1 at 2 ¶ 7. | Admitted. |
| 5. | Edwards visited Samojen's home on October 23 and 24, 2021. Ex. A at 1 ¶¶ 4–5. | Admitted. Edwards visited Defendant's home in California, on October 23 and 24, 2021. (Deposition Transcript of J. Edwards attached as Exhibit A ("Edwards Dep.") at 28:12–21, 40:21–23.) |

| | | |
|---|---|---|
| 6. | During Edwards's time at Samojen's home, he inspected Porsche 0011 and at least saw Porsche 1543 in person. Ex. A at 1 ¶ 6. | Admitted that Edwards inspected Porsche 0011 when at Samojen's home on October 23 and 24, 2021. Disputed that Edwards merely "saw Porsche 1543 in person"; on October 24, 2021, Edwards "did a cursory look at the car as it sat on the ground[,]" "sat on the door edge, looking in the car, seeing the layout of the seats, the roll bar, the things you look for, steering wheel, all the things that are nuances of a correct R-type car, GT-type car. I did that on the drive's side. I did it on the passenger side as well, sat in the door frame, looked around, opened the glove box[.]" (Edwards Dep. at 41:14–42:21.) Defendant testified that he "do[esn't] remember [Edwards] spending any time with" Porsche 1543 or even "looking at" the car. (Deposition Transcript of Tony Samojen attached as Exhibit H ("T. Samojen Dep.") at 101:2–4, 101:21–102:5.) |
| 7. | The parties negotiated the Agreement by email and telephone while Edwards was in Arizona, and in person in Arizona. Ex. D at 103:22–25; Ex. E at 55:11–13, 66:5–17, 68:1–6, 69:10–19; Ex. F; Ex. G; Doc. 1 at 2 ¶ 10. | Admitted that certain negotiations occurred while Edwards was in Arizona. Disputed that all negotiations occurred while Edwards was in Arizona. Edwards visited Defendant's home in California, on October 23 and 24, 2021. ( Edwards Dep. at 28:12–21, 40:21–23.) Edwards inspected Porsche 0011 when at Samojen's home in California on October 23 and 24, 2021. On October 24, 2021, Edwards "did a cursory look at the car as it sat on the ground[,]" "sat on the door edge, looking in the car, seeing the layout of |

| | | |
|---|---|---|
| | | the seats, the roll bar, the things you look for, steering wheel, all the things that are nuances of a correct R-type car, GT-type car. I did that on the drive's side. I did it on the passenger side as well, sat in the door frame, looked around, opened the glove box[.]" (Edwards Dep. at 41:14–42:21.) |
| 8. | The Agreement's only performance term is that Edwards will transport the Ford GT to Camarillo. Ex. B. | Disputed. The Agreement also provides for an inspection "as Sellers facility[.]" (Defendant's Ex. B.) Edwards sent individuals to California to drop off the Ford GT, inspect Porsche 0011 and Porsche 1543, and pick up the Porsches from Defendant. (*Id.*; Defendant's Ex. E at 69:20–24; Defendant's Ex. I.) |
| 9. | Edwards wired the $400,000 from Arizona. Ex. H. | Admitted. |
| 10. | Edwards arranged for the interstate transport of the parties' vehicles from Arizona. Ex. E at 69:20–24; Ex. I; Ex. J. | Admitted that Edwards made arrangements for individuals to go to California to drop off the Ford GT, inspect Porsche 0011 and Porsche 1543, and pick up the Porsches from Defendant. (Defendant's Ex. B; Defendant's Ex. E at 69:20–24; Defendant's Ex. I.) |
| 11. | On November 18, 2021, the transport service Edwards arranged delivered the Ford GT to Samojen and picked up the Porches and Parts to deliver to Edwards. Ex. E at 69:20–24; Ex. K. | Admitted that the transport service was scheduled to deliver the Ford GT to Samojen's home in California and pick up Porsche 0011, Porsche 1543, and the Parts to deliver to Edwards on November 18, 2021. (Defendant's Ex. K.) Disputed that the evidence establishes that the delivery occurred as scheduled on November 18, 2021. (*Id.*) |

| | | |
|---|---|---|
| 12. | Edwards alleges that he "bec[a]me aware of" an online forum discussion in which "automotive experts" "concluded that the [window sticker Edwards alleged misrepresented Porsche 1543 as a 9146 R] was a forgery and that Porsche 1543 was not a genuine 914/6 R." Doc. 1 at 9 ¶¶ 42–43. | Admitted. |
| **Pre- and Post-Litigation Notices and Offers** | | |
| 13. | On June 13, 2025, Edwards emailed Samojen accusing Samojen of representing Porsche 1543 as a 914/6 "R," claiming that Edwards had spent "considerable funds . . . under the assumption the car was as represented," expressing hope for "a gentlemanly means to resolve this situation," and citing no statute. Ex. L. | Admitted that on June 13, 2025, Edwards emailed Samojen regarding Samojen's representations of Porsche 1543 as a 914/6 R and that Defendant's Exhibit L is a true and accurate copy of that email. Disputed that Paragraph 13 quotes the entirety of the email. In relevant part, the June 13, 2025 email reads:<br><br>"You represented the car as a 914-6 R as noted in the cards you printed and handed out at events. You also sent the window sticker in a separate email where you could and should have clarified that it was not authentic.<br><br>Assuming that 1543 was what you represented as a 914-6 R, I placed greater value. Since I have spent considerable funds restoring it to pristine condition under the assumption the car was as represented. |

| | | |
|---|---|---|
| | | Obviously, since your created window sticker has become known in the Porsche community as a fake, it taints the car's value and future salability. I cannot, and would not, attempt to represent it as a 914-6 R. As far as I now know, it is a well done fabrication of a 914-6 GT from a production 1970 914-6. Value difference in the 100's of thousands of dollars.<br><br>Your story of your involvement with 1543 has changed dramatically from when we first met and discussed the possibility of purchasing it, to what you now shared. Please explain,what the hell do I now own?<br><br>I believe there needs to be , I hope, a gentlemanly means to resolve this situation."<br><br>(Defendant's Exhibit L.) |
| 14. | Samojen received a demand letter from Edwards's counsel dated July 28, 2025. Ex. A at 2 ¶¶ 12–13; Ex. M. | Admitted. |
| 15. | The July 28, 2025 letter did not mention the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, or § 1782 and invoked "intentional fraud/misrepresentation," "breach of express warranty," and unspecified "consumer fraud statutes." Ex. M at SAMOJEN0180. | Subject to the objections outlined in Paragraphs 16–20, admitted that the July 28, 2025 letter did not mention the California Consumer Legal Remedies Act ("CLRA"). Disputed that the July 28, 2025 letter did not "notify" Defendant of the "particular alleged violations of Section 1770," Cal. Civ. Code § 1782(a)(1), as it notified |

| | | |
|---|---|---|
| | | Defendant of the improper conduct of representing Porsche 1543 as a Porsche 914/6 R to Edwards prior to the execution of the November 2, 2021 Agreement. (Defendant's Ex. M.) The CLRA is a consumer fraud statute, as outlined in the July 28, 2025 Demand Letter. |
| 16. | The July 28, 2025 letter demanded (1) documentation of Porsche 1543's provenance, (2) return of the $400,000 cash payment, and (3) return of the 2006 Ford GT "with additional compensation to be determined based on the current mileage and condition of the Ford GT", and it contained no demand that Samojen correct, repair, replace, or otherwise rectify the goods. Ex. M at SAMOJEN0180. | Edwards objects that Paragraph 16 cites inadmissible evidence under Federal Rule of Evidence 408. The July 28, 2025 Demand Letter can only be used to establish notice under the CLRA; however, it cannot be used to establish any admissions from Plaintiff, whether express or implied, as attempted by Defendant through Paragraph 16.<br><br>Subject to and without waiving said objection, admitted that Paragraph 16 partially summarizes and quotes the July 28, 2025 letter. Disputed that Paragraph 16 accurately represents the substance of the demand in the July 28, 2025 letter, which reads:<br><br>"To resolve this matter and avoid the substantial expense of litigation, Mr. Edwards demands the following within thirty (30) days of your receipt of this letter: (1) complete and truthful documentation regarding the actual provenance, history, and specifications of this vehicle, including all authentic factory documentation and records in your possession; (2) return of the full $400,000 cash payment; and (3) return |

| | | |
|---|---|---|
| | | of the 2006 Ford GT, with additional compensation to be determined based on the current mileage and condition of the Ford GT compared to its condition at the time of the fraudulent transaction."<br><br>(Defendant's Ex. M.) |
| 17. | The July 28, 2025 letter warned that Edwards was entitled to "compensatory damages" and he "would recover substantial punitive damages as a multiple of his compensatory damages," plus pre- and post-judgment interest. Ex. M at SAMOJEN0180. | Edwards objects that Paragraph 17 cites inadmissible evidence under Federal Rule of Evidence 408. The July 28, 2025 Demand Letter can only be used to establish notice under the CLRA; however, it cannot be used to establish any admissions from Plaintiff, whether express or implied, as attempted by Defendant through Paragraph 17.<br><br>Subject to and without waiving said objection, admitted that Paragraph 17 partially quotes the July 28, 2025 letter. Disputed that the partial quotation accurately represents the relevant portion of the letter, which reads:<br><br>"Mr. Edwards is entitled to substantial compensatory damages measured by the difference in value between what you represented he was purchasing and what he actually received. A genuine 1970 Porsche 914/6 R would be worth many hundreds of thousands of dollars; what you sold him is worth a fraction of what he paid. Additionally, your intentional fraud exposes you to punitive damages designed to punish your misconduct and deter others from |

| | | |
|---|---|---|
| | | engaging in similar behavior. We expect Mr. Edwards would recover substantial punitive damages as a multiple of his compensatory damages given the gravity of your misdeed. Mr. Edwards is also entitled to pre- and post-judgment interest and may be entitled to recover all attorneys' fees, costs, and expenses that result from your fraud. Your exposure easily exceeds $1,000,000, even before factoring in your own attorney's fees."<br><br>(Defendant's Ex. M.) |
| 18. | The letter did not mention the Parts. Ex. M. | Edwards objects that Paragraph 18 cites inadmissible evidence under Federal Rule of Evidence 408. The July 28, 2025 Demand Letter can only be used to establish notice under the CLRA; however, it cannot be used to establish any admissions from Plaintiff, whether express or implied, as attempted by Defendant through Paragraph 18.<br><br>Subject to and without waiving said objection, disputed. The July 28, 2025 letter reads: "In October 2021, you sold Mr. Edwards a vehicle that you represented to be a rare and valuable 1970 Porsche 914/6 R, along with another vehicle and parts, in exchange for $400,000 and a 2006 Ford GT worth nearly half a million dollars." (Defendant's Ex. M.) |
| 19. | The letter did not offer to restore to Samojen any of the consideration | Edwards objects that Paragraph 19 cites inadmissible evidence under Federal |

| | | |
|---|---|---|
| | Samojen had given to Edwards under the Agreement. Ex. M. | Rule of Evidence 408. The July 28, 2025 Demand Letter can only be used to establish notice under the CLRA; however, it cannot be used to establish any admissions from Plaintiff, whether express or implied, as attempted by Defendant through Paragraph 19.<br><br>Subject to and without waiving said objection, disputed. The July 28, 2025 letter included the following offer: "Should you wish to recover the vehicles as part of any negotiated resolution, you must fully reimburse Mr. Edwards for all expenses incurred in reliance on your fraud." (Defendant's Ex. M.) |
| 20. | Instead, the letter stated, "The two Porsche vehicles will remain with Mr. Edwards," recoverable only if Samojen "fully reimburse Mr. Edwards for all expenses incurred in reliance on [his] fraud," referencing "invest[ment of] nearly $180,000 out of pocket in reliance on [his] fraudulent representations." Ex. M at SAMOJEN0180. | Edwards objects that Paragraph 20 cites inadmissible evidence under Federal Rule of Evidence 408. The July 28, 2025 Demand Letter can only be used to establish notice under the CLRA; however, it cannot be used to establish any admissions from Plaintiff, whether express or implied, as attempted by Defendant through Paragraph 20.<br><br>Subject to and without waiving said objection, disputed that the partial quotations accurately reflect the letter's meaning. The relevant portion reads:<br><br>"The two Porsche vehicles will remain with Mr. Edwards, as he has invested nearly $180,000 out of pocket in reliance on your fraudulent representations, in addition to |

| | | |
|---|---|---|
| | | significant time and effort. Should you wish to recover the vehicles as part of any negotiated resolution, you must fully reimburse Mr. Edwards for all expenses incurred in reliance on your fraud."<br><br>(Defendant's Ex. M.) |
| 21. | Samojen received no other written pre-suit demand from Edwards. Ex. A at 2 14. | Admitted that Edwards did not send Samojen an additional pre-suit demand. After filing this action, Edwards sent Samojen an additional demand letter dated July 6, 2026. (Defendant's Ex. N.) |
| 22. | Edwards filed this action on August 22, 2025, twenty-five days after his counsel sent the July 28, 2025 letter. Ex. M; Doc. 1. | Admitted. |
| 23. | Other than the June 13, 2025 email from Edwards, Ex. L, and the July 28, 2025 letter from Edwards's counsel, Ex. M, Samojen received no written notice from Edwards alleging legal claims against him or suggesting Edwards would sue him. Ex. A at 2 ¶ 15. | Disputed. On July 6, 2026, Edwards's counsel sent Samojen a written notice alleging that Samojen violated California Civil Code § 1770(a). (Defendant's Ex. N.) |
| 24. | Edwards's counsel sent Samojen by certified mail a letter dated July 6, 2026, asserting a violation of Cal. Civ. Code § 1770(a) and demanding that Samojen "correct, repair, replace, or otherwise rectify Porsche 1543" within thirty days. Ex. A at 2 ¶¶ 16–17; Ex. N. | Admitted that Edwards's counsel sent Samojen the July 6, 2026 letter by certified mail. Disputed that the partial summary and quotation in Paragraph 24 accurately reflect the July 6, 2026 letter, which reads: |

| | | |
|---|---|---|
| | | "I represent James Edwards in relation to the November 2, 2021 contract he entered into with you for the sale of Porsche 0011, Porsche 1543, and Porsche parts in exchange for Ford GT and $400,000.00 (the "Agreement"). This letter serves as notification that you violated California Civil Code § 1770(a) by misrepresenting Porsche 1543 as a 914/6 R to Mr. Edwards prior to the execution of the Agreement on November 2, 2021. Mr. Edwards demands that you correct, repair, replace, or otherwise rectify Porsche 1543 within thirty (30) days."<br><br>(Defendant's Ex. N.) |
| 25. | As of this filing, Edwards has not amended his complaint or moved to do so. *See generally* Docket. | Admitted that Edwards has not completed the process of amending his complaint. Disputed that Edwards has not moved to amend. Pending before the Court is Plaintiff's Motion for Leave to Amend. (See Dkt. 109.) |
| 26. | Edwards's Rule 26(a)(1) initial disclosures, served October 30, 2025, request return of the $400,000 and the Ford GT, state that "Plaintiff would return both Porsche 0011 and Porsche 1543 to Mr. Samojen," and demand compensation for any loss of value to the Ford GT plus reimbursement of the out-of-pocket reliance amounts "spent on Porsche 0011 and Porsche 1543," which were "still being calculated." Ex. O at 3:9–18. | Admitted. |

| | | |
|---|---|---|
| 27. | The disclosures do not mention rescission of the Parts. Ex. O. | Admitted. |
| 28. | Edwards's retained expert served a retrospective appraisal by which Edwards quantifies his claimed damages. Ex. P; Ex. O at 8–9. | Admitted. Edwards's expert authored one retrospective report, Supplemental Appraisal Effective Date November 2, 2021, a non-retrospective report, Appraisal Effective Date March 26, 2026, and a rebuttal report. (Combined Reports attached as Group Exhibit B.) |
| **Edwards's Possession of the Porsches** | | |
| 29. | Porsches 0011 and 1543 were loaded for transport into Edwards's possession on November 18, 2021. Ex. E at 69:20–24; Ex. K. | Admitted that the "moving parts of the deal was [] that [Edwards] would deliver the Ford GT to California and my guy at the time would pick up the parts and the two cars[.]" (Defendant's Ex. E at 69:20–24.) Admitted that the transport was scheduled to "unload/load Thursday morning the 18th" of November. (Defendant's Ex. K.) Disputed that the cited sources adequately support the factual statement of Paragraph 29. |
| 30. | Effective November 19, 2021, Edwards insured Porsche 0011 at an agreed value of $500,000 and Porsche 1543 at an agreed value of $400,000. Ex. Q. | Admitted that Paragraph 30 accurately reflects the November 19, 2021 insurance coverage for Porsche 0011 and Porsche 1543. Disputed to the extent Defendant attempts to use the phrase "agreed value" to represent the value assigned to each vehicle by the Parties' Agreement. Rather, the value describes the agreed value between Edwards and his insurer for insurance purposes only. (Defendant's Ex. Q; Defendant's Ex. B.) |

| | | |
|---|---|---|
| 31. | Edwards testified that Porsche 1543 has changed "[c]onsiderably" since the sale: "It's had a ground-up restoration, both body, interior, and mechanically." He testified that "[t]he engine has been replaced" and that he cannot itemize the new parts installed: "I can't tell you specifically each and every part." Ex. E at 93:21–94:5. | Admitted. |
| 32. | From approximately February 7, 2023, to approximately August 26, 2025, Edwards caused work to be done on Porsche for which he paid around $180,000. Ex. R at 2:9–11; Ex. S. | Admitted as to Porsche 1543. Disputed as to Porsche 0011. |
| 33. | The work was at least partially accounted for across 20 work orders for which approximately $170,000 was billed and paid. Ex. S. | Disputed. Twenty-two work orders account for the work completed on Porsche 1543 and for which Plaintiff paid $171,437.75. (Defendant's Ex. S; Group Exhibit C.) |
| 34. | The work included removal of Porsche 1543's engine in February 2023. Ex. S at JE_000143. | Admitted that the work on Porsche 1543 included removing the engine that was in Porsche 1543 on February 1, 2023. Disputed that the engine was Porsche 1543's original engine. (Defendant's Ex. E at 282:4–6.) |
| 35. | The work included stripping the body to bare metal, Ex. S at JE_000144–145, installing a part from a donor chassis, Ex. S at JE_000136–137, 141, rebuilding the gearbox with new internals, Ex. S at JE_000104, and installing a | Admitted that Paragraph 35 purports to summarize portions of the work performed on Porsche 1543. Admitted that Edwards had Porsche 1543's body stripped, a new turn signal bucket installed, the synchros in the gearbox replaced, and the engine removed and |

| | | |
|---|---|---|
| | replacement engine, Ex. S at JE_000116; *see also* ¶¶ 42–46, below. | replaced. (Defendant's Ex. S at JE_000104, JE_000116, JE_000136–137, JE_000143–145.) Disputed that the partial summary accurately reflects all of the work Edwards had performed on Porsche 1543. (*See generally* Defendant's Ex. S; Ex. B.) |
| 36. | The work included at least $3,952.38 for work that was performed after May 2025, when Edwards alleges he discovered Samojen's alleged misrepresentation. Ex. S at JE_000101–02; ¶ 12 above. | Admitted that $3,952.38 of work was performed on Porsche 1543 after May 2025. Disputed that Edwards knew the extent of Samojen's misrepresentations in May 2025. Edwards first became aware of the forum discussion on or around May 12, 2025. (Exhibit D.) He did not confront Defendant until May 24, 2025, and Defendant did not substantively respond until June 12, 2025. (Exhibit E at JE_000081–83.) Thus, Edwards did not know the extent of the misrepresentation until June 12, 2025. (*Id.*) The only expenses incurred after June 12, 2025, totaled $1,631.36. (Defendant's Ex. S at JE_000101–02.) |
| 37. | Work was performed on Porsche 1543 on August 26, 2025, four days after Edwards filed this action. Ex. S at JE_000101. | Admitted. |
| 38. | On October 28, 2025—two days before Edwards served his initial disclosures—Edwards's RM Sotheby's specialist proposed the January 2026 consignment to RM management, reporting that Edwards "also might have the first production 914/6 made and a fake 914/6 R to sell, depending on [how] | Edwards objects that Paragraph 38 cites inadmissible hearsay under Federal Rule of Evidence 801.<br><br>Subject to and without waiving said objection, admitted that Paragraph 38 accurately quotes portions of Evan Shone's October 28, 2025 email. Admitted that Edwards served his |

| | | |
|---|---|---|
| | the lawsuit against the guy who sold him the fake 914/6 R and 914/6 goes." Ex. T. | initial disclosures on October 30, 2025. Disputed that Shone's email is attributable to Edwards or is admissible to establish the truth of the vehicle description or Edwards's interest in selling the vehicles. Disputed that on October 28, 2025, Edwards expressed to Shone an interest in selling Porsche 0011 or Porsche 1543. (Declaration of J. Edwards attached as Exhibit F ("Decl. of Edwards") at ¶ 6.) |
| 39. | The "first production 914/6" identified is Porsche 0011. *See* Ex. U; Ex. B. | Admitted. |
| 40. | The "fake 914/6R" identified is Porsche 1543. Ex. B ("the guy who sold" both Porsches 0011 and 1543 and no other Porsches to Edwards was Samojen). | Edwards objects that Paragraph 40 cites inadmissible hearsay under Federal Rule of Evidence 801.<br><br>Subject to and without waiving said objection, admitted that the only "fake 914/6R" Edwards owns or ever owned is Porsche 1543. Admitted that Defendant sold Edwards Porsche 0011 and Porsche 1543. |
| 41. | Effective December 16, 2025, over three months after filing this action, Edwards renewed insurance coverage for Porsches 0011 and 1543 at agreed values of $750,000 and $1,000,000, respectively, $250,000 and $600,000 greater than the agreed values for their initial policy in 2021. Ex. V; Ex. Q. | Admitted that Paragraph 41 accurately reflects the December 16, 2025 insurance coverage for Porsche 0011 and Porsche 1543. Disputed to the extent Defendant attempts to use the phrase "agreed value" to represent the value assigned to each vehicle by the Parties' Agreement. (Defendant's Ex. B.) Rather, the value describes the agreed value between Edwards and his |

| | | |
|---|---|---|
| | | insurer for insurance purposes only. (Defendant's Ex. Q.) |
| | **The Engine and the Auction** | |
| 42. | When Samojen delivered Porsche 1543, it contained a specialty twin-plug IMSA competition engine with case no. 6410139. Ex. A at 2 ¶¶ 7–9; Ex. W. | Admitted that on November 2, 2021, Porsche 1543 had a twin-plug engine known as a Porsche Type 906 2.0-liter engine. Disputed that IMSA manufactured the engine. (Decl. of Edwards at ¶5.) |
| 43. | Samojen had separately acquired that engine for approximately $25,000, rebuilt it at a cost of more than $30,000, and valued it at $80,000 to $100,000 at the time of the sale. Ex. X at 282:1–6, 304:9–15, 319:2–16. | Edwards objects that Paragraph 43 cites inadmissible lay opinion testimony under Federal Rule of Evidence 701. Defendant is not an expert qualified to testify regarding his opinion of the value of the engine.<br><br>Subject to and without waiving said objection, disputed that the fair market value of the engine was $80,000 to $100,000 at the time of the sale. The report of Plaintiff's retained expert identified Porsche 1543's value on November 2, 2021, as $143,000.00, which included consideration of the engine in Porsche 1543 at that time and is inconsistent with Defendant's assertion that the engine alone had a value of $80,000 to $100,000. (Ex. B at 28.) Admitted that Paragraph 43 accurately reflects Defendant's testimony regarding the price of the engine in Porsche 1543 when he acquired it and the investment he made to rebuild the engine. |

| | | |
|---|---|---|
| 44. | Edwards owns another Porsche, chassis 914 043 0705 (“Porsche 0705”). Ex. Z; Ex. Y at JE_001273. | Admitted. |
| 45. | The engine shown in the photographs of Porsche 0705 in Edwards’s auction listing bears case no. 6410139. Ex. Y at JE_001276, JE_001384. | Admitted. |
| 46. | Edwards installed the engine he removed from Porsche 1543 in Porsche 0705. See ¶¶ 42, 45, above; Ex. Y at JE_001273–74 (advertising engine features matching Ex. W). | Admitted. |
| 47. | In November 2025, Edwards consigned Porsche 0705 to RM Sotheby’s for its January 2026 Arizona auction. Ex. Z (red highlight for authentication); Ex. T at RMA000480 (for authentication). | Admitted. |
| 48. | Edwards advertised Porsche 0705 in the auction listing as “Offered From The Jim Edwards Collection” with the same “914/6 R” identification Edwards alleges Samojen falsely used for Porsche 1543. Ex. Y at JE_001273; Doc. 1 at 2 ¶¶ 1–2. | Edwards objects that Paragraph 48 cites inadmissible hearsay under Federal Rule of Evidence 801.<br><br>Subject to and without waiving said objection, admitted that the RM Sotheby’s listing included the quoted language and that Edwards alleges that Samojen falsely represented that Porsche 1543 was a 914/6 R. Disputed that Edwards created the auction listing and that the listing is attributable to him. RM Sotheby’s researched Porsche 0705 and created the auction listing attached |

| | | |
|---|---|---|
| | | as Defendant's Exhibit Y. (Decl. of Edwards at ¶ 10.) |
| 49. | In the listing, Edwards prominently featured in both words and photographs the engine he had removed from Porsche 1543 as a highlight of Porsche 0705 and stated that its installation marked Porsche 0705's "[e]xpert[] restor[ation] under current ownership" and "complet[ion]" of its "extensive recommissioning." Ex. Y at JE_001273–74, JE_001276, JE_001384, JE_001394. | Edwards objects that Paragraph 49 cites inadmissible hearsay under Federal Rule of Evidence 801.<br><br>Subject to and without waiving said objection, admitted that Paragraph 49 contains partial quotations of the listing for Porsche 0705. Disputed that the partial quotations and characterization of the listing accurately reflect the contents and intentions of the listing. Further disputed that Edwards created the auction listing. |
| 50. | The auction listing shows a price estimate of $900,000 to $1.1 million. Ex. Y at JE_001273. | Edwards objects that Paragraph 50 cites inadmissible hearsay under Federal Rule of Evidence 801.<br><br>Subject to and without waiving said objection, admitted. Disputed that Porsche 0705 sold; Edwards still owns the vehicle. (Decl. of Edwards¶ 13.) |

**<u>Plaintiff's Additional Statement of Facts</u>**

| **Paragraph No.** | **Plaintiff's Additional Statement of Fact** | **Supporting Evidence** |
|---|---|---|
| | **Edwards's Initial Visit to California** | |
| 1. | On October 23, 2021, before Edwards left Defendant's home in California, Defendant handed him two binders of information, one for Porsche 0011 and one for Porsche 1543. | (Edwards Dep. at 35:16–36:6, 38:6–14; Deposition Transcript of C. Samojen attached as Exhibit G ("C. Samojen Dep.") at 264:12–25.) |
| 2. | On the evening of October 23, 2021, Edwards reviewed the binder for | (Edwards Dep. at 37:9–38:14.) |

| | | |
|---|---|---|
| | Porsche 1543, including the window sticker, while he stayed in California. | |
| 3. | Defendant originally denied giving Plaintiff the Porsche 1543 binder on October 23, 2021, then admitted it, and then denied it again. Plaintiff testified that Defendant gave him the binder, and Defendant's son, Chris Samojen, admitted that Defendant gave Plaintiff the binder. Defendant has changed his testimony on this topic many times, and currently denies giving Plaintiff the binder on October 23, 2021. | (T. Samojen Dep. at 87:24–88:9; compare Defendant's First Amended and Supplemental Responses to Plaintiff's First Set of Requests for Admission attached as Exhibit I No. 18 (admitting that "[Defendant] provided Edwards with the binder for Porsche 1543 on October 23, 2021."), with Defendant's Initial Responses to Plaintiff's First Set of Requests for Admission attached as Exhibit J No. 18 (denying that "[Defendant] provided Edwards with the binder for Porsche 1543 on October 23, 2021."); compare Defendant's First Amended and Second Supplemental Responses to Plaintiff's First Set of Interrogatories attached as Exhibit K No. 12, with Defendant's Initial Responses to Plaintiff's First Set of Interrogatories attached as Exhibit L No. 12, Edwards Dep. at 35:16–36:6, 38:6–14; C. Samojen Dep. at 264:12–25.) |
| 4. | When reviewing the binder for Porsche 1543 in California, Edwards saw a window sticker that represented Porsche 1543 as a Porsche 914/6 R and 914/6 Ren. | (Edwards Dep. at 39:2–6; Window Sticker attached as Exhibit M.) |
| 5. | On October 24, 2021, Edwards returned to Defendant's home in California and returned the binders to Defendant. | (Edwards Dep. at 40:21–25.) |

| | | |
|---|---|---|
| 6. | When Edwards returned the binders in California, he asked Defendant about Porsche 1543. Defendant "told [Edwards] the story about 1543." | (*Id.* at 41:14–17.) |
| 7. | When Edwards opened the glove box in California, he found "registration papers, other miscellaneous paperwork, and there were some cards in a rubber band that showed the car as a 914-6R, Tony Samojen[.]" | (*Id.* at 51:20–23; Placards attached as Exhibit N.) |
| 8. | Defendant "explain[ed] the history of the car" in California. | (Edwards Dep. at 41:14–22.) |
| 9. | On October 24, 2021, Edwards first expressed his interest in purchasing Porsche 1543 to Defendant in person in California. | (*Id.* at 54:1–10; Defendant's Responses to Plaintiff's Second Set of Interrogatories attached as Exhibit O (acknowledging that on October 31, 2021, Edwards knew Defendant "want[ed] to sell the Yellow car"—Porsche 1543).) |
| **Negotiation of the Terms of the Agreement** | | |
| 10. | When Edwards negotiated with Defendant through telephone and email, Defendant was present in California. | (Defendant's Statement of Facts ¶ 3.) |
| 11. | On October 31, 2021, when Defendant emailed Edwards a copy of the window sticker, Defendant was located in California. | (Ex. P; *see, e.g.*, C. Samojen Dep. at 21:20–22:6, 135:25–136:1.) |

| | | |
|---|---|---|
| 12. | Defendant denies sending the October 31, 2021 email containing the window sticker and disputes the authenticity of the email produced by Edwards. Defendant, through his son Chris Samojen, has further employed an email forensics expert to determine the authenticity of the October 31, 2021 email, who stated after his investigation that "the supposed fabricated ones actually look the most real of the ones I have reviewed." Despite this, Defendant denies the authenticity of the email, and Chris Samojen "do[esn't] know why th[e] email is here" but still believes his father did not send the email. | (T. Samojen Dep. Vol. II at 174:24–175:5; *compare* Ex. I No. 10, *with* Ex. J No. 10; Exhibit Q; C. Samojen Dep. at 202:15–203:1.) |
| 13. | On October 31, 2021, Defendant knew that the window sticker was a recreation but did not inform Edwards of that fact. | (Ex. J at No. 7–8 (admitting that Defendant provided Edwards "an imitation factory window sticker" which he "had the imitation window sticker for Porsche 1543 created"); Ex. P; *compare* Ex. J at No. 11, *with* Exhibit O at No. 21.) |
| 14. | In October and November 2021, Defendant knew that Porsche 1543 was not a Porsche 914/6 R. | (Ex. J at No. 5.) |
| **Uniqueness of the Ford GT and 914/6 Rs** | | |
| 15. | Ford began manufacturing the Ford GT in the early 2000s. Between 2005 and 2006, Ford built just over 4,000 Ford GTs. During this period, | (Ex. F at 44.) |

| | | |
|---|---|---|
| | there was a "frenzy" for the two-seat Ford GT. | |
| 16. | The Ford GT possesses four factory features that increase the value of the vehicle: BBS wheels, racing stripes, a McIntosh stereo, and red- or grey-painted brake calipers. | (*Id.* at 46–47.) |
| 17. | In the fall of 2021, Defendant and his son, Chris Samojen, were interested in acquiring a Ford GT. | (C. Samojen Dep. at 104:19–105:13; Edwards Dep. at 63:18–24.) |
| 18. | There are four types of Porsche 914/6s: (1) factory-built 914/6 Rs, (2) customer-built cosmetic street cars, (3) customer-built rally cars, and (4) customer-built full competition cars. | (Deposition Transcript of Kerry Morse attached as Exhibit R ("Morse Dep.") at 109:22–110:2, 110:9–21, 113:13–15; *see also* Ex. F ("At the top of the value tier are factory (or 'works') race cars.").) |
| 19. | There are only eleven Porsche 914/6 Rs, also referred to as 914 GT factory works cars. | (C. Samojen Dep. at 195:18–196:6, 197:11–14; Edwards Dep. at 15:12–17; *see, e.g.*, Morse Dep. at 109:11–110:8, 122:9–22; *cf.* Ex. F (identifying fourteen 914/6 works cars for Porsche's factory team).) |
| 20. | Edwards's mechanic, who completed extensive work on Porsche 1543, never doubted that it was a 914/6 R. | (Declaration of James Patrick attached as Exhibit S ¶ 9.) |
| 21. | Plaintiff's expert concluded that Porsche 1543, if it were a genuine 914/6 R, would be worth $525,000.00 more than Porsche 1543 in its as-is condition. | (Ex. B at 61, 74.) |

Dated: October 30, 2026

RUSING LOPEZ LIZARDI & SAFFER, P.L.L.C.

*/s/ Daniel B. Bernardone (With Permission)*
Daniel B. Bernardone
Aaron R. Clark
*Attorneys for Plaintiff*

MCDONALD HOPKINS LLC

*/s/ Patrick O'Meara*
Michael Croghan
Patrick O'Meara
Luca Giovine
Rachel Dudley
*Attorneys for Plaintiff*

*Admitted Pro Hac Vice*