# EXHIBIT K

**Silence Law Group PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024
**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com
**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Edwards,<br>Plaintiff,<br>v.<br>Tony Samojen,<br>Defendant. | Case No. 3:25-CV-08174-SPL<br><br>**DEFENDANT TONY SAMOJEN'S FIRST AMENDED AND SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>(Hon. Steven Paul Logan) |

Defendant Tony Samojen serves these responses pursuant to Fed. R. Civ. P. 26(e)(1)(A). Responses labeled "Amended Answer" or "Amended Objection" supersede and replace in their entirety Defendant's earlier answer or objection to that request. Responses labeled "Supplemental Answer" supplement and do not replace the earlier answer. Responses and objections not here amended or supplemented remain as previously served.

**Objections to Instructions**

Defendant objects to the "Instructions" provided in Plaintiff James Edwards' First Set of Interrogatories to the extent they exceed the scope and requirements of Federal Rule of Civil Procedure 33. For example, Defendant objects to Instructions paragraph 2 as in excess of the requirement to answer each interrogatory "separately and fully" of Fed. R. Civ. P. 33(b)(3) and follows the requirement of the rule.

SILENCE LAW GROUP

SILENCE LAW GROUP

**Definitions**

Defendant objects to Plaintiff's definitions numbered 2, 6, and 16 as either superfluous or expanding the scope of the interrogatories outside of the requirements of Rule 33 and the definitions numbered 4, 7, and 10 as irrelevant to the interrogatories.

Defendant does not use those definitions in his responses below, but adopts the following definitions provided by Plaintiff, modified and added to as indicated, below:

15. "Agreement" shall mean the one-page agreement executed by Tony Samojen and James Edwards on November 2, 2021.

16. "Answer" shall mean Defendant's October 3, 2025 Answer.

17. "Complaint" shall mean Plaintiff's August 22, 2025 Complaint.

18. "Edwards" and "Plaintiff" shall mean James Edwards and any of his representatives, agents, and all other persons acting or authorized to act on his behalf, including third parties.

19. "Ford GT" shall mean the 2006 Ford GT serial number 1FAFP0S76Y401685 that Edwards transferred to Samojen pursuant to the Agreement.

20. "Morse" shall mean Kerry Morse and any of his representatives, employees, agents, and all other persons acting or authorized to act on his behalf, including third parties.

21. "Person," or any variant thereof, means any natural person as well as any juristic person (*e.g.* corporation) or any business entity (*e.g.* partnership or joint venture) and their officers, agents, and employees.

22. "Porsche Parts" shall mean the parts that Samojen transferred to Edwards pursuant to the Agreement.

23. "Porsche 0011" shall mean Porsche 914/6 from 1970 (serial number 914 043 0011) that Samojen transferred to Edwards pursuant to the Agreement.

24. “Porsche 1543” shall mean the ~~**purported**~~ Porsche 914/6 ~~**R**~~ from 1970 (serial number 914 043 1543) that Samojen transferred to Edwards pursuant to the Agreement.

25. **“Porsche 914/6 R.” Based on Plaintiff’s Complaint, Defendant understands Plaintiff to use “914/6 R” in his interrogatories to refer to one of a group of twelve 914/6 R factory racecars constructed by Porsche’s experimental division, after the initial prototype. Defendant uses this definition to interpret Plaintiff’s interrogatories and answers accordingly, except when referring to the literal alphanumeric descriptor “914/6 R,” as on the window sticker and promotional cards. Defendant’s responses distinguish between references to a Porsche 914/6 R as defined here and references to the alphanumeric descriptor by using quotation marks around the alphanumeric descriptor.**

26. **“Transaction” means the exchange of vehicles, vehicle parts, and money between Plaintiff and Defendant pursuant to their Agreement.**

27. The term “window sticker” shall mean the window sticker for Porsche 1543 **that was contained in the binder of information about the vehicle that was delivered to Plaintiff together with the vehicle after the transaction pursuant to the Agreement.**

28. “You,” “Your,” “Samojen,” and “Defendant” shall mean Tony Samojen and any of his representatives, employees, agents, and all other persons acting or authorized to act on his behalf, including third parties.

29. All capitalized terms not defined herein shall have the meaning ascribed to them in the Complaint.

## <u>Amended and Supplemental Responses to Interrogatories</u>

**INTERROGATORY NO. 3:** Describe how, when, and from whom You acquired Porsche 1543 in 1974, including any documents reflecting the acquisition.



SILENCE LAW GROUP

SILENCE LAW GROUP

**Amended Answer.** Defendant purchased the Porsche 1543 from a private party in the 1970s as a used race car in the San Fernando Valley without any engine or transmission. Defendant does not recall the specific details of the purchase, its date, or the seller, but those details and all documents reflecting the acquisition are among the documents that were delivered to Plaintiff with the Porsche 1543.

**INTERROGATORY NO. 5:** Describe Your creation of the window sticker for Porsche 1543, including, but not limited to, identifying anyone who assisted You in creating it, when it was created, how it was created, and the purpose for which it was created.

**Amended Answer.** (Correcting typo.) The sticker was created around 2005 or 2006, and Defendant does not recall twenty years later who created it. The sticker was used once in 2006 as a display to indicate Porsche 1543 as an example of a competition 914/6 of the kind used by privateers in FIA and SCCA group 4 racing. At that time, the term "GT" was not widely used like today, and Defendant used "R" to stand for "race" to distinguish the vehicle in the way enthusiasts use "GT" today. It was to show that the car was not a typical street 914/6 because it was configured as a race car, hence the "R" designation.

**Supplemental Answer.** Defendant knew before his ownership of Porsche 1543 that Porsche's experimental division built a small number of factory 914/6 racecars. He did not know until sometime after the creation of the window sticker, promotional cards, and placard and before the Transaction that Porsche designated those cars "914/6 R." When Defendant used "R" before learning that, he used it to mean "race" or "renn" (what Defendant understood to be German for "race").

**INTERROGATORY NO. 6:** Describe any other materials You created, or caused to be created, related to or concerning Porsche 1543, including, but not limited to, promotional cards (such as the one identified in paragraph 24 of the Complaint), binders, or display

materials (such as the placard identified in paragraph 29 of the Complaint). For each material, provide the following information:

A. Who created it;

B. When it was created;

C. How it was created; and

D. The purpose for which it was created, including any communications or instructions to third parties.

**Amended Objection.** Defendant withdraws the factual statements in his original objection concerning when the binder, window sticker, and promotional cards were provided to Plaintiff. Defendant objects to this interrogatory as irrelevant to any party's claim or defense, and therefore outside the scope of discovery, *see* Fed. R. Civ. P. 26(b)(1), only to the extent it seeks information about materials that were never provided or shown to Plaintiff and that Plaintiff does not allege he saw or relied on. Defendant answers as to the promotional cards, the window sticker, the placard identified in paragraph 29 of the Complaint, and the Porsche 1543 binder notwithstanding and without waiving that objection.

**Supplemental Answer.** Defendant supplements his answer as to the placard and the binder.

Defendant filled out the placard himself for display with Porsche 1543 at a single car show in 2006. Its purpose was to identify the vehicle for show attendees. Defendant knew before his ownership of Porsche 1543 that Porsche's experimental division built a small number of factory 914/6 racecars. He did not know until sometime after the creation of the window sticker, promotional cards, and placard and before the Transaction that Porsche designated those cars “914/6 R.” When Defendant used “R” on the placard, he used it to mean “race” or “renn” (what Defendant understood to be German for “race”). Defendant did does not recall ever telling Plaintiff about or giving Plaintiff the placard or any reproduction of it.



SILENCE LAW GROUP

Defendant created the Porsche 1543 binder himself over his decades of ownership by gathering and compiling documents related to the vehicle, including documents he received from the seller at acquisition and records generated during his ownership. Its purpose was to keep the vehicle's documentation in one place. The binder and its contents were delivered to Plaintiff and remain in Plaintiff's possession.

**INTERROGATORY NO. 7:** Explain what You meant when You stated that the window sticker was "intended for personal enjoyment only," as set forth in Paragraph 45 of the Answer, and identify any documents or communications that support that explanation.

**Amended Answer.** (Correcting typos.) Defendant created the window sticker to enjoy it as a distinctive style of written record showing the modifications he had made to Porsche 1543 to bring it up to "GT" specifications. The description "914-6 R" was intended to differentiate Porsche 1543 as a "GT" competition car instead of just a stock 914/6 street car. Defendant had no intent to sell the car at the time and only enjoyed keeping the "window sticker" as a reflection of work he had done on the car.

**Supplemental Answer.** Defendant knew before his ownership of Porsche 1543 that Porsche's experimental division built a small number of factory 914/6 racecars. He did not know until sometime after the creation of the window sticker, promotional cards, and placard and before the Transaction that Porsche designated those cars "914/6 R." When Defendant used "R" on the window sticker, he used it to mean "race" or "renn" (what Defendant understood to be German for "race").

**INTERROGATORY NO. 8:** State and explain Your understanding of the value of the following items on November 1, 2021, and identify the basis for that understanding and any documents that supports it:

A. Porsche 0011;

B. Porsche 1543;

C. Porsche Parts; and



SILENCE LAW GROUP

D. Ford GT.

**Amended Answer to Subpart C.** (Correcting typo misidentifying Defendant as "Plaintiff.")

C. Porsche Parts

These parts were the result of Defendant's collecting over 50 years rare genuine and/or OEM Porsche 914/6 GT parts on eBay, at Porsche swap meets, Porsche auctions, etc. On November 1, 2021, based on his long experience collecting the parts, Defendant understood them to be worth over $100,000.

To respond to this interrogatory, Defendant's son Chris Samojen created a spreadsheet listing all the Porsche Parts and cross-referencing each item to the list of parts Defendant earlier provided Plaintiff. Defendant then applied his knowledge gained from decades of seeking out, purchasing, and observing advertisements and transactions involving those and similar parts at shops, car shows, auctions, swap meets, and other locations and channels (like eBay) to estimate an approximate value for each. To assist in this process for certain parts, he may have referred to pelicanparts.com, eBay, 914world.com, or https://pbase.com/9146gt/. The list earlier provided to Plaintiff and the newer spreadsheet are disclosed respectively as SAMOJEN0033 and SAMOJEN0050.

**Supplemental Answer to Subparts A and B.**

A. Porsche 0011

Defendant's understanding of the value of Porsche 0011 on November 1, 2021, was also based on his consultations with Kerry Morse.

B. Porsche 1543

Defendant's understanding of the value of Porsche 1543 on November 1, 2021, was also based on his consultations with Kerry Morse.

**INTERROGATORY NO. 9:** Describe all representations You made to third parties, including but not limited to, Morse, potential buyers, online forums, and/or online



SILENCE LAW GROUP

discussions regarding (a) the window sticker, and (b) Porsche 1543. For each representation, provide the following information:

A. Who You made the representation to;

B. When You made the representation;

C. The method of communication (e.g. in person, email, text, phone call); and

D. The substance of the representation.

**Amended Objections.** (Correcting typo.) Defendant objects to this interrogatory as comprising two separate interrogatories through discrete subparts (a) and (b) without identifying them as separate interrogatories. *See* Fed. R. Civ. P. 33(a)(1). Defendant further objects to this interrogatory as irrelevant to any party's claim or defense and therefore out of the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). None of the elements of Plaintiff's allegations involve representations by Defendant to third parties. Nor does Plaintiff allege that Defendant made any false representations to him about the vehicle being a 914/6 R.

**Amended Answer.** Notwithstanding and without waiving those objections, Defendant answers as follows. Defendant never made false representations about Porsche 1543 to any third party. Defendant never made any representations about the window sticker, and he provides the following list of general representations he has made about Porsche 1543.

Defendant estimates he showed Porsche 1543 at car shows, informal hobbyist meetups, auto club events, and other automotive events about once a month for the fifteen years before he sold it to Plaintiff. At these events, Defendant never represented Porsche 1543 as a 914/6 R to anybody. Through a time shortly after Defendant completed his restoration of the vehicle in around 2005, Defendant sometimes identified the vehicle using the alphanumeric "914/6 R" to distinguish it from a typical street-use 914/6 as having a full GT racing package installed. Defendant knew before his ownership of Porsche 1543 that Porsche's experimental division built a small number of factory 914/6 racecars. Defendant was, therefore, careful never to describe Porsche 1543 as a "factory"

SILENCE LAW GROUP

racer and would clarify that Porsche 1543 had the racing package added later. He did not know until sometime after the creation of the window sticker, promotional cards, and placard and before the Transaction that Porsche designated those cars "914/6 R." When Defendant used "R" before learning that, he used it to mean "race" or "renn" (what Defendant understood to be German for "race").

For example, in the placard shown in paragraph 29 of the Complaint, displayed at a car show in 2006, Defendant used the alphanumeric descriptor "914-6 R" to distinguish the vehicle from a typical 914/6. But he described it as having the "FACTORY COMPETITION OPTION" to show it had factory parts that had to be installed later to distinguish it from the group of twelve factory racecars constructed by Porsche's experimental division Defendant later learned were known as the 914/6 R.

Starting within a few years of 2005, as the "GT" nomenclature took hold, Defendant exclusively referred to Porsche 1543 as a "914/6 GT," just as he represented it to Plaintiff, and just as Plaintiff represented it in the Agreement he drafted. At showings, people would ask about the engine, because the engine was special. Defendant would explain it was a twin-plug race engine that had been used in a Porsche 906 and had been run in 914/6 GTs by a guy in Santa Barbara, which he knew from the circumstances of his discovering the engine in a hangar in Arizona. He also would tell them about the vehicle's large gas tank—which entailed a special modification to the front of the car—its special brakes, and other racing features he had added to it.

Defendant raced the car in 2011 at a historic race at Laguna Seca. He registered it as a "914/6 GT." He made the same representations as described above and also told people the car had a racing transponder on it, had close to 270 hp, and had fiberglass deck lids and an internal rollbar.

Defendant used the car as a "daily driver" for frequent small trips for fifteen years before he sold it to Plaintiff. When people asked him about it, he would say it was a "914/6 GT" or sometimes just a "914/6." Depending on the person's interest, he would make some of the same representations about the car he made at car shows as described above.



SILENCE LAW GROUP

SILENCE LAW GROUP

All these representations were made in person.

**INTERROGATORY NO. 11:** Describe in detail the Your meeting with Edwards on October 23, 2021, including all statements made during the meeting and documents shown, provided, or discussed during the meeting.

**Amended Answer.** Notwithstanding and without waiving his objection, Defendant answers as follows. Defendant remembers all information shared and discussion had on the first day of Plaintiff's visit to be focused purely on the primary car of the transaction, Porsche 0011. Defendant remembers that Plaintiff asked for information about Porsche 0011 and thoroughly inspected it inside and out.

Defendant provided Plaintiff a binder of information about Porsche 0011 to read before his return home the next day. At the same time, Defendant unintentionally gave Plaintiff a binder of information about Porsche 1543.

Plaintiff returned to Defendant's home the next day. Defendant's only memories of that second visit are that Plaintiff returned the loaned information and was in a rush to get to the airport.

**INTERROGATORY NO. 12:** Describe in detail the Your meeting with Edwards on or around November 1, 2021, including all statements made during the meeting and documents shown, provided, or discussed during the meeting.

**Amended Answer.** Notwithstanding and without waiving his objection, Defendant answers as follows. Defendant flew into the Show Low airport with his son, Chris Samojen, where an employee of Plaintiff met them and took them to Plaintiff's house. When they arrived, the recently detailed Ford GT was sitting out in front of the garage. They test-drove the Ford GT for about 20 minutes, returned to Plaintiff's house, and began to discuss Porsche 0011 in more detail.

After the meeting at Plaintiff's home, Plaintiff personally drove Defendant and his son back to the airport. As they arrived at the airport, Plaintiff proposed that he and

SILENCE LAW GROUP

Defendant do a deal for both Porsche 0011 and Porsche 1543 but that it would have to include all Porsche Parts in the deal. He proposed to give Defendant $400,000 cash plus the Ford GT—valued at $350,000 at the time—in exchange for the Porsche 0011, the Porsche 1543, and the Porsche Parts.

**INTERROGATORY NO. 14:** Identify and describe all instances where You described Porsche 1543 as a 914/6 R, and, for each instance, identify any individual who may have seen the document or communication where the description occurred and Your reason for describing Porsche 1543 as a 914/6 R.

**Amended Answer.** Notwithstanding his objection, Defendant responds as follows. Defendant never represented Porsche 1543 as a 914/6 R to Plaintiff. Defendant never described Porsche 1543 as a 914/6 R to Plaintiff. Defendant never considered selling Porsche 1543 until Plaintiff suggested they add it into the Transaction.

Defendant never represented Porsche 1543 as a 914/6 R to anybody. Through a time shortly after Defendant completed his restoration of the vehicle in around 2005, Defendant sometimes identified the vehicle using the alphanumeric "914/6 R" to distinguish it from a typical street-use 914/6 as having the full GT racing package installed. Defendant knew before his ownership of Porsche 1543 that Porsche's experimental division built a small number of factory 914/6 racecars. Defendant was, therefore, careful never to describe Porsche 1543 as a "factory" racer and would clarify that Porsche 1543 had the racing package added later. He did not know until sometime after the creation of the window sticker, promotional cards, and placard and before the Transaction that Porsche designated those cars "914/6 R." When Defendant used "R" before learning that, he used it to mean "race" or "renn" (what Defendant understood to be German for "race").

For example, in the placard shown in paragraph 29 of the Complaint, displayed at a car show in 2006, Defendant used the alphanumeric descriptor "914-6 R" to distinguish the vehicle from a typical 914/6. But he described it as having the "FACTORY COMPETITION OPTION" to show it had factory parts that had to be installed later to

distinguish it from the group of twelve factory racecars constructed by Porsche's experimental division Defendant later learned were known as the 914/6 R.

Starting within a few years of 2005, as the "GT" nomenclature took hold, Defendant exclusively referred to Porsche 1543 as a "914/6 GT," just as he represented it to Plaintiff, and just as Plaintiff represented it in the Agreement he drafted.

DATED this 20th day of July, 2026.

**Silence Law Group PLLC**

*/S/ Trevor Cook*
Jeffrey Silence
Trevor Cook
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

On **July 20, 2026**, I **EMAILED** this document to:

**Rusing, Lopez & Lizardi, P.L.L.C**
Daniel B. Bernardone
Aaron Clark
dbernardone@rllsaz.com
aclark@rllsaz.com

**McDonald Hopkins LLC**
Michael Croghan
Patrick O'Meara
mcroghan@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com

Attorneys for Plaintiff

*/s/ Trevor Cook*

**VERIFICATION**

I, Tony Samojen, state as follows:



SILENCE LAW GROUP

1. I am the Defendant in the matter in which this Supplemental Response to Plaintiff's First Set of Interrogatories is served.

2. I have answered and read the final First Amended and Second Supplemental Responses to Plaintiff's First Set of Interrogatories, and I believe the responses to be true and correct based on my personal knowledge, information, and/or belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 07/20/2026.

Tony Samojen
Tony Samojen (Jul 20, 2026 14:05:32 PDT)

Tony Samojen

SILENCE LAW GROUP

# 20260720 A and Supp Response 1st Interrogatory

Final Audit Report 2026-07-20

| | |
|---|---|
| Created: | 2026-07-20 |
| By: | Trevor Cook (trevor@silencelaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAOmL0UKioioz_PrXb9edoUtytK_YS9EIE |

## "20260720 A and Supp Response 1st Interrogatory" History

Document created by Trevor Cook (trevor@silencelaw.com)
2026-07-20 - 7:28:41 PM GMT

Document emailed to Tony Samojen (tesamojen@msn.com) for signature
2026-07-20 - 7:28:46 PM GMT

Email viewed by Tony Samojen (tesamojen@msn.com)
2026-07-20 - 8:48:13 PM GMT

Document e-signed by Tony Samojen (tesamojen@msn.com)
Signature Date: 2026-07-20 - 9:05:32 PM GMT - Time Source: server - Signature Appearance Selected: TYPE

Agreement completed.
2026-07-20 - 9:05:32 PM GMT