# EXHIBIT L

**Silence Law Group PLLC**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024
**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com
**Trevor Cook** (037952)
Direct Dial: (602) 932-5868
Email: trevor@silencelaw.com
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Edwards,<br>Plaintiff,<br>v.<br>Tony Samojen,<br>Defendant. | Case No. 3:25-CV-08174-SPL<br><br>**DEFENDANT TONY SAMOJEN'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>(Hon. Steven Paul Logan) |

**Objections to Instructions**

Defendant objects to the "Instructions" provided in Plaintiff James Edwards' First Set of Interrogatories to the extent they exceed the scope and requirements of Federal Rule of Civil Procedure 33. For example, Defendant objects to Instructions paragraph 2 as in excess of the requirement to answer each interrogatory "separately and fully" of Fed. R. Civ. P. 33(b)(3) and follows the requirement of the rule.

**Definitions**

Defendant objects to Plaintiff's definitions numbered 2, 6, and 16 as either superfluous or expanding the scope of the interrogatories outside of the requirements of Rule 33 and the definitions numbered 4, 7, and 10 as irrelevant to the interrogatories.

Defendant does not use those definitions in his responses below, but adopts the following definitions provided by Plaintiff, modified and added to as indicated, below:

SILENCE LAW GROUP

1. "Agreement" shall mean the one-page agreement executed by Tony Samojen and James Edwards on November 2, 2021.

2. "Answer" shall mean Defendant's October 3, 2025 Answer.

3. "Complaint" shall mean Plaintiff's August 22, 2025 Complaint.

4. "Edwards" and "Plaintiff" shall mean James Edwards and any of his representatives, agents, and all other persons acting or authorized to act on his behalf, including third parties.

5. "Ford GT" shall mean the 2006 Ford GT serial number 1FAFP0S76Y401685 that Edwards transferred to Samojen pursuant to the Agreement.

6. "Morse" shall mean Kerry Morse and any of his representatives, employees, agents, and all other persons acting or authorized to act on his behalf, including third parties.

7. "Person," or any variant thereof, means any natural person as well as any juristic person (*e.g.* corporation) or any business entity (*e.g.* partnership or joint venture) and their officers, agents, and employees.

8. "Porsche Parts" shall mean the parts that Samojen transferred to Edwards pursuant to the Agreement.

9. "Porsche 0011" shall mean Porsche 914/6 from 1970 (serial number 914 043 0011) that Samojen transferred to Edwards pursuant to the Agreement.

10. "Porsche 1543" shall mean the **~~purported~~** Porsche 914/6 **~~R~~** from 1970 (serial number 914 043 1543) that Samojen transferred to Edwards pursuant to the Agreement.

11. **"Porsche 914/6 R." Based on Plaintiff's Complaint, Defendant understands Plaintiff to use "914/6 R" in his interrogatories to refer to one of a group of twelve 914/6 R factory racecars constructed by Porsche's experimental division, after the initial prototype. Defendant uses this definition to interpret Plaintiff's interrogatories and answers accordingly, except when referring to the literal alphanumeric descriptor "914/6 R," as on the window sticker and promotional cards.**



SILENCE LAW GROUP

**Defendant's responses distinguish between references to a Porsche 914/6 R as defined here and references to the alphanumeric descriptor by using quotation marks around the alphanumeric descriptor.**

12. **"Transaction" means the exchange of vehicles, vehicle parts, and money between Plaintiff and Defendant pursuant to their Agreement.**

13. The term "window sticker" shall mean the window sticker for Porsche 1543 **that was contained in the binder of information about the vehicle that was delivered to Plaintiff together with the vehicle after the transaction pursuant to the Agreement.**

14. "You," "Your," "Samojen," and "Defendant" shall mean Tony Samojen and any of his representatives, employees, agents, and all other persons acting or authorized to act on his behalf, including third parties.

15. All capitalized terms not defined herein shall have the meaning ascribed to them in the Complaint.

## Responses to Interrogatories

**INTERROGATORY NO. 1:** Identify each individual who provided information You used to answer these Interrogatories. For each individual, state the specific information provided.

**Objection and Qualification.** Defendant objects to this interrogatory to the extent it invades the attorney-client privilege or work-product protections. Defendant objects to the breadth of "each individual who provided information You used to answer these Interrogatories" as disproportionate to the needs of the case to the extent it refers to giving information at any time that results in the ultimate answer provided. Subject to that objection, Defendant interprets "each individual who provided information You used to answer these Interrogatories" as each individual who provided information to Defendant in the course of answering these interrogatories that he used to answer them.

**Answer.** Chris Samojen provided some information from the internet to help Defendant answer these interrogatories. He helped Defendant refer back to the websites listed in these answers that Defendant had used to evaluate values of items involved in the



SILENCE LAW GROUP

Transaction. Chris Samojen also created the spreadsheet of the Porsche Parts, disclosed as SAMOJEN0050, that Defendant used to list his value estimates.

**INTERROGATORY NO. 2:** Identify each individual You are aware of who has knowledge of the subject matter of the allegations set forth in the Complaint and the defenses raised in Your Answer. For each individual state their name, title, current business address, telephone number, and the subjects on which they are knowledgeable.

**Answer.**

| | |
|---|---|
| Tony Samojen<br>Retired<br>c/o Silence Law Group<br>20235 N. Cave Creek Rd<br>Ste. 104 # 460<br>Phoenix, AZ 85024<br>602-932-5868<br>All claims and defenses. | James Edwards<br>Unknown<br>c/o Rusing Lopez & Lizardi, P.L.L.C.<br>7047 E. Greenway Parkway, Ste. 85254<br>480-663-9800<br>All claims and defenses. |
| Chris Samojen<br>Manager<br>1480 E. Daily Dr.<br>Camarillo, CA 9301<br>805-236-1660<br>Negotiations and interactions among T. Samojen, Edwards, and Morse leading up to Transaction. Present when T. Samojen and Edwards were physically together. | Kerry Morse<br>Media Industry<br>Orange County, CA<br>714-813-2647<br>Negotiations and interactions among himself, T. Samojen, and Edwards leading up to the Transaction. His interactions with Edwards before and after the Transaction |



SILENCE LAW GROUP

**INTERROGATORY NO. 3:** Describe how, when, and from whom You acquired Porsche 1543 in 1974, including any documents reflecting the acquisition.

**Answer.** Defendant purchased the Porsche 1543 in approximately 1980 as a used race car in the San Fernando Valley without any engine or transmission. Defendant does not recall the specific details of the purchase, its date, or the seller, but those details and all documents reflecting the acquisition are among the documents that were delivered to Plaintiff with the Porsche 1543.

**INTERROGATORY NO. 4:** Describe Your knowledge of the authenticity of Porsche 1543 before, during, and after Your negotiations with Edwards, including any facts, observations, or documents on which You relied.

**Objections.** Defendant objects to this interrogatory because the meaning of "authenticity" is unclear. Defendant interprets "Your knowledge of the authenticity of Porsche 1543" to mean "your knowledge of what Porsche 1543 was and is."

**Answer.** Before, during, and after his negotiations with Edwards, Defendant believed and believes Porsche 1543 to be a Porsche 914/6 with the GT competition option, commonly referred to—as in the Agreement—as a "Porsche 914/6 GT." For that knowledge, Defendant relied on his own perception of the vehicle and documents associated with it he received from the seller. All those documents were delivered to Plaintiff together with Porsche 1543 in the associated binder.

**INTERROGATORY NO. 5:** Describe Your creation of the window sticker for Porsche 1543, including, but not limited to, identifying anyone who assisted You in creating it, when it was created, how it was created, and the purpose for which it was created.

**Answer.** The sticker was created around 2005 or 2006, and Defendant does not recall twenty years later who created it. The sticker was used once in 2006 as a display to indicate Porsche 1543 as an example of a competition 914/6 of the kind used by privateers in FIA and SCCA group 4 racing. At that time, the term "GT" was not widely used like



SILENCE LAW GROUP

today, and Plaintiff used "R" to stand for "race" to distinguish the vehicle in the way enthusiasts use "GT" today. It was to show that the car was not a typical street 914/6 because it was configured as a race car, hence the "R" designation.

**INTERROGATORY NO. 6:** Describe any other materials You created, or caused to be created, related to or concerning Porsche 1543, including, but not limited to, promotional cards (such as the one identified in paragraph 24 of the Complaint), binders, or display materials (such as the placard identified in paragraph 29 of the Complaint). For each material, provide the following information:

A. Who created it;

B. When it was created;

C. How it was created; and

D. The purpose for which it was created, including any communications or instructions to third parties.

**Objections.** Defendant objects to these interrogatories as irrelevant to any party's claim or defense and therefore out of the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Defendant did not provide any materials—created by himself or anyone else—about Porsche 1543 to Plaintiff until the vehicle and vehicle binder were delivered to Plaintiff to complete the Transaction. The vehicle contained the promotional cards in its glove box, and the binder contained the window sticker. The promotional cards and window sticker cannot have constituted representations by Defendant to Plaintiff, and Plaintiff does not allege Defendant gave him "any other materials [he] created, or caused to be created, related to or concerning Porsche 1543."

**Answer.** Notwithstanding these objections, Defendant answers as follows with respect to the identified promotional cards and window sticker.

The promotional cards were created by a fan of Porsche 914s in the early 2000s using basic computer design. The fan offered to make the cards for Defendant and other 914 owners for free. Defendant had the window sticker created in 2005 or 2006. Defendant

SILENCE LAW GROUP

SILENCE LAW GROUP

does not recall who made it, but Defendant had it created so he would have it for his personal enjoyment.

**INTERROGATORY NO. 7:** Explain what You meant when You stated that the window sticker was "intended for personal enjoyment only," as set forth in Paragraph 45 of the Answer, and identify any documents or communications that support that explanation.

**Answer.** Plaintiff created the window sticker to enjoy it as a distinctive style of written record showing the modifications he had made to Porsche 1543 to bring it up to "GT" specifications. The description "914-6 R" was intended to differentiate Porsche 1543 as a "GT" competition car instead of just a stock 914/6 street car. Plaintiff had no intent to sell the car at the time and only enjoyed keeping the "window sticker" as a reflection of work he had done on the car.

**INTERROGATORY NO. 8:** State and explain Your understanding of the value of the following items on November 1, 2021, and identify the basis for that understanding and any documents that supports it:

A. Porsche 0011;
B. Porsche 1543;
C. Porsche Parts; and
D. Ford GT.

**Objections.** Defendant objects to this interrogatory as comprising four separate interrogatories through discrete subparts without identifying them as separate interrogatories. *See* Fed. R. Civ. P. 33(a)(1). Defendant further objects to the request to identify *any* documents that support his understanding of the value of the items in the subparts as outside of the scope of discovery because the burden of identifying *any* supporting documents outweighs the likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

**Answer.** Notwithstanding and without waiving his numerical objection, Defendant responds in full because the four interrogatories do not cause Plaintiff's interrogatories to

exceed the number allowed without further stipulation by the parties or a court order. Notwithstanding and without waiving his proportionality objection, Defendant also responds interpreting "any documents that support his understanding" as meaning any documents he used to support his understanding of the value of the subpart items on November 1, 2021.

A. Porsche 0011

Porsche 0011 is the first production 914/6, making it a very special car as the first of its kind and the engineering/production assembly line test vehicle. It is the only 914/6 to have a complete set of serial numbers ending in 0011 on the engine, transmission, and body. The chassis number, engine number, and transmission number all end in 0011, making it the only 914/6 with a full set of those matching numbers. On November 1, 2021, Defendant understood the car to be worth within the range of $500,000–$900,000.

Defendant based his understanding of the car's value on his analysis of vehicle auction results and online listings posted on these websites: https://www.classic.com/m/porsche/914/914-6/, https://bringatrailer.com/porsche/914-6/, and https://pbase.com/9146gt/sales_history_9146_916.

B. Porsche 1543

Porsche 1543 is one of about 3,200 914/6 production cars produced and is equipped with the GT Porsche competition parts package. Because it is equipped with the GT Porsche competition parts package, it is referred to as a "914/6 GT," just as Plaintiff referred to both it and Porsche 0011 in the Agreement he drafted. On November 1, 2021, Defendant understood the car to be worth within the range of $250,000–$450,000.

Defendant based his understanding of the car's value on his analysis of vehicle auction results and online listings posted on these sites: https://www.classic.com/m/porsche/914/914-6/, https://bringatrailer.com/porsche/914-6/, and https://pbase.com/9146gt/sales_history_9146_916.

C. Porsche Parts



SILENCE LAW GROUP

These parts were the result of Defendant's collecting over 50 years rare genuine and/or OEM Porsche 914/6 GT parts on eBay, at Porsche swap meets, Porsche auctions, etc. On November 1, 2021, based on his long experience collecting the parts, Defendant understood them to be worth over $100,000.

To respond to this interrogatory, Defendant's son Chris Samojen created a spreadsheet listing all the Porsche Parts and cross-referencing each item to the list of parts Defendant earlier provided Plaintiff. Plaintiff then applied his knowledge gained from decades of seeking out, purchasing, and observing advertisements and transactions involving those and similar parts at shops, car shows, auctions, swap meets, and other locations and channels (like eBay) to estimate an approximate value for each. To assist in this process for certain parts, he may have referred to pelicanparts.com, eBay, 914world.com, or https://pbase.com/9146gt/. The list earlier provided to Plaintiff and the newer spreadsheet are disclosed respectively as SAMOJEN0033 and SAMOJEN0050.

D. Ford GT

On November 1, 2021, Defendant understood the Ford GT to be worth around $350,000, based on the model's sales history for that year. Defendant based that understanding on 2021 sales data from https://www.classic.com/m/ford/gt/year-2006/ and https://bringatrailer.com/ford/gt/.

**INTERROGATORY NO. 9:** Describe all representations You made to third parties, including but not limited to, Morse, potential buyers, online forums, and/or online discussions regarding (a) the window sticker, and (b) Porsche 1543. For each representation, provide the following information:

A. Who You made the representation to;

B. When You made the representation;

C. The method of communication (e.g. in person, email, text, phone call); and

D. The substance of the representation.



SILENCE LAW GROUP

SILENCE LAW GROUP

**Objections.** Defendant objects to this interrogatory as comprising two separate interrogatories through discrete subparts (a) and (b) without identifying them as separate interrogatories. *See* Fed. R. Civ. P. 34(a)(1). Defendant further objects to this interrogatory as irrelevant to any party's claim or defense and therefore out of the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). None of the elements of Plaintiff's allegations involve representations by Defendant to third parties. Nor does Plaintiff allege that Defendant made any false representations to him about the vehicle being a 914/6 R.

**Answer.** Notwithstanding and without waiving those objections, Defendant answers as follows. Defendant never made false representations about Porsche 1543 to any third party. Defendant never made any representations about the window sticker, and he provides the following list of general representations he has made about Porsche 1543.

Defendant estimates he showed Porsche 1543 at car shows, informal hobbyist meetups, auto club events, and other automotive events about once a month for the fifteen years before he sold it to Plaintiff. At these events, Defendant never represented Porsche 1543 as a 914/6 R to anybody. Through a time shortly after Defendant completed his restoration of the vehicle in around 2005, Plaintiff sometimes identified the vehicle using the alphanumeric "914/6 R" to distinguish it from a typical street-use 914/6 as having a full GT racing package installed. At that time, Defendant was aware of the existence of a Porsche 914/6 R and was careful never to describe Porsche 1543 as a "factory" racer and would clarify that Porsche 1543 had the racing package added later.

For example, in the placard shown in paragraph 29 of the Complaint, displayed at a car show in 2006, Defendant used the alphanumeric descriptor "914-6 R" to distinguish the vehicle from a typical 914/6. But he made clear it had the "FACTORY COMPETITION OPTION" to distinguish it from the group of twelve factory racecars constructed by Porsche's experimental division known as the 914/6 R.

Starting within a few years of 2005, as the "GT" nomenclature took hold, Defendant exclusively referred to Porsche 1543 as a "914/6 GT," just as he represented it to Plaintiff, and just as Plaintiff represented it in the Agreement he drafted. At showings,

SILENCE LAW GROUP

people would ask about the engine, because the engine was special. Defendant would explain it was a twin-plug race engine that had been used in a Porsche 906 and had been run in 914/6 GTs by a guy in Santa Barbara, which he knew from the circumstances of his discovering the engine in a hangar in Arizona. He also would tell them about the vehicle's large gas tank—which entailed a special modification to the front of the car—its special brakes, and other racing features he had added to it.

Defendant raced the car in 2011 at a historic race at Laguna Seca. He registered it as a "914/6 GT." He made the same representations as described above and also told people the car had a racing transponder on it, had close to 270 hp, and had fiberglass deck lids and an internal rollbar.

Defendant used the car as a "daily driver" for frequent small trips for fifteen years before he sold it to Plaintiff. When people asked him about it, he would say it was a "914/6 GT" or sometimes just a "914/6." Depending on the person's interest, he would make some of the same representations about the car he made at car shows as described above.

All these representations were made in person.

**INTERROGATORY NO. 10:** Describe all representations You made to Edwards regarding Porsche 1543, including its provenance, authenticity, condition, past improvements or repairs, and identify any associated documents or communications.

**Objections.** Defendant objects to this interrogatory as disproportional to the needs of the case considering the parties' relative access to the requested information.

**Answer.** Notwithstanding and without waiving this objection, Defendant describes the representations he made to Edwards regarding Porsche 1543 as follows. Defendant represented to Plaintiff that the vehicle was a factory 914/6 with a GT race package and components with some early race history and that it was raced at Laguna Seca in 2011. Defendant also noted to Plaintiff that the car did not come with an engine and transmission when Defendant bought it, so Defendant added an aluminum twin-plug race engine and race transmission.

**INTERROGATORY NO. 11:** Describe in detail the Your meeting with Edwards on October 23, 2021, including all statements made during the meeting and documents shown, provided, or discussed during the meeting.

**Objections.** Defendant objects to this interrogatory as disproportional to the needs of the case considering the parties' relative access to the requested information.

**Answer.** Notwithstanding and without waiving this objection, Defendant answers as follows. The information shared and discussion had at the meeting focused purely on the primary car of the transaction, Porsche 0011. Plaintiff asked for information about Porsche 0011, thoroughly inspected it inside and out—including while it was on a car lift—and reviewed overnight the contents of the vehicle's associated binder that Defendant provided Plaintiff at the meeting.

Plaintiff returned the binder the next morning. Only then did he appear to notice the Porsche 1543 and asked what it was. That's when Defendant told Plaintiff the Porsche 1543 was a 914/6 with the GT race package. Plaintiff replied briefly with something like "interesting," wrapped up the meeting, and headed back home.

**INTERROGATORY NO. 12:** Describe in detail the Your meeting with Edwards on or around November 1, 2021, including all statements made during the meeting and documents shown, provided, or discussed during the meeting.

**Objections.** Defendant objects to this interrogatory as disproportional to the needs of the case considering the parties' relative access to the requested information.

**Answer.** Notwithstanding and without waiving this objection, Defendant answers as follows. Defendant flew into the Show Low airport with his son, Chris Samojen, where an employee of Plaintiff met them and took them to Plaintiff's house. When they arrived, the recently detailed Ford GT was sitting out in front of the garage. They test-drove the Ford GT for about 20 minutes, returned to Plaintiff's house, and began to discuss Porsche 0011 in more detail.



SILENCE LAW GROUP

After Plaintiff had visited Defendant's home but before this visit at Plaintiff's, Plaintiff asked Defendant by phone for Porsche 1543's chassis number. Defendant provided the number but heard nothing else from Plaintiff about Porsche 1543 except for his interest in possibly doing a deal on both cars because—Plaintiff said—he was interested in the twin-plug engine, the GT package, and some of the vehicle's history. While Defendant and his son were at Plaintiff's home, Plaintiff talked about Porsche 1543 with Defendant's son while the son was looking at a Porsche Carrera GT. During that time, Defendant was looking at the Ford GT and was not aware of the conversation.

After the meeting at Plaintiff's home, Plaintiff personally drove Defendant and his son back to the airport. As they arrived at the airport, Plaintiff proposed that he and Defendant do a deal for both Porsche 0011 and Porsche 1543 but that it would have to include all Porsche Parts in the deal. He proposed to give Defendant $400,000 cash plus the Ford GT—valued at $350,000 at the time—in exchange for the Porsche 0011, the Porsche 1543, and the Porsche Parts.

**INTERROGATORY NO. 13:** Identify and describe any documents, communications, and/or facts that You contend support Your defenses in this action.

**Answer.** Defendant refers Plaintiff to his initial disclosures and forthcoming supplemental disclosures (documents, communications) and to his Answer (facts) as responsive to this interrogatory. Undocumented "communications" Defendant contends support his defenses in this action include those among any combination of Defendant, Plaintiff, and Kerry Morse.

SILENCE LAW GROUP

**INTERROGATORY NO. 14:** Identify and describe all instances where You described Porsche 1543 as a 914/6 R, and, for each instance, identify any individual who may have seen the document or communication where the description occurred and Your reason for describing Porsche 1543 as a 914/6 R.

**Objections.** To the extent it asks about descriptions to persons other than Plaintiff, Defendant objects to this interrogatory as irrelevant to any party's claim or defense and therefore outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1).

**Answer.** Notwithstanding that objection, Defendant responds as follows. Defendant never represented Porsche 1543 as a 914/6 R to Plaintiff. Defendant never described Porsche 1543 as a 914/6 R to Plaintiff. Defendant never considered selling Porsche 1543 until Plaintiff suggested they add it into the Transaction. Plaintiff made that suggestion only after seeming to incidentally notice and briefly ask about Porsche 1543 when visiting Defendant's home to inspect Porsche 0011 earlier.

Defendant never represented Porsche 1543 as a 914/6 R to anybody. Through a time shortly after Defendant completed his restoration of the vehicle in around 2005, Plaintiff sometimes identified the vehicle using the alphanumeric "914/6 R" to distinguish it from a typical street-use 914/6 as having the full GT racing package installed. At that time, Defendant was aware of the existence of a Porsche 914/6 R and was careful never to describe Porsche 1543 as a "factory" racer and would clarify that Porsche 1543 had the racing package added later.

For example, in the placard shown in paragraph 29 of the Complaint, displayed at a car show in 2006, Defendant used the alphanumeric descriptor "914-6 R" to distinguish the vehicle from a typical 914/6. But he made clear it had the "FACTORY COMPETITION OPTION" to distinguish it from the group of twelve factory racecars constructed by Porsche's experimental division known as the 914/6 R.

Starting within a few years of 2005, as the "GT" nomenclature took hold, Defendant exclusively referred to Porsche 1543 as a "914/6 GT," just as he represented it to Plaintiff, and just as Plaintiff represented it in the Agreement he drafted.



SILENCE LAW GROUP

DATED this 30th day of January, 2026.

**Silence Law Group PLLC**

*/S/ Trevor Cook*
Jeffrey Silence
Trevor Cook
*Attorneys for Defendant*

## VERIFICATION

I, Tony Samojen, state as follows:

1. I am the Defendant in the matter in which this Response to Plaintiff's First Set of Interrogatories is served.

2. I have answered and read the final Response to Plaintiff's First Set of Interrogatories, and I believe the responses to be true and correct based on my personal knowledge, information, and/or belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 01/30/2026.

Tony Samojen
Tony Samojen (Jan 30, 2026 16:09:20 PST)
Tony Samojen



SILENCE LAW GROUP

# D Response P First Set Interrogatories

Final Audit Report 2026-01-31

| | |
|---|---|
| Created: | 2026-01-30 |
| By: | Trevor Cook (trevor@silencelaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAiEHreUsbamh2Sy0YM0eQ_kblfKiCyXx5 |

## "D Response P First Set Interrogatories" History

Document created by Trevor Cook (trevor@silencelaw.com)
2026-01-30 - 10:17:36 PM GMT

Document emailed to Tony Samojen (tesamojen@msn.com) for signature
2026-01-30 - 10:17:43 PM GMT

Email viewed by Tony Samojen (tesamojen@msn.com)
2026-01-31 - 0:08:47 AM GMT

Document e-signed by Tony Samojen (tesamojen@msn.com)
Signature Date: 2026-01-31 - 0:09:20 AM GMT - Time Source: server

Agreement completed.
2026-01-31 - 0:09:20 AM GMT